IN THE UNITED STATES DISTRICT COURT IN AND FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:23-cv-61681-AHS

VICKI WATERS, as Personal Representative
of the ESTATE OF BRITTNI A. MULDREW, deceased,
for the benefit of her estate and survivors, VICKI WATERS,
BRIEANNA MULDREW, and RIAN MULDREW, individually,

                                 Plaintiffs,

vs.

CITY OF COCONUT CREEK, a Florida Municipality;
ANDREA CALDERON, in her individual capacity;
LEJANDRO ESCOBAR,  in his individual capacity;
AMANDA CUMMINGS, in her individual capacity;
ARTHUR PATTON, in his individual capacity;
TY MORGAN, in his individual capacity; and
JOHN DOES (1-5), in their individual capacity.

                                 Defendants.

_____/

## SECOND AMENDED COMPLAINT[1]

     Plaintiff, Vicky Waters, as Personal Representative of the Estate of Brittni A.

Muldrew, deceased, (Known as "Brittni Muldrew") through her undersigned counsel

files her Second Amended Complaint for the benefit of her estate, and her survivors,

to wit: Vicky Waters, Brieanna Muldrew, a minor child and Rian Muldrew, a minor

---

[1] Refiled to Correct Scribner Error in Defendant City Name

1

child, and Vicki Waters, individually, Brieanna Muldrew, individually, and Rian Muldrew, individually, and for their Complaint, hereby sue Defendants, City of Coconut Creek, Ofc. Andrea Calderon in her individual capacity ("Calderon"), Ofc. Arthur Patton in his individual capacity ("Patton"), Ofc. Amanda Cummings, in her individual capacity ("Cummings"), Ofc. Alejandro Escobar, in his individual capacity ("Escobar"), Ofc. Ty Morgan in his individual capacity ("Morgan") and John Does, (1-5) in their personal capacity and or their supervisory capacity, and state:

## NATURE OF THE ACTION

1.   This is an action brought under §768.16, et seq., Fla. Stats. (Florida's Wrongful Death Act), for an intentional tort resulting in death, as described in §782.04, Fla. Stats. (Murder) or §782.07, Fla. Stats. (Manslaughter); and under 42 U.S.C. §1983, for Defendants' violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution, applicable to states and state agencies through the Fourteenth Amendment.

2.   This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorney's fees and costs.  Jurisdiction of this Court is invoked pursuant 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1343 (civil rights claim jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

3.   All events pertinent to this action took place in Broward Conty, Florida.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 1343(a)(3), and 1367.

## CONDITIONS PRECEDENT

4.  Plaintiff filed for probate on March 12, 2023, in the Circuit Court of the Fifteenth Judicial Circuit of Florida for Palm Beach County under Case No. 2023-CP-001219.

5.  Plaintiff filed for and was appointed guardian on March 11, 2023, in the Circuit Court of the Fifteenth Judicial Circuit of Florida for Palm Beach County under Case No. 2021-GA-000756 of the person and property of Brittni Muldrew to act as guardian of Brieanna Muldrew, minor and Rian Muldrew minor with full power.

6.  All conditions precedent to suit have occurred, been performed, waived, or been excused, specifically including full compliance with the pre suit notice requirements of Florida Statute 768.28.

7.  All other conditions precedent to bringing this action have been fulfilled, if any.

## PARTIES

8.  At the time of her death, Brittni Muldrew was a resident of Palm

Beach, County, Florida.  Plaintiff, Vicki Waters, brings this action as Personal Representative of the estate of Brittni Muldrew, deceased, for the benefit of her estate and survivors, to wit:  Vicki Waters, Brieanna Muldrew, and Rian Muldrew. This action is also brought by Vicki Waters, individually, Brieanna Muldrew, individually and Rian Muldrew, individually.

9.   Defendant, City of Coconut Creek ("CITY") is and was at all relevant times mentioned, a municipality duly organized and existing under the laws of Florida, and is administered by JOSHUA RYDELL, in his official capacity as Mayor of the City of Coconut Creek.   Defendant CITY'S Police Department,  Coconut Creek Police Department ("CCPD" or "the DEPARTMENT"), is an official subdivision of Defendant City of Coconut Creek, and is administered by ALBERT A. ARENAL, in his official capacity as Chief of Police and he, along with other officials of Defendant CITY, at all times possessed the power and the authority and were charged by law with the responsibility to enact policies and to prescribe rules and practices concerning the operation of CCPD. All officers employed by Defendant CCPD are employees of Defendant CITY and is sui juris.

10.   Defendant CITY and CCPD were at all times mentioned engaged in owning, operating, maintaining, managing, and doing business as a Police Department in Broward County, Florida, and in the business of public safety for the residents of Coconut Creek and Broward County. All of the acts complained of in

4

this Complaint by Plaintiffs against Defendants were done and performed by Defendants by and through their authorized agents, servants and/or employees, and each of them, all of whom at all relevant times were acting within the course, purpose and scope of that agency, service and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts of which complaint is made.

11. Defendant, ANDREA CALDERON, ("CALDERON") was at all times relevant to this Complaint, an employee of the CITY and a police officer of the CCPD. At all times material and relevant to this Complaint, Defendant CALDERON acted in her individual capacity, under color of state law and with the complete authority and ratification of Defendant CITY.

12. Defendant, ALEJANDRO ESCOBAR ("ESCOBAR") was at all times relevant to this Complaint, an employee of the CITY and a police officer of the CCPD. At all times material and relevant to this Complaint, Defendant ESCOBAR acted in his individual capacity, under color of state law and with the complete authority and ratification of Defendant CITY.

13. Defendant, AMANDA CUMMINGS ("CUMMINGS") was at all times relevant to this Complaint, an employee of the CITY and a police officer of the CCPD. At all times material and relevant to this Complaint, Defendant CUMMINGS acted in her individual capacity, under color of state law and with the complete authority and ratification of Defendant CITY.

14. Defendant, ARTHUR PATTON ("PATTON") was at all times relevant to this Complaint, an employee of the CITY and a police officer of the CCPD. At all times material and relevant to this Complaint, Defendant PATTON acted in his individual capacity, under color of state law and with the complete authority and ratification of Defendant CITY.

15. Defendant, TY MORGAN ("MORGAN") was at all times relevant to this Complaint, an employee of the CITY and a police officer of the CCPD. At all times material and relevant to this Complaint, Defendant MORGAN acted in his individual capacity, under color of state law and with the complete authority and ratification of Defendant CITY.

16. Defendant, JOHN DOES (1-5) ("DOES 1-5") were at all times relevant to this Complaint, an employee of the CITY and a police officer of the CCPD. At all times material and relevant to this Complaint, Defendant JOHN DOES 1-5 acted in their individual capacity, under color of state law and with the complete authority and ratification of Defendant CITY.

## STATEMENT OF ULTIMATE FACTS

**The Traffic Stop[2]**

17. On or about the evening August 30, 2021, the Defendant CALDERON,

---

[2] As recorded on the redacted Dash Cam Video from Ofc. Calderon's police vehicle which is referenced in seconds then minutes and seconds.

police car dash video camera is engaged and appears to be driving in the far-left lane heading west on Hillsborough Blvd in the City of Coconut Creek (Calderon dash cam video camera begins at 00:00).   CALDERON is passing several cars, one of which is white yet has not engaged her police lights or siren.   CALDERON reaches the traffic light at the intersection of Hillsborough Blvd. and Lyons Road, in the City of Coconut Creek, Broward County, within approximately 33 seconds from the start of her dash cam video (See Calderon car dash video camera is at 00:33) at which point CALDERON'S police car comes to a complete stop at the intersection and is sitting some 5-6 cars behind several other cars.

18.  The traffic light at the intersection changes as recorded on CALDERON'S. police car (Calderon car video camera is at 00:45).

19.   After the traffic light changes CALDERON proceeds straight through the intersection and drive her police car into the far-right lane behind a white car at 52 seconds on her dashcam video.

20.  CALDERON'S dash cam video shows no erratic driving of the white car she is driving behind, yet within 11 seconds CALDERON for the first time engages only her police lights. (see dash cam video 1:03).

21.  Upon CALDERON engaging her police lights, immediately the white car engages its right turn single and turn right into a well-lit subway sandwich, parking lot and parks.

**The Subway Parking Lot Ofc. Calderon First Encounter**

22.  CALDERON dash car video camera is at 1:11 as CALDERON drives her police car at an angle behind the behind the left-rear of white car at the subway sandwich parking lot.

23.  CALDERON appears to be using her radio believed to be calling in her location and at approximately 1:26 CALDERON's dash cam video shows CALDERON exiting her police car and approaching the driver-side door which is partially opened.

24.  As CALDERON is approaching the drive begins to open the driver-side door, tells the driver just sit in in the car with the door cracked open.

25.  CALDERON asks the young unknown woman ("MULDREW") do you know why I stopped You?  Gets a "No" reply.  CALDERON tells MULDREW because you were speeding.  Seated in the passenger seat is an unknown male which CALDERON ignores until she asks the young unknown woman for her license and registration.  MULDREW at this point tells CALDREON that her license has been suspended.  Whereupon CALDERON asked MULDREW why are you driving?

26.  As soon CALDERON asked MULDREW about driving, MULDREW, while the driver-side door has now been opened by CALDERON steps out with her hand up and her and wrist clasped together suggesting "You Got Me"!  Hoping to get out of the car and away from the unknown passenger CALDERON tells

8

MULDREW "no sit back down and thanks Brittni for being honest with me," while I check your background.[3]

27. CALDERON asked MULDREW for her full name, date of birth, and Address which again MULDREW provides and states that the car is registered to a friend.

28. CALDERON with the driver-side door fully opened by CALDREON then returns to her police car to run the young Ms. MULDREW's information provided through a Driver and Vehicle Information Database, commonly called a "DAVID Search" to verify what information MULDREW had provided perhaps hopeful CALDERON would at a minimum take her into custody and away from the felon passenger.

29. CALDERON only asked one question of the passenger is this your car and the passenger said "No." CALDERON never asked the passenger for his name, why he was in the car which had she done so she would have learned that the passenger was a convicted felon with an association with drug dealers and that the car actually according to information and belief was registered to a known drug dealer. Under those circumstances a reasonable officer would have removed MULDREW from the car and placed her safely in the back seat of her police car.

---

[3] It was later learned that the passenger was a convicted felon with a background such that MULDREW would be terrified which could easily explain MULDREW willingness to be arrested and away from the passenger.

**The Arrival of a more Senior Officer Patton**

30.  As MULDREW is giving CALDERON her name, address, and date of birth, for the "DAVID" clearance PATTON, a second CCPD officer appears, and CALDERON sees and acknowledges PATTON (Calderon car video dash camera is recording the arrival of PATTON at 3:17).

31. CALDERON tells PATTON to call in a 502 which is a signal for suspicion, of drunk driving (Calderon car video dash camera is at 03:23).

32.  CALDERON is walking back to her police car.   PATTON stands on the passenger side of the car and is engaging in conversation with passenger while MULDREW is sitting with her left leg outside the car and her foot resting on parking lot pavement (Calderon car video camera is at 03:52-5:20).

33.  CALDERON is walking back to driver's side of car while PATTON, remains engaging in conversation and observing passenger and MULDREW. CALDERON has a pen and paper and requesting MULDREW verify her address and MULDREW still cooperating politely with CALDERON restates her address and says it a mobile home CALDWERON tells MULDREW, okay, "let me check one thing."  (Calderon car video camera is at 05:21-5:48).

34.  PATTON remains on passenger side of car while CALDERON again returns to her police car allegedly to check further on MULDREW's additional information. (Calderon car video camera is at 05:48-08:13).

**Escalation- guns drawn pointed at Brittni Muldrew and the passenger.[4]**

35.    CALDERON is allegedly advised over her police radio that that the car Brittni Muldrew and her unknown passenger are in had been reported stolen and so CALDERON yells out to PATTON, "Hey" and PATTON begins to back away from the car and at 08:21 on CALDERON's dash video camera.

36.    CALDERON appears in front of another car which had remained parked. next to the car Brittni Muldrew had been occupying and openly willing and wanting to get out of and away from the passenger which CALDERON could have accomplished on several occasions from the willing polite and cooperative Brittni Muldrew.   PATTON approaches the unknown passenger side and tells the passenger "Hands on the dash now" (Calderon car video camera is at 05:48-08:13).

**CALDERON HAS HER FIREARM AIMED AS DOES PATTON**

37.    CALDERON appears again at 08:26 with her firearm pointed directly at Brittni Muldrew, while PATTON has his gun pointed at passenger.  (Calderon car video camera is at 08:26).

38.    CALDERON and PATTON position themselves with their firearms

   pointed

---

[4] At no time prior to the shooting, brutal beating and killing of Brittni did Officers, Calderon, Patton, Cummings, Escobar, Morgan or any other officers and supervisors know how Brittni and the passenger ended up in control of a what was according to information and belief the car which had been upon information and belief been registered to a known drug dealer.

at Brittni and the passenger and CALDERON begins escalating what had been up to this point a traffic infraction stop and says to Brittni Muldrew, the following:

**<u>The Threat and Fear Factor</u>**

      a.  Ofc. Calderon: "Do not move do you understand"

(Calderon car video camera is at 08:28).

      b.  Ofc. Patton: "Don't move"

(Calderon car video camera is at 08:36).

      c.  Ofc. Calderon: "Do you understand"- "Don't move"

(Calderon car video camera is at 08:38-08:43).


**<u>Elevated Threat and Fear Factor</u>**

      d.  Ofc. Calderon: "if you move you understand what's going to happen. (sic)

(Calderon car video camera is at 08:54-08:57).

      e.  Ofc. Calderon: "Do you understand what's going to happen". "Stay there and do not move" and again, "do not move."

(Calderon car video camera is at 08:57-09:02).

      f.  Ofc. Calderon: "And I need to see both hands on the wheel." "Just keep them there at all times."

39.  Brittni has both hands on the wheel at all times and the gear shift is next to

the passenger's and convicted felons left hand who despite at some prior to the guns coming out had provided his name giving his name and CALDERON failed to run the name of the passenger on the DAVID database.  (Calderon car video camera is at 09:10-09:14).

40.  Brittni asks what have I done?   Ofc. Calderon says "well explain it to you in a minute.  (Calderon car video camera is at 09:18-09:24).

41.  CALDERON tells Brittni "Keep looking forward", Brittni will you tell me what I've done?  CALDERON, "Yes, keep looking forward." (Calderon car video camera is at 09:26-09:31). (Bus goes by on Hillsborough Blvd) at (10:39-10:43 on Ofc. Calderon's dash cam)

42.  Ofc. Calderon tells Brittni "Look forward do not look at me" (Calderon car video camera is at 11:10-11:14).

43.  Next is the sound of several police cars is heard and seen on Hillsborough, Blvd. and the sirens stop at the location.  (Calderon car video camera is at 11:14-11:31).

**The Untrained, undisciplined rookie CCPD officers created the danger**

44.  Defendant CUMMINGS (K-9) arrives at scene with violently barking-dog, comes into view of CALDERON's dash cam video.

45.  CUMMINGS motions CALDERON to move over so CUMMINGS can get

into a good shooting position.  As CALDERON moves CUMMINGS and her K-9 now move to the left far rear of the car and out of the way when the brake light lights up.

46.  As the car slowly rolls back CUMMINGS moves even further left and away from the car at 12:19 (Calderon dash cam video) CUMMINGS has moved to a safe position and the front wheels of the car are turning to the right, the driver's door is open and the brake light is illuminated at 12:20 when suddenly the Defendant ESCOBAR appears completely in a safe shooting position which can be seen as the brake lights illuminate clearly show ESCOBAR and CUMMINGS are in shooting positions.  (Calderon car video camera is at 12:20).


**Brake lights and turned wheels and position of CCPD officers rule out danger**

47.  Defendant ESCOBAR has his gun out and is standing facing the driver's, window and the brake lights can still be seen illuminated his position of safety.

48.  PATTON at this point is now position himself to the left of the car as can be clearly seen in (Calderon's dashcam video) which shows PATTON in a position to shot through the windshield as the video clearly show the front tires turned away from all shooters leaving no one in any way danger.

49.  PATTON, ESCOBAR, and CUMMINGS are clearly visible on (Calderon's dash camera and all three have their firearms drawn and pointed directly at Brittni.

50.  PATTON's firearm is pointed at the windshield as the car wheels are visibly turned to the right, in a direction away from being able to move in any direction except to the right.

51.  ESCOBAR is standing left of the driver's door and pointing his firearm at the driver's door window,

52.  CUMMINGS is in front of the other parked which had been in the parking lot and pointing her firearm at the driver's window.

53.  CALDERON has moved behind CUMMINGS and has her firearm in her Hand as last seen pointed directly at Brittni.

54.  Despite the brake lights still illuminating and the front wheels of the car still turned to the right of way from all the officers, they open fire on Brittni hitting her with multiple gunshots, three (3) bullets striking Brittni below her left breast, 1 in left forearm, 1 in the right shoulder, and top of her head, 1 in the back area under her chest and 1 in her left kidney.

55.  At the time when these officers began shooting Brittni none of them were in any danger.  The only two exits of the parking lot had been blocked. (Calderon car video camera is at 12:17-12:31).

**<u>Post-Shooting Beating with a Collapsible Cold Steel Telescopic Baton.</u>**

*56.  **Defendant MORGAN**'s ruthless attack cold blooded beating to the bullet filled body of Brittni should shock the very conscious of this Court.*

57.   Shockingly, while Brittni Muldrew's body was being removed from the automobile after being repeatedly shot not possessing mind or consciousness the Defendant, MORGAN approached Brittni's body with his cold steel telescopic baton drawn and began repeatedly with full force striking Brittni's head with his baton.

58.   MORGAN did this while an arm away and in the direct presence of an unknown superior officer and other officers who took no action to stop MORGAN.

59.   Rather, they allowed MORGAN to then grab the body of Brittni and drag her to the side of the car where Defendant MORGAN then dropped Brittni's body to the pavement face down and again began striking Brittni's head with hard blows from his cold steel telescopic baton all the while she laid in an unconscious state.

60.   Defendant MORGAN at this point was simply told to stop and not removed from the presence of Brittni nor were the other Defendants who took part in the shooting.

61.   This was done despite at the time several superior officers (unknown at this time) and other officers were present.  Yet, despite there being several other officers and superiors on the scene none removed Defendant MORGAN from Brittni's body, and none begin an immediate rendering of CPR.

62.   MORGAN's acts coupled with excessive use of deadly force are a direct and proximate cause of the Defendant City failure to hold these officers accountable its Coconut Creek and its Police Department to observe the legally mandated use of

deadly force training, and constitutional rights of an unarmed person who posed no threat which contributed to the Defendants deadly use of firearm shooting and Morgan's ruthless acts unaddressed will dispel any notion of justice and plague not only those officers who are sworn to uphold the law but absent accountability will do more harm to a system already riddled with issue of trust.

63.   Pursuant to Florida law Defendant CITY was charged with the duty of maintaining, staffing, and supervising all police activities in the City of Coconut Creek and had ultimate authority over such activities.  The Defendant City was at all times material responsible for the conduct of the police officers in its employ with the Coconut Creek Police Department to ensure that its Police Department's officers, employees, servants, and agents obey the laws of the State of Florida and the United States.

64.   The multiple gunshots to Brittni Muldrew were followed by repeated a ruthless unprovoked beating to her head with a cold steel telescopic baton while her bullet ridden body was being dragged out of her car which caused and or contributed to Brittni Muldrew's subsequent death and declared homicide.

65.   Upon newly discovered information and belief the Defendant City, knew or should have known that the named defendant officers' and unknown Doe officers and or supervisors' actions and inactions in this homicide appears consistent with the widespread practice of its Coconut Creek Police Department -- violated state law

that mandated regular training in the use of deadly force, use deadly force, excessive use of force, and procedural traffic stops, improper and unlawful use firearms in clear violation of the proper procedures.   At all times relevant hereto and in all actions described herein, officers Ofc. Andrea Calderon ("Ofc. Calderon"), Ofc. Arthur Patton ("Ofc. Patton"), Ofc. Manda Cummings, ("Ofc. Cummings"), Ofc. Alejandro Escobar, ("Ofc. Escobar"), Ofc. Ty Morgan ("Ofc. Morgan") and John Does, (1-5) were acting under color of law as a police officer, and in such capacity, as the agent, servant, and employee of Defendant City of Coconut Creek.

66. These law enforcement officers failed as required by the City of Coconut Creek and its Police Department to obtain and observe the legally mandated training, and constitutional rights of an unarmed person who posed no threat, wit:

> The deceased Brittni Muldrew, had been stopped for an alleged civil traffic infraction, was fully cooperative, provided her name, date of birth and address and otherwise admitted honestly that she was driving on a suspended license and offered her-self up as willing to be arrested for driving on a suspended license and posed no threat.  Despite these facts after being cooperative for more than (7) seven minutes posing no threat to any of the  defendant officers as she was willing to exit the car and attempted to surrender these officers suddenly without provocation began pointing fire-arms directly at Brittni Muldrew thereby escalating a non-confrontational submissive young 36 year-old cooperative woman who could have easily been removed without incident into highly dramatic fearful event which led to multiple gunshots and the subsequent beating to her head which the combined ended Brittni Muldrew life.

## COUNT I
## WRONGFUL DEATH
(Against Calderon)

67. Paragraphs 1 through 66 above are re-alleged and incorporated.

68. This count sets forth claims against Calderon, for wrongful death, brought under §768.16, et seq., Fla. Stats. For purposes of this count, at pertinent times Calderon was acting outside the scope of their employment with the coconut creek Police Department.

69. Calderon caused the death of Brittni Muldrew intentionally, recklessly, or negligently, in violation of §768.16, et seq., Fla. Stats., and in violation of §782.04, Fla. Stats. (Murder) or of §782.07, Fla. Stats. (Manslaughter).

70. The acts of Calderon in participating in the traffic stop and shooting were the proximate cause and direct cause of the death of Brittni Muldrew.

71. Plaintiffs seek all wrongful death damages allowable under §768.21, Fla. Stat. and the law, for the estate and for the statutory survivors.

## COUNT II
## WRONGFUL DEATH
(Against Patton)

72. Paragraphs 1 through 66 above are re-alleged and incorporated.

73. This count sets forth claims against Patton for wrongful death, brought under §768.16, et seq., Fla. Stats. For purposes of this count, at pertinent times

Patton was acting outside the scope of their employment with the coconut creek Police Department.

74.  Patton caused the death of Brittni Muldrew, intentionally, recklessly, or negligently, in violation of §768.16, et seq., Fla. Stats., and in violation of §782.04, Fla. Stats. (Murder) or of §782.07, Fla. Stats. (Manslaughter).

75.  The acts of Patton in participating in the traffic stop and shooting were the proximate cause and direct cause of the death of Brittni Muldrew.

76.  Plaintiffs seek all wrongful death damages allowable under §768.21, Fla. Stat. and the law, for the estate and for the statutory survivors.

**COUNT III**
**WRONGFUL DEATH**
(Against Cummings)

77.  Paragraphs 1 through 66 above are re-alleged and incorporated.

78.  This count sets forth claims against Cummings for wrongful death, brought under §768.16, et seq., Fla. Stats. For purposes of this count, at pertinent times Cummings was acting outside the scope of their employment with the coconut creek Police Department.

79.  Cummings caused the death of Brittni Muldrew, intentionally, recklessly, or negligently, in violation of §768.16, et seq., Fla. Stats., and in violation of §782.04, Fla. Stats. (Murder) or of §782.07, Fla. Stats. (Manslaughter).

80.  The acts of Cummings in participating in the traffic stop and shooting were the proximate cause and direct cause of the death of Brittni Muldrew.

81.  Plaintiffs seek all wrongful death damages allowable under §768.21, Fla. Stat. and the law, for the estate and for the statutory survivors.

**COUNT IV**
**WRONGFUL DEATH**
(Against Escobar)

82.  Paragraphs 1 through 66 above are re-alleged and incorporated.

83.  This count sets forth claims against Escobar for wrongful death, brought under §768.16, et seq., Fla. Stats. For purposes of this count, at pertinent times Escobar was acting outside the scope of their employment with the coconut creek Police Department.

84.  Escobar caused the death of Brittni Muldrew, intentionally, recklessly, or negligently, in violation of §768.16, et seq., Fla. Stats., and in violation of §782.04, Fla. Stats. (Murder) or of §782.07, Fla. Stats. (Manslaughter).

85.  The acts of Escobar in participating in the traffic stop and shooting were the proximate cause and direct cause of the death of Brittni Muldrew.

86.  Plaintiffs seek all wrongful death damages allowable under §768.21, Fla. Stat. and the law, for the estate and for the statutory survivors.

**COUNT V**
**WRONGFUL DEATH**
(Against Morgan)

87.  Paragraphs 1 through 66 above are re-alleged and incorporated.

88.  This count sets forth claims against Morgan for wrongful death, brought
under §768.16, et seq., Fla. Stats. For purposes of this count, at pertinent times
Morgan was acting outside the scope of their employment with the coconut
creek Police Department.

89.  Morgan caused the death of Brittni Muldrew, intentionally, recklessly, or
negligently, in violation of §768.16, et seq., Fla. Stats., and in violation of
§782.04, Fla. Stats. (Murder) or of §782.07, Fla. Stats. (Manslaughter).

90.  The acts of Morgan in participating in the traffic stop and shooting were the
proximate cause and direct cause of the death of Brittni Muldrew.

91.  Plaintiffs seek all wrongful death damages allowable under §768.21, Fla.
Stat. and the law, for the estate and for the statutory survivors.

**COUNT VI**
**WRONGFUL DEATH**
(Against John Does 1-5)

92.  Paragraphs 1 through 66 above are re-alleged and incorporated.

93.  This count sets forth claims against John Does 1-5 for wrongful death,
brought under §768.16, et seq., Fla. Stats. For purposes of this count, at

22

pertinent times John Does 1-5 were acting outside the scope of their employment with the coconut creek Police Department.

94.  John Does 1-5 caused the death of Brittni Muldrew, intentionally, recklessly, or negligently, in violation of §768.16, et seq., Fla. Stats., and in violation of §782.04, Fla. Stats. (Murder) or of §782.07, Fla. Stats. (Manslaughter).

95.  The acts of John Does 1-5 in participating in the traffic stop and shooting were the proximate cause and direct cause of the death of Brittni Muldrew.

96.  Plaintiffs seek all wrongful death damages allowable under §768.21, Fla. Stat. and the law, for the estate and for the statutory survivors.

## COUNT VII
## FOURTH AMENDMENT VIOLATION EXCESSIVE AND DEADLY FORCE- PUNITIVE DAMAGES 42 U.S.C. §1983
(Against Calderon)[5]

97.  Paragraphs 1 through 66 above are re-alleged and incorporated.

98.  This count sets forth claims against Calderon for unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution. This claim is brought through 42 U.S.C. §1983. Calderon is a person under the laws applicable to this claim.

99.  Calderon acted in violation of Brittni Muldrew's right not to be subjected to

---

[5] In Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985), the Supreme Court ruled that it is a violation of the Fourth Amendment for police officers to use deadly force to stop fleeing felony suspects who are nonviolent and unarmed.

the unlawful use of deadly force under the Fourth Amendment to the United States Constitution, applicable to Calderon through the Fourteenth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

100.   Calderon is a person under applicable law and is liable to Plaintiffs for their conduct, individually and in concert with other Defendants, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

101.   Calderon used deadly unlawful excessive force necessary to enforce compliance with lawful commands and acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of human rights, safety, and property.

102.   Calderon abused the power, possessed by virtue of state law and made possible only because she was clothed with the authority of state law. The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

103.   The foregoing actions of Calderon were willful, wanton and in reckless disregard of Brittni Muldrew's rights, and were taken without any lawful justification and/or in the absence of probable cause.

104.   The extreme physical abuse by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged with criminal offenses, [6] and such physical abuse determined a cognizable claim of excessive and deadly use of force in violation of the Fourth Amendment.

105.   Calderon knew or should have known that the amount of force used, even if they were attempting to effectuate the stopping, seizure and or arrest of Brittni Muldrew, was excessive and deadly given the circumstances present and the clearly established law on use of deadly force.

106.   Based upon the facts presented to Calderon and applicable law, no reasonable law enforcement officer could have concluded that there existed any reasonable cause to shoot and kill Brittni Muldrew.

107.   The law was well settled and clearly established that the actions of Calderon constituted the unlawful use of deadly force under the Fourth Amendment to the United States Constitution at the time such actions were taken.

108.   The actions or inactions of Calderon as set forth in part above constituted deliberate indifference and reckless disregard for the safety of Brittni Muldrew when they knew of and disregarded risks to Brittni Muldrew's health and safety, and thus, their actions or inactions constituted deadly use of force in violation of the Fourth Amendment to the United States Constitution.

---

[6] The pursuit of Brittni Muldrew was not premised on an alleged criminal infraction, but rather a traffic infraction.

109. Calderon also failed to take reasonable steps to ensure Brittni Muldrew's safety when she knew or should have known that a sufficiently serious danger to Brittni Muldrew existed because of their actions toward her, which constituted deliberate indifference and deadly use of force in violation of the Fourth Amendment of the United States Constitution. The constitutional deprivation set forth herein resulted in Brittni Muldrew's death.

110. Calderon failed to take any reasonable steps to ensure Brittni Muldrew's health and safety when they knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that they inflicted upon her constituted the deadly use of force in violation of the Fourth Amendment of the United States Constitution.

111. The brutal physical assault, battery, shooting, beating and killing of Brittni Muldrew violated the Fourth Amendment's proscription against the deadly use of force.

112. The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

113. As a direct and proximate result of Calderon's actions, Plaintiffs have been damaged, such damages including: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other

emoluments. Calderon is jointly and severally liable to Plaintiffs for the unlawful conduct alleged herein. Plaintiffs are also entitled to an award of punitive damages under this count.

## COUNT VIII
## FOURTH AMENDMENT VIOLATION EXCESSIVE AND DEADLY FORCE- PUNITIVE DAMAGES 42 U.S.C. §1983
(Against Patton)[7]

114.   Paragraphs 1 through 66 above are re-alleged and incorporated.

115.    This count sets forth claims against Patton for unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution. This claim is brought through 42 U.S.C. §1983. Patton is a person under the laws applicable to this claim.

116.    Patton acted in violation of Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution, applicable to Patton through the Fourteenth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

117.    Patton is a person under applicable law and is liable to Plaintiffs for his conduct, individually and in concert with other Defendants, in violation of the

---

[7] In Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985), the Supreme Court ruled that it is a violation of the Fourth Amendment for police officers to use deadly force to stop fleeing felony suspects who are nonviolent and unarmed.

civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

118.  Patton used deadly unlawful excessive force necessary to enforce compliance with lawful commands and acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of human rights, safety, and property.

119.  Patton abused the power, possessed by virtue of state law, and made possible only because he was clothed with the authority of state law. The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

120.  The foregoing actions of Patton were willful, wanton and in reckless disregard of Brittni Muldrew's rights, and were taken without any lawful justification and/or in the absence of probable cause.

121.  The extreme physical abuse by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged with criminal offenses, [8] and such physical abuse determined a cognizable claim of excessive and deadly use of force in violation of the Fourth Amendment.

122.  Patton knew or should have known that the amount of force used, even if they were attempting to effectuate the stopping, seizure and or arrest of Brittni

---

[8] The pursuit of Brittni Muldrew was not premised on an alleged criminal infraction, but rather a traffic infraction.

Muldrew, was excessive and deadly given the circumstances present and the clearly established law on use of deadly force.

123.   Based upon the facts presented to Patton and applicable law, no reasonable law enforcement officer could have concluded that there existed any reasonable cause to shoot and kill Brittni Muldrew.

124.  The law was well settled and clearly established that the actions of Patton constituted the unlawful use of deadly force under the Fourth Amendment to the United States Constitution at the time such actions were taken.

125.  The actions or inactions of Patton as set forth in part above constituted deliberate indifference and reckless disregard for the safety of Brittni Muldrew when he knew of and disregarded risks to Brittni Muldrew's health and safety, and thus, his actions or inactions constituted deadly use of force in violation of the Fourth Amendment to the United States Constitution.

126.  Patton also failed to take reasonable steps to ensure Brittni Muldrew's safety when he knew or should have known that a sufficiently serious danger to Brittni Muldrew existed because of his actions toward her, which constituted deliberate indifference and deadly use of force in violation of the Fourth Amendment of the United States Constitution. The constitutional deprivation set forth herein resulted in Brittni Muldrew's death.

29

127.  Patton failed to take any reasonable steps to ensure Brittni Muldrew's health and safety when he knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that he inflicted upon her constituted the deadly use of force in violation of the Fourth Amendment of the United States Constitution.

128.  The brutal physical assault, battery, shooting, beating and killing of Brittni Muldrew violated the Fourth Amendment's proscription against the deadly use of force.

129.  The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

130.  As a direct and proximate result of Patton's actions, Plaintiffs have been damaged, such damages including: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Patton is jointly and severally liable to Plaintiffs for the unlawful conduct alleged herein. Plaintiffs are also entitled to an award of punitive damages under this count.

## COUNT IX
## FOURTH AMENDMENT VIOLATION EXCESSIVE AND DEADLY FORCE- PUNITIVE DAMAGES 42 U.S.C. §1983
(Against Cummings)[9]

131.   Paragraphs 1 through 66 above are re-alleged and incorporated.

132.   This count sets forth claims against Cummings for unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution. This claim is brought through 42 U.S.C. §1983. Cummings is a person under the laws applicable to this claim.

133.   Cummings acted in violation of Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution, applicable to Cummings through the Fourteenth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

134.   Cummings is a person under applicable law and is liable to Plaintiffs for their conduct, individually and in concert with other Defendants, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

---

[9] In Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985), the Supreme Court ruled that it is a violation of the Fourth Amendment for police officers to use deadly force to stop fleeing felony suspects who are nonviolent and unarmed.

135.   Cummings used deadly unlawful excessive force necessary to enforce compliance with lawful commands and acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of human rights, safety, and property.

136.   Cummings abused her power, possessed by virtue of state law and made possible only because she was clothed with the authority of state law. The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

137.   The foregoing actions of Cummings were willful, wanton and in reckless disregard of Brittni Muldrew's rights, and were taken without any lawful justification and/or in the absence of probable cause.

138.   The extreme physical abuse by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged with criminal offenses, [10] and such physical abuse determined a cognizable claim of excessive and deadly use of force in violation of the Fourth Amendment.

139.   Cummings knew or should have known that the amount of force used, even she was attempting to effectuate the stopping, seizure and or arrest of Brittni Muldrew, was excessive and deadly given the circumstances present and the clearly established law on use of deadly force.

---

[10] The pursuit of Brittni Muldrew was not premised on an alleged criminal infraction, but rather a traffic infraction.

140.   Based upon the facts presented to Cummings and applicable law, no reasonable law enforcement officer could have concluded that there existed any reasonable cause to shoot and kill Brittni Muldrew.

141.   The law was well settled and clearly established that the actions of Cummings constituted the unlawful use of deadly force under the Fourth Amendment to the United States Constitution at the time such actions were taken.

142.   The actions or inactions of Cummings as set forth in part above constituted deliberate indifference and reckless disregard for the safety of Brittni Muldrew when she knew of and disregarded risks to Brittni Muldrew's health and safety, and thus, their actions or inactions constituted deadly use of force in violation of the Fourth Amendment to the United States Constitution.

143.   Cummings also failed to take reasonable steps to ensure Brittni Muldrew's safety when she knew or should have known that a sufficiently serious danger to Brittni Muldrew existed because of their actions toward her, which constituted deliberate indifference and deadly use of force in violation of the Fourth Amendment of the United States Constitution. The constitutional deprivation set forth herein resulted in Brittni Muldrew's death.

144.   Cummings failed to take any reasonable steps to ensure Brittni Muldrew's health and safety when she knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that she inflicted upon her constituted

the deadly use of force in violation of the Fourth Amendment of the United States Constitution.

145.  The brutal physical assault, battery, shooting, beating and killing of Brittni Muldrew violated the Fourth Amendment's proscription against the deadly use of force.

146.  The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

147.  As a direct and proximate result of Cummings's actions, Plaintiffs have been damaged, such damages including: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Cummings is jointly and severally liable to Plaintiffs for the unlawful conduct alleged herein. Plaintiffs are also entitled to an award of punitive damages under this count.

## COUNT X
## FOURTH AMENDMENT VIOLATION EXCESSIVE AND DEADLY FORCE- PUNITIVE DAMAGES 42 U.S.C. §1983
(Against Escobar)[11]

148.  Paragraphs 1 through 66 above are re-alleged and incorporated.

---

[11] In Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985), the Supreme Court ruled that it is a violation of the Fourth Amendment for police officers to use deadly force to stop fleeing felony suspects who are nonviolent and unarmed.

149.   This count sets forth claims against Escobar for unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution. This claim is brought through 42 U.S.C. §1983. Escobar is a person under the laws applicable to this claim.

150.   Escobar acted in violation of Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution, applicable to Escobar through the Fourteenth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

151.   Escobar is a person under applicable law and is liable to Plaintiffs for his conduct, individually and in concert with other Defendants, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

152.   Escobar used deadly unlawful excessive force necessary to enforce compliance with lawful commands and acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of human rights, safety, and property.

153.   Escobar abused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. The violations of Brittni

Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

154.  The foregoing actions of Escobar were willful, wanton and in reckless disregard of Brittni Muldrew's rights, and were taken without any lawful justification and/or in the absence of probable cause.

155.  The extreme physical abuse by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged with criminal offenses, [12] and such physical abuse determined a cognizable claim of excessive and deadly use of force in violation of the Fourth Amendment.

156.  Escobar knew or should have known that the amount of force used, even if he was attempting to effectuate the stopping, seizure and or arrest of Brittni Muldrew, was excessive and deadly given the circumstances present and the clearly established law on use of deadly force.

157.  Based upon the facts presented to Escobar and applicable law, no reasonable law enforcement officer could have concluded that there existed any reasonable cause to shoot and kill Brittni Muldrew.

158.  The law was well settled and clearly established that the actions of Escobar constituted the unlawful use of deadly force under the Fourth Amendment to the United States Constitution at the time such actions were taken.

---

[12] The pursuit of Brittni Muldrew was not premised on an alleged criminal infraction, but rather a traffic infraction.

159.  The actions or inactions of Escobar as set forth in part above constituted deliberate indifference and reckless disregard for the safety of Brittni Muldrew when he knew of and disregarded risks to Brittni Muldrew's health and safety, and thus, his actions or inactions constituted deadly use of force in violation of the Fourth Amendment to the United States Constitution.

160.  Escobar also failed to take reasonable steps to ensure Brittni Muldrew's safety when he  knew or should have known that a sufficiently serious danger to Brittni Muldrew existed because of his actions toward her, which constituted deliberate indifference and deadly use of force in violation of the Fourth Amendment of the United States Constitution. The constitutional deprivation set forth herein resulted in Brittni Muldrew's death.

161.  Escobar failed to take any reasonable steps to ensure Brittni Muldrew's health and safety when he knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that he inflicted upon her constituted the deadly use of force in violation of the Fourth Amendment of the United States Constitution.

162.  The brutal physical assault, battery, shooting, beating and killing of Brittni Muldrew violated the Fourth Amendment's proscription against the deadly use of force.

The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

163.   As a direct and proximate result of Escobar's actions, Plaintiffs have been damaged, such damages including: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Escobar is jointly and severally liable to Plaintiffs for the unlawful conduct alleged herein. Plaintiffs are also entitled to an award of punitive damages under this count.

## COUNT XI
## FOURTH AMENDMENT VIOLATION EXCESSIVE AND DEADLY FORCE- PUNITIVE DAMAGES 42 U.S.C. §1983
(Against Morgan)[13]

164.   Paragraphs 1 through 66 above are re-alleged and incorporated.

165.   This count sets forth claims against Morgan for unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution. This claim is brought through 42 U.S.C. §1983. Morgan is a person under the laws applicable to this claim.

---

[13] In Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985), the Supreme Court ruled that it is a violation of the Fourth Amendment for police officers to use deadly force to stop fleeing felony suspects who are nonviolent and unarmed.

166.   Morgan acted in violation of Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution, applicable to Morgan through the Fourteenth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

167.   Morgan is a person under applicable law and is liable to Plaintiffs for his conduct, individually and in concert with other Defendants, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

168.   Morgan used deadly unlawful excessive force necessary to enforce compliance with lawful commands and acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of human rights, safety, and property.

169.   Morgan abused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

170.   The foregoing actions of Morgan were willful, wanton and in reckless disregard of Brittni Muldrew's rights, and were taken without any lawful justification and/or in the absence of probable cause.

171.   The extreme physical abuse by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged with criminal offenses, [14] and such physical abuse determined a cognizable claim of excessive and deadly use of force in violation of the Fourth Amendment.

172.   Morgan knew or should have known that the amount of force used, even if he was attempting to effectuate the stopping, seizure and or arrest of Brittni Muldrew, was excessive and deadly given the circumstances present and the clearly established law on use of deadly force.

173.   Based upon the facts presented to Morgan and applicable law, no reasonable law enforcement officer could have concluded that there existed any reasonable cause to savagely beat the head of an unconscious human being with the subject metal baton, especially having been repeatedly shot which the combination lead to the killing of Brittni Muldrew.

174.   The law was well settled and clearly established that the actions of Morgan constituted the unlawful use of deadly force under the Fourth Amendment to the United States Constitution at the time such actions were taken.

175.   The actions or inactions of Morgan as set forth in part above constituted deliberate indifference and reckless disregard for the safety of Brittni Muldrew when he knew of and disregarded risks to Brittni Muldrew's health and safety, and thus,

---

[14] The pursuit of Brittni Muldrew was not premised on an alleged criminal infraction, but rather a traffic infraction.

his actions or inactions constituted deadly use of force in violation of the Fourth Amendment to the United States Constitution.

176.  Morgan also failed to take reasonable steps to ensure Brittni Muldrew's safety when he knew or should have known that a sufficiently serious danger to Brittni Muldrew existed because of his actions toward her, which constituted deliberate indifference and deadly use of force in violation of the Fourth Amendment of the United States Constitution. The constitutional deprivation set forth herein resulted in Brittni Muldrew's death.

177.  Morgan failed to take any reasonable steps to ensure Brittni Muldrew's health and safety when he knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that he inflicted upon her constituted the deadly use of force in violation of the Fourth Amendment of the United States Constitution.

178.  The brutal physical assault, battery, shooting, beating and killing of Brittni Muldrew violated the Fourth Amendment's proscription against the deadly use of force.

179.  The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

180.  As a direct and proximate result of Morgan's actions, Plaintiffs have been damaged, such damages including: grave mental anguish, pain and suffering,

loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Morgan is jointly and severally liable to Plaintiffs for the unlawful conduct alleged herein. Plaintiffs are also entitled to an award of punitive damages under this count.

**COUNT XII**
**FOURTH AMENDMENT VIOLATION EXCESSIVE AND DEADLY**
**FORCE- PUNITIVE DAMAGES 42 U.S.C. §1983**
(Against John Does 1-5)

182.   Paragraphs 1 through 66 above are re-alleged and incorporated.

183.   This count sets forth claims against John Does 1-5 for unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution. This claim is brought through 42 U.S.C. §1983. John Does 1-5 are persons under the laws applicable to this claim.

184.   John Does 1-5 acted in violation of Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution, applicable to John Does 1-5 through the Fourteenth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

185.   John Does 1-5 as persons under applicable law and are liable to Plaintiffs for their conduct, individually and in concert with other Defendants, in violation

of the civil rights of Brittni Muldrew under the Fourth Amendment to the

United States Constitution.

185.   John Does 1-5 allowed the use deadly unlawful excessive force necessary to

enforce compliance with lawful commands and acted in bad faith, with malicious

purpose, and in a manner exhibiting wanton and willful disregard of human rights,

safety, and property.

186.   John Does 1-5 abused their power, possessed by virtue of state law and made

possible only because they were clothed with the authority of state law. The

violations of Brittni Muldrew's rights, as described above, occurred under color of

state law and are actionable under 42 U.S.C. §1983.

187.  The foregoing actions of John Does 1-5 were willful, wanton and in reckless

disregard of Brittni Muldrew's rights, and were taken without any lawful justification

and/or in the absence of probable cause.

188.  The extreme physical abuse by law enforcement officers of this state is not

part of the penalty that citizens must pay prior to, during and/or after being charged

with criminal offenses, [15]  and such physical abuse determined a cognizable claim of

excessive and deadly use of force in violation of the Fourth Amendment.

189.  John Does 1-5 knew or should have known that the amount of force

used, even if they or others were attempting to effectuate the stopping, seizure and

---

[15] The pursuit of Brittni Muldrew was not premised on an alleged criminal infraction, but rather a traffic infraction.

or arrest of Brittni Muldrew, was excessive and deadly given the circumstances present and the clearly established law on use of deadly force.

190.  Based upon the facts presented to John Does 1-5 and applicable law, no reasonable law enforcement officer could have concluded that there existed any reasonable cause to shoot, savagely beat and kill Brittni Muldrew.

191.  The law was well settled and clearly established that the actions of John Does 1-5 constituted the unlawful use of deadly force under the Fourth Amendment to the United States Constitution at the time such actions were taken.

193.  The actions or inactions of John Does 1-5 as set forth in part above constituted deliberate indifference and reckless disregard for the safety of Brittni Muldrew when they knew of and disregarded risks to Brittni Muldrew's health and safety, and thus, their actions or inactions constituted deadly use of force in violation of the Fourth Amendment to the United States Constitution.

194.  John Does 1-5 also failed to take reasonable steps to ensure Brittni Muldrew's safety when they knew or should have known that a sufficiently serious danger to Brittni Muldrew existed because of their actions toward her, which constituted deliberate indifference and deadly use of force in violation of the Fourth Amendment of the United States Constitution. The constitutional deprivation set forth herein resulted in Brittni Muldrew's death.

195.   John Does 1-5 failed to take any reasonable steps to ensure Brittni Muldrew's health and safety when they knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that they inflicted upon her constituted the deadly use of force in violation of the Fourth Amendment of the United States Constitution.

196.   The brutal physical assault, battery, shooting, beating and killing of Brittni Muldrew violated the Fourth Amendment's proscription against the deadly use of force.

197.   The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

198.   As a direct and proximate result of John Does 1-5's actions, Plaintiffs have been damaged, such damages including: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. John Does 1-5 is jointly and severally liable to Plaintiffs for the unlawful conduct alleged herein. Plaintiffs are also entitled to an award of punitive damages under this count.

## COUNT XIII
## FOURTH AMENDMENT VIOLATION-FAILURE TO INTERVENE
(Against Calderon)

199.  Paragraphs 1 through 66 above are re-alleged and incorporated.

200.  This count sets forth a claim against Calderon for the failure to intervene and the failure to protect Brittni Muldrew from the ruthless and ongoing attack by Ty Morgan's, post shooting beating of Brittni Muldrew in the head as she was being removed from the car and subsequent repeated attack by Ofc. Morgan, re-using his collapsible cold steel telescopic baton.   Plaintiffs contend that Ofc. Morgan exceeded the force necessary under the circumstances when he intentionally, willfully and brutally attacked Brittni Muldrew and greatly decreasing her chance of survival, if any, which collectively killed Brittni Muldrew and that Calderon should be liable for that violation because they failed to intervene to stop the violation.

201.  Calderon violated Brittni Muldrew's right to be free from the unlawful use of deadly force. Calderon had a duty to intervene to prevent the unlawful use of deadly force by a fellow and or subordinate officer.

202.  Calderon had a reasonable opportunity to intervene and failed to do so.

203.   Specifically Calderon violated the Fourth Amendment to the United States Constitution by showing deliberate indifference to a substantial risk of serious harm to Brittni Muldrew. Paton was present when Brittni Muldrew was attacked by Ofc. Morgan, after being shot by multiple officers which the combination of their

46

shooting her and Ofc. Morgan's beating afterwards created a substantial risk of decreasing the survival of Brittni Muldrew. They knew her condition was critical after they shot her and that Ofc. Morgan's post shooting beating increased risk of serious harm and/or death to Brittni Muldrew. She was deliberately indifferent to that risk, and Plaintiff would have would have suffered less harm if Calderon had not been deliberately indifferent.

204. Calderon thus violated the Fourth Amendment to the United States Constitution, applicable to these Defendants through the Fourteenth Amendment to the United States Constitution by failing to intervene to prevent the harm to Brittni Muldrew and the Plaintiff. This claim is brought through 42 U.S.C. §1983.

205. Calderon is a person under the laws applicable to this claim.

206. The failure to intervene by Calderon was an additional moving force behind Brittni Muldrew's death and constitutional violations stemming therefrom. Calderon's actions are causally related to these Defendants, through its agents and employees, intended to cause this harmful and offensive contact with Brittni Muldrew in that the harmful acts were deliberate and substantially certain to result in harm and offense.

207. Calderon operated to violate Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States

Constitution. These violations were of the type and character as to which any reasonable person would be aware.

208.   Calderon further operated to violate Brittni Muldrew's civil rights as protected by the Civil Rights Act, 42 U.S.C. §1983. Calderon is jointly and severally liable to Plaintiffs for their conduct, individually and in concert, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

209.   Calderon allowed and/or failed to intervene in Ofc. Morgan's actions which exceeded the level of force necessary to enforce compliance with lawful commands.

210.   Calderon misused their power, possessed by virtue of state law to intervene and in total disregard of their duties to intervene as authorized and required under the totality of circumstances and attendant with the authority of state law.

211.   The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

212.   The foregoing actions of Calderon were taken without any lawful justification and/or in the absence of probable cause.

213.   The shooting and subsequent ruthless post shooting beating by Ofc. Morgan contributed to and /or increased the death of Brittni Muldrew by law enforcement officers of this state is not part of the penalty that citizens must pay

prior to, during and/or after being charged or suspected with a criminal offense, and such abuse sets forth a cognizable claim of excessive use of force in violation of the Fourth Amendment.

214.  Calderon knew or should have known that the amount of force used, even if Ofc. Morgan and other Defendants were effectuating a valid arrest of Brittni Muldrew, was excessive given the circumstances present and the clearly established law on use of deadly force.

215.  Based upon the facts presented to Calderon and the applicable law, no reasonable law enforcement officer or agency could have concluded that there existed any reasonable cause to allow for the unlawful use of deadly force against Brittni Muldrew.

216.  The actions or inactions of Calderon as set forth in part above constituted a deliberate indifference or reckless disregard for the safety of Brittni Muldrew when they knew of and disregarded risks to Brittni Muldrew's health and safety, and thus its actions or inactions constituted the unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution.

217.  Calderon also failed to take reasonable steps to ensure Brittni Muldrew's safety when she knew or should have known that a sufficiently serious danger to Brittni Muldrew existed, especially post shooting and because of her actions toward

her which constituted deliberate indifference, and the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

218.   The failure of Calderon to take any reasonable steps to ensure Brittni Muldrew's health and safety when she knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that Ofc. Morgan had inflicted upon her constituted the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

 219.   The brutal physical assaults, battery, and/or shooting of Brittni Muldrew violated the Fourth Amendment's proscription against the unlawful use of deadly force.

220.   These violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

221.   As a direct and proximate result of Calderon's actions, Plaintiffs were damaged, such damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Calderon is jointly and severally liable to Plaintiffs for the unlawful conduct alleged herein. Plaintiffs are entitled to punitive damages under this Count.

## COUNT XIV
## FOURTH AMENDMENT VIOLATION-FAILURE TO INTERVENE
(Against Patton)

222.  Paragraphs 1 through 66 above are re-alleged and incorporated.

223.  This count sets forth a claim against Patton for the failure to intervene and the failure to protect Brittni Muldrew from the ruthless and ongoing attack by Ty Morgan's, post shooting beating of Brittni Muldrew in the head as she was being removed from the car and subsequent repeated attack by Ofc. Morgan, re-using his collapsible cold steel telescopic baton.   Plaintiffs contend that Ofc. Morgan exceeded the force necessary under the circumstances when he intentionally, willfully and brutally attacked Brittni Muldrew and greatly decreasing her chance of survival, if any, which collectively killed Brittni Muldrew and that Patton should be liable for that violation because he failed to intervene to stop the violation.

224.  Patton violated Brittni Muldrew's right to be free from the unlawful use of deadly force. Patton had a duty to intervene to prevent the unlawful use of deadly force by a fellow and or subordinate officer.

225.  Patton had a reasonable opportunity to intervene and failed to do so.

226.  Specifically Patton violated the Fourth Amendment to the United States Constitution by showing deliberate indifference to a substantial risk of serious harm to Brittni Muldrew. Paton was present when Brittni Muldrew was attacked by Ofc. Morgan, after being shot by multiple officers which the combination of their

shooting her and Ofc. Morgan's beating afterwards created a substantial risk of decreasing the survival of Brittni Muldrew.  They knew her condition was critical after they shot her and that Ofc. Morgan's post shooting beating increased risk of serious harm and/or death to Brittni Muldrew.  They were deliberately indifferent to that risk, and Plaintiff would have would have suffered less harm if Patton had not been deliberately indifferent.

227.   Patton thus violated the Fourth Amendment to the United States Constitution, applicable to these Defendants through the Fourteenth Amendment to the United States Constitution by failing to intervene to prevent the harm to Brittni Muldrew and the Plaintiff. This claim is brought through 42 U.S.C. §1983.

228.  Patton is a person under the laws applicable to this claim.

229.  The failure to intervene by Patton was an additional moving force behind Brittni Muldrew's death and constitutional violations stemming therefrom. Patton's actions are causally related to these Defendants, through its agents and employees, intended to cause this harmful and offensive contact with Brittni Muldrew in that the harmful acts were deliberate and substantially certain to result in harm and offense.

230.  Patton operated to violate Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

231.   Patton further operated to violate Brittni Muldrew's civil rights as protected by the Civil Rights Act, 42 U.S.C. §1983. Patton is jointly and severally liable to Plaintiffs for their conduct, individually and in concert, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

232.   Patton allowed and/or failed to intervene in Ofc. Morgan's actions which exceeded the level of force necessary to enforce compliance with lawful commands.

233.   Patton misused their power, possessed by virtue of state law to intervene and in total disregard of their duties to intervene as authorized and required under the totality of circumstances and attendant with the authority of state law.

234.   The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

235.   The foregoing actions of Patton were taken without any lawful justification and/or in the absence of probable cause.

236.   The shooting and subsequent ruthless post shooting beating by Ofc. Morgan contributed to and /or increased the death of Brittni Muldrew by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged or suspected with a criminal offense, and such abuse sets forth a cognizable claim of excessive use of force in violation of the Fourth Amendment.

237.  Patton knew or should have known that the amount of force used, even if Ofc. Morgan and other Defendants were effectuating a valid arrest of Brittni Muldrew, was excessive given the circumstances present and the clearly established law on use of deadly force.

238.  Based upon the facts presented to Patton and the applicable law, no reasonable law enforcement officer or agency could have concluded that there existed any reasonable cause to allow for the unlawful use of deadly force against Brittni Muldrew.

239.  The actions or inactions of Patton as set forth in part above constituted a deliberate indifference or reckless disregard for the safety of Brittni Muldrew when he knew of and disregarded risks to Brittni Muldrew's health and safety, and thus its actions or inactions constituted the unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution.

240.  Patton also failed to take reasonable steps to ensure Brittni Muldrew's safety when he knew or should have known that a sufficiently serious danger to Brittni Muldrew existed, especially post shooting and because of his actions toward her which constituted deliberate indifference, and the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

241.  The failure of Patton to take any reasonable steps to ensure Brittni Muldrew's health and safety when they knew of serious bodily harm and damage

to Brittni Muldrew's mental and physical health that Ofc. Morgan had inflicted upon her constituted the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

242.  The brutal physical assaults, battery, and/or shooting of Brittni Muldrew violated the Fourth Amendment's proscription against the unlawful use of deadly force.

243.  These violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

244.  As a direct and proximate result of Patton's actions, Plaintiffs were damaged, such damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Patton is jointly and severally liable to Plaintiffs for the unlawful conduct alleged herein. Plaintiffs are entitled to punitive damages under this Count.

## COUNT XV
## FOURTH AMENDMENT VIOLATION-FAILURE TO INTERVENE
### (Against Cummings)

Paragraphs 1 through 66 above are re-alleged and incorporated.

245.  This count sets forth a claim against Cummings for the failure to intervene and the failure to protect Brittni Muldrew from the ruthless and ongoing attack by Ty Morgan's, post shooting beating of Brittni Muldrew in the head as she

was being removed from the car and subsequent repeated attack by Ofc. Morgan, re-using his collapsible cold steel telescopic baton.   Plaintiffs contend that Ofc. Morgan exceeded the force necessary under the circumstances when he intentionally, willfully and brutally attacked Brittni Muldrew and greatly decreasing her chance of survival, if any, which collectively killed Brittni Muldrew and that Cummings should be liable for that violation because she failed to intervene to stop the violation.

246.   Cummings violated Brittni Muldrew's right to be free from the unlawful use of deadly force. Cummings had a duty to intervene to prevent the unlawful use of deadly force by a fellow and or subordinate officer.

247.   Cummings had a reasonable opportunity to intervene and failed to do so.

248.   Specifically Cummings violated the Fourth Amendment to the United States Constitution by showing deliberate indifference to a substantial risk of serious harm to Brittni Muldrew.   Cummings was present when Brittni Muldrew was attacked by Ofc. Morgan, after being shot by Cummings and multiple officers which the combination of their shooting her and Ofc. Morgan's beating afterwards created a substantial risk of decreasing the survival of Brittni Muldrew.   Cummings knew Brittni Muldrew's condition was critical after they shot her and that Ofc. Morgan's post shooting beating increased risk of serious harm and/or death to Brittni Muldrew.

She was deliberately indifferent to that risk, and Plaintiff would have would have suffered less harm if Cummings had not been deliberately indifferent.

249.   Cummings thus violated the Fourth Amendment to the United States Constitution, applicable to these Defendants through the Fourteenth Amendment to the United States Constitution by failing to intervene to prevent the harm to Brittni Muldrew and the Plaintiff. This claim is brought through 42 U.S.C. §1983.

250.   Cummings is a person under the laws applicable to this claim.

251.   The failure to intervene by Cummings was an additional moving force behind Brittni Muldrew's death and constitutional violations stemming therefrom. Cummings's actions are causally related to these Defendants, through its agents and employees, intended to cause this harmful and offensive contact with Brittni Muldrew in that the harmful acts were deliberate and substantially certain to result in harm and offense.

252.   Cummings operated to violate Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

253.   Cummings further operated to violate Brittni Muldrew's civil rights as protected by the Civil Rights Act, 42 U.S.C. §1983. Cummings is jointly and severally liable to Plaintiffs for their conduct, individually and in concert, in

violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

254.   Cummings allowed and/or failed to intervene in Ofc. Morgan's actions which exceeded the level of force necessary to enforce compliance with lawful commands.

255.   Cummings misused their power, possessed by virtue of state law to intervene and in total disregard of their duties to intervene as authorized and required under the totality of circumstances and attendant with the authority of state law.

256.   The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

257.   The foregoing actions of Cummings were taken without any lawful justification and/or in the absence of probable cause.

258.   The shooting and subsequent ruthless post shooting beating by Ofc. Morgan contributed to and /or increased the death of Brittni Muldrew by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged or suspected with a criminal offense, and such abuse sets forth a cognizable claim of excessive use of force in violation of the Fourth Amendment.

259.   Cummings knew or should have known that the amount of force used, even if Ofc. Morgan and other Defendants were effectuating a valid arrest of Brittni

Muldrew, was excessive given the circumstances present and the clearly established law on use of deadly force.

260.  Based upon the facts presented to Cummings and the applicable law, no reasonable law enforcement officer or agency could have concluded that there existed any reasonable cause to allow for the unlawful use of deadly force against Brittni Muldrew.

261.  The actions or inactions of Cummings as set forth in part above constituted a deliberate indifference or reckless disregard for the safety of Brittni Muldrew when she knew of and disregarded risks to Brittni Muldrew's health and safety, and thus its actions or inactions constituted the unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution.

262.  Cummings also failed to take reasonable steps to ensure Brittni Muldrew's safety when they knew or should have known that a sufficiently serious danger to Brittni Muldrew existed, especially post shooting and because of her actions toward her which constituted deliberate indifference, and the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

263.  The failure of Cummings to take any reasonable steps to ensure Brittni Muldrew's health and safety when she knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that Ofc. Morgan had inflicted upon

her constituted the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

264.  The brutal physical assaults, battery, and/or shooting of Brittni Muldrew violated the Fourth Amendment's proscription against the unlawful use of deadly force.

265.  These violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

266.  As a direct and proximate result of Cummings' actions, Plaintiffs were damaged, such damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Cummings is jointly and severally liable to Plaintiffs for the unlawful conduct alleged herein. Plaintiffs are entitled to punitive damages under this Count.

## COUNT XVI
## FOURTH AMENDMENT VIOLATION-FAILURE TO INTERVENE
(Against Escobar)

Paragraphs 1 through 66 above are re-alleged and incorporated.

267.  This count sets forth a claim against Escobar for the failure to intervene and the failure to protect Brittni Muldrew from the ruthless and ongoing attack by Ty Morgan's, post shooting beating of Brittni Muldrew in the head as she was being removed from the car and subsequent repeated attack by Ofc. Morgan, re-using his

collapsible cold steel telescopic baton.   Plaintiffs contend that Ofc. Morgan exceeded the force necessary under the circumstances when he intentionally, willfully and brutally attacked Brittni Muldrew and greatly decreasing her chance of survival, if any, which collectively killed Brittni Muldrew and that Escobar should be liable for that violation because they failed to intervene to stop the violation.

268.  Escobar violated Brittni Muldrew's right to be free from the unlawful use of deadly force. Escobar had a duty to intervene to prevent the unlawful use of deadly force by a fellow and or subordinate officer.

269.  Escobar had a reasonable opportunity to intervene and failed to do so.

270.   Specifically Escobar violated the Fourth Amendment to the United States Constitution by showing deliberate indifference to a substantial risk of serious harm to Brittni Muldrew. Escobar was present when Brittni Muldrew was attacked by Ofc. Morgan, after being shot by multiple officers which the combination of their shooting her and Ofc. Morgan's beating afterwards created a substantial risk of decreasing the survival of Brittni Muldrew.  He knew her condition was critical after they shot her and that Ofc. Morgan's post shooting beating increased risk of serious harm and/or death to Brittni Muldrew.  He was deliberately indifferent to that risk, and Plaintiff would have would have suffered less harm if Escobar had not been deliberately indifferent.

271.   Escobar thus violated the Fourth Amendment to the United States Constitution, applicable to these Defendants through the Fourteenth Amendment to the United States Constitution by failing to intervene to prevent the harm to Brittni Muldrew and the Plaintiff. This claim is brought through 42 U.S.C. §1983.

272.  Escobar is a person under the laws applicable to this claim.

273.   The failure to intervene by Escobar was an additional moving force behind Brittni Muldrew's death and constitutional violations stemming therefrom. Escobar's actions are causally related to these Defendants, through its agents and employees, intended to cause this harmful and offensive contact with Brittni Muldrew in that the harmful acts were deliberate and substantially certain to result in harm and offense.

274.  Escobar operated to violate Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

275.   Escobar further operated to violate Brittni Muldrew's civil rights as protected by the Civil Rights Act, 42 U.S.C. §1983. Escobar is jointly and severally liable to Plaintiffs for their conduct, individually and in concert, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

276.   Escobar allowed and/or failed to intervene in Ofc. Morgan's actions which exceeded the level of force necessary to enforce compliance with lawful commands.

277.   Escobar misused his power, possessed by virtue of state law to intervene and in total disregard of his duties to intervene as authorized and required under the totality of circumstances and attendant with the authority of state law.

278.   The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

279.   The foregoing actions of Escobar were taken without any lawful justification and/or in the absence of probable cause.

280.   The shooting and subsequent ruthless post shooting beating by Ofc. Morgan contributed to and /or increased the death of Brittni Muldrew by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged or suspected with a criminal offense, and such abuse sets forth a cognizable claim of excessive use of force in violation of the Fourth Amendment.

281.   Escobar knew or should have known that the amount of force used, even if Ofc. Morgan and other Defendants were effectuating a valid arrest of Brittni Muldrew, was excessive given the circumstances present and the clearly established law on use of deadly force.

282. Based upon the facts presented to Escobar and the applicable law, no reasonable law enforcement officer or agency could have concluded that there existed any reasonable cause to allow for the unlawful use of deadly force against Brittni Muldrew.

283. The actions or inactions of Escobar as set forth in part above constituted a deliberate indifference or reckless disregard for the safety of Brittni Muldrew when he knew of and disregarded risks to Brittni Muldrew's health and safety, and thus its actions or inactions constituted the unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution.

284. Escobar also failed to take reasonable steps to ensure Brittni Muldrew's safety when he knew or should have known that a sufficiently serious danger to Brittni Muldrew existed, especially post shooting and because of his actions toward her which constituted deliberate indifference, and the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

285. The failure of Escobar to take any reasonable steps to ensure Brittni Muldrew's health and safety when they knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that Ofc. Morgan had inflicted upon her constituted the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

286.  The brutal physical assaults, battery, and/or shooting of Brittni Muldrew violated the Fourth Amendment's proscription against the unlawful use of deadly force.

287.   These violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

288.  As a direct and proximate result of Escobar's actions, Plaintiffs were damaged, such damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Escobar is jointly and severally liable to Plaintiffs for the unlawful conduct alleged herein. Plaintiffs are entitled to punitive damages under this Count.

## COUNT XVII
## FOURTH AMENDMENT VIOLATION-FAILURE TO INTERVENE
(Against John Does 1-5)

Paragraphs 1 through 66 above are re-alleged and incorporated.

289.  This count sets forth a claim against John Does 1-5 for the failure to intervene and the failure to protect Brittni Muldrew from the ruthless and ongoing attack by Ty Morgan's, post shooting beating of Brittni Muldrew in the head as she was being removed from the car and subsequent repeated attack by Ofc. Morgan, re-using his collapsible cold steel telescopic baton.  Plaintiffs contend that Ofc. Morgan exceeded the force necessary under the circumstances when he intentionally,

willfully and brutally attacked Brittni Muldrew and greatly decreasing her chance of survival, if any, which collectively killed Brittni Muldrew and that John Does 1-5 should be liable for that violation because they failed to intervene to stop the violation.

290.   John Does 1-5 violated Brittni Muldrew's right to be free from the unlawful use of deadly force. John Does 1-5 had a duty to intervene to prevent the unlawful use of deadly force by a fellow and or subordinate officer.

291.   John Does 1-5 had a reasonable opportunity to intervene and failed to do so.

292.   Specifically John Does 1-5 violated the Fourth Amendment to the United States Constitution by showing deliberate indifference to a substantial risk of serious harm to Brittni Muldrew. John Does 1-5 were present when Brittni Muldrew was attacked by Ofc. Morgan, after being shot by multiple officers which the combination of their shooting her and Ofc. Morgan's beating afterwards created a substantial risk of decreasing the survival of Brittni Muldrew.  They knew her condition was critical after they shot her and that Ofc. Morgan's post shooting beating increased risk of serious harm and/or death to Brittni Muldrew.  They were deliberately indifferent to that risk, and Plaintiff would have would have suffered less harm if John Does 1-5 had not been deliberately indifferent.

293.  John Does 1-5 thus violated the Fourth Amendment to the United States Constitution, applicable to these Defendants through the Fourteenth Amendment to the United States Constitution by failing to intervene to prevent the harm to Brittni Muldrew and the Plaintiff. This claim is brought through 42 U.S.C. §1983.

294.  John Does 1-5 is a person under the laws applicable to this claim.

295.  The failure to intervene by John Does 1-5 was an additional moving force behind Brittni Muldrew's death and constitutional violations stemming therefrom. John Does 1-5's actions are causally related to these Defendants, through its agents and employees, intended to cause this harmful and offensive contact with Brittni Muldrew in that the harmful acts were deliberate and substantially certain to result in harm and offense.

296.  John Does 1-5 operated to violate Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

297.  John Does 1-5 further operated to violate Brittni Muldrew's civil rights as protected by the Civil Rights Act, 42 U.S.C. §1983. John Does 1-5 is jointly and severally liable to Plaintiffs for their conduct, individually and in concert, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

298.   John Does 1-5 allowed and/or failed to intervene in Ofc. Morgan's actions which exceeded the level of force necessary to enforce compliance with lawful commands.

299.   John Does 1-5 misused their power, possessed by virtue of state law to intervene and in total disregard of their duties to intervene as authorized and required under the totality of circumstances and attendant with the authority of state law.

300.   The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

301.   The foregoing actions of John Does 1-5 were taken without any lawful justification and/or in the absence of probable cause.

302.   The shooting and subsequent ruthless post shooting beating by Ofc. Morgan contributed to and /or increased the death of Brittni Muldrew by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged or suspected with a criminal offense, and such abuse sets forth a cognizable claim of excessive use of force in violation of the Fourth Amendment.

303.   John Does 1-5 knew or should have known that the amount of force used, even if Ofc. Morgan and other Defendants were effectuating a valid arrest of Brittni Muldrew, was excessive given the circumstances present and the clearly established law on use of deadly force.

304.  Based upon the facts presented to John Does 1-5 and the applicable law, no reasonable law enforcement officer or agency could have concluded that there existed any reasonable cause to allow for the unlawful use of deadly force against Brittni Muldrew.

305.  The actions or inactions of John Does 1-5 as set forth in part above constituted a deliberate indifference or reckless disregard for the safety of Brittni Muldrew when they knew of and disregarded risks to Brittni Muldrew's health and safety, and thus its actions or inactions constituted the unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution.

306.  John Does 1-5 also failed to take reasonable steps to ensure Brittni Muldrew's safety when they knew or should have known that a sufficiently serious danger to Brittni Muldrew existed, especially post shooting and because of their actions toward her which constituted deliberate indifference, and the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

307.  The failure of John Does 1-5 to take any reasonable steps to ensure Brittni Muldrew's health and safety when they knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that Ofc. Morgan had inflicted upon her constituted the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

308.  The brutal physical assaults, battery, and/or shooting of Brittni Muldrew violated the Fourth Amendment's proscription against the unlawful use of deadly force.

309.   These violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

310.  As a direct and proximate result of John Does 1-5's actions, Plaintiffs were damaged, such damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. John Does 1-5 is jointly and severally liable to Plaintiffs for the unlawful conduct alleged herein. Plaintiffs are entitled to punitive damages under this Count.

## COUNT XVIII
### (Violation of 42 U.S.C. §1983 based on Supervisorial Responsibility For Violations of Plaintiffs Civil Rights Against City of Coconut Creek)

311.  In addition to the Common Allegations, Plaintiffs re-allege and incorporate by reference the allegations of Paragraphs 2,6, 7, 8, 9, 11, 13 14, 15, 23 53, and 54, 56-66 inclusive, as though fully set forth herein.

312.     Defendant CITY through the CCPD, failed to adequately train, supervise, discipline or any other way control Defendant MORGAN in the exercise of their duties as officers, sergeants, commanders, lieutenants, and/or supervisors.

313.   Defendant CITY through the CCPD, is directly liable and responsible for the actions of Defendant MORGAN because of their knowing and intentional failure to enforce the laws of Florida and the constitutional rights of its citizens, including the deceased Brittni Muldrew, and the regulations of the CCPD, and by allowing the creation within the Department of an atmosphere of lawlessness in which Officers such as MORGAN are allowed to engage in the violation of civil rights without fear of discipline or reprisal, as fully set forth in the factual allegations in this Complaint. Defendant CITY by and through ALBERT A. ARENAL, its Chief of Police, knew, or in the exercise of reasonable care should have known, of such unlawful acts and practices prior to and at the time of the deceased brutal post-shooting beating and subsequent death.

314.   Defendant CITY through the CCPD, has a duty to exercise due care in the hiring, selection, training, supervising, oversight, direction, investigation, rewarding, discipline and control of its Officers, employees and agents. Said training was lacking in this incident in so much as proper de-escalation tactics where not taught prior to the incident or used in the incident.

315.    Defendant CITY and the CCPD, breached that duty intentionally, purposely, knowingly, recklessly, with deliberate indifference, with gross negligence, and /or negligently and without regard to human safety, security, fundamental rights of fairness, and those rights guaranteed by the State of Florida Constitution and the Constitution of the United States of America and its corresponding Amendments. By and through its Chief of Police, ALBERT A. ARENAL, Defendant CITY knew, or should have known, and had actual, implied or constructive notice of the tortious misfeasance and nonfeasance leading up to the acts and omissions of its Defendant MORGAN and employees and had the power to take reasonable steps to prevent or aid in the prevention of such tortuous actions or omissions. ln the exercise or due diligence, Defendant CITY could have taken reasonable preventative action.

316.    As the direct and proximate result of the supervisory failures of the Defendant, CITY, the deceased, Brittni Muldrew was placed in a position of increased risk and increased danger which she would not have faced had it not been for the intervention and actions of the Defendant Officers, and DOES 1-5 which resulted in her being beaten post-shooting with the subject steel baton to her head repeatedly and again dropped to the pavement only to be beaten again without any intervention thereby, creating, contributing and causing Brittni Muldrew to suffer needless post-shooting pain and subsequent death as set forth hereinabove.

317.  As the direct and proximate result of the supervisory failures of the CITY, Plaintiffs have suffered damages as set forth above.

318.  The mentioned acts of the CITY were willful, wanton, malicious and oppressive, thereby justifying the awarding of exemplary and punitive damages.

## COUNT XIX
**(Violation of 42 U.S.C. §1983 based on Supervisorial Responsibility
For Violations of Plaintiffs Civil Rights Against
Patton)**

319.  In addition to the Common Allegations, Plaintiffs re-allege and incorporate by reference the allegations of Paragraphs 1-66 inclusive, as though fully set forth herein.

320.   Defendant Patton through the CCPD, failed to adequately train, supervise, discipline or any other way control Defendant MORGAN in the exercise of their duties as officers, sergeants, commanders, lieutenants, and/or supervisors.

321.   Patton through the CCPD, is directly liable and responsible for the actions of Defendant MORGAN because of their knowing and intentional failure to enforce the laws of Florida and the constitutional rights of its citizens, including the deceased Brittni Muldrew, and the regulations of the CCPD. Patton by and through ALBERT A. ARENAL, the City's Chief of Police, knew, or in the exercise of reasonable care should have known, of such unlawful acts and practices prior to and at the time of the deceased brutal post-shooting beating and subsequent death.

322.   Patton had a duty to exercise due care in the oversight, direction, and control of officers, employees and agents of CCPD.

323.   Patton, breached that duty intentionally, purposely, knowingly, recklessly, with deliberate indifference, with gross negligence, and /or negligently and without regard to human safety, security, fundamental rights of fairness, and those rights guaranteed by the State of Florida Constitution and the Constitution of the United States of America and its corresponding Amendments. Patton knew, or should have known, and had actual, implied or constructive notice of the tortious misfeasance and nonfeasance leading up to the acts and omissions of MORGAN and other officers and had the power to take reasonable steps to prevent or aid in the prevention of such tortuous actions or omissions. ln the exercise or due diligence, Patton could have taken reasonable preventative action.

324.   As the direct and proximate result of the supervisory failures of Patton, the deceased, Brittni Muldrew was placed in a position of increased risk and increased danger which she would not have faced had it not been for the intervention and actions of the Officers, and DOES 1-5 which resulted in her being beaten post-shooting with the subject steel baton to her head repeatedly and again dropped to the pavement only to be beaten again without any intervention thereby, creating, contributing and causing Brittni Muldrew to suffer needless post-shooting pain and subsequent death as set forth hereinabove.

325.  As the direct and proximate result of the supervisory failures of Patton, Plaintiffs have suffered damages as set forth above.

326.  The mentioned acts of Patton were willful, wanton, malicious and oppressive, thereby justifying the awarding of exemplary and punitive damages.

## COUNT XX
### (Violation of 42 U.S.C. §1983 based on Supervisorial Responsibility For Violations of Plaintiffs Civil Rights Against Cummings)

327.  In addition to the Common Allegations, Plaintiffs re-allege and incorporate by reference the allegations of Paragraphs 1-66 inclusive, as though fully set forth herein.

328.  Defendant Cummings through the CCPD, failed to adequately train, supervise, discipline or any other way control Defendant MORGAN in the exercise of their duties as officers, sergeants, commanders, lieutenants, and/or supervisors.

329.  Cummings through the CCPD, is directly liable and responsible for the actions of Defendant MORGAN because of their knowing and intentional failure to enforce the laws of Florida and the constitutional rights of its citizens, including the deceased Brittni Muldrew, and the regulations of the CCPD. Cummings by and through ALBERT A. ARENAL, the City's Chief of Police, knew, or in the exercise of reasonable care should have known, of such unlawful acts and practices prior to and at the time of the deceased brutal post-shooting beating and subsequent death.

330.   Cummings had a duty to exercise due care in the oversight, direction, and control of officers, employees and agents of CCPD.

331.   Cummings, breached that duty intentionally, purposely, knowingly, recklessly, with deliberate indifference, with gross negligence, and /or negligently and without regard to human safety, security, fundamental rights of fairness, and those rights guaranteed by the State of Florida Constitution and the Constitution of the United States of America and its corresponding Amendments. Cummings knew, or should have known, and had actual, implied or constructive notice of the tortious misfeasance and nonfeasance leading up to the acts and omissions of MORGAN and other officers and had the power to take reasonable steps to prevent or aid in the prevention of such tortuous actions or omissions. ln the exercise or due diligence, Cummings could have taken reasonable preventative action.

332.   As the direct and proximate result of the supervisory failures of Cummings, the deceased, Brittni Muldrew was placed in a position of increased risk and increased danger which she would not have faced had it not been for the intervention and actions of the Officers, and DOES 1-5 which resulted in her being beaten post-shooting with the subject steel baton to her head repeatedly and again dropped to the pavement only to be beaten again without any intervention thereby, creating, contributing and causing Brittni Muldrew to suffer needless post-shooting pain and subsequent death as set forth hereinabove.

333.   As the direct and proximate result of the supervisory failures of Cummings, Plaintiffs have suffered damages as set forth above.

334.   The mentioned acts of Cummings were willful, wanton, malicious and oppressive, thereby justifying the awarding of exemplary and punitive damages.

335.   Plaintiffs have retained undersigned counsel and are obligated to pay counsel a fee for their services herein. Plaintiffs are entitled to reimbursement of their attorneys' fees and costs from the Defendants under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demands judgment against Defendants for the following:

(a)  that process issue and this court take jurisdiction over this cause;

(b)   that this court enter judgment against Defendants and for Plaintiffs granting equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiffs;

(c)   that this court enter judgment against Defendants and for Plaintiffs awarding all legally available general and compensatory damages, including damages for economic loss, to Plaintiffs from Defendants for Defendants' violations of law enumerated herein;

(d)   that this court enter judgment against Defendants and for Plaintiffs permanently enjoining Defendants from future violations of law enumerated herein;

(e)   that this court enter judgment against Defendants and for Plaintiffs awarding Plaintiffs costs and attorney's fees allowed by law;

(f)   that this court enter judgment against Defendants and for Plaintiffs awarding Plaintiffs interest where appropriate;

(g)   that this court enter judgment against Defendants and for Plaintiffs awarding Plaintiffs punitive damages against Defendants, Patton, Patton, Cummings, Escobar, and Defendant, John Does 1-5 and

(h)  that this court grant such other and further relief as is just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues herein that are so triable.

Dated this 18th day of January 2024

Respectfully submitted:

/s/ Marie A. Mattox
Marie A. Mattox; FBN 0739685
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:  (850) 383-4801
Marie@mattoxlaw.com

Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com

ATTORNEYS FOR PLAINTIFFS

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and accurate copy of the foregoing has

been furnished to all counsel of record by CM/ECF this 18th day of January, 2024.

<u>/s/ Marie A. Mattox</u>
Marie A. Mattox