UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE No. 23-61681-CIV-SINGHAL/VALLE

VICKI WATERS, as Personal Representative of
the ESTATE of BRITTNI A. MULDREW,
deceased, *et al.*,

      Plaintiffs,

v.

CITY of COCONUT CREEK, a Florida
Municipality, *et al.*,

      Defendants.

_____/


**DEFENDANTS, ANDREA CALDERON, ALEJANDRO ESCOBAR, AMANDA
CUMMINGS, ARTHUR PATTON, AND TY MORGAN'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO STRIKE CERTAIN DAMAGES
CLAIMS**

Defendants, Andrea Calderon ("Officer Caledeon"), Alejandro Escobar ("Officer Escobar"), Amanda Cummings ("Officer Cummings"), Arthur Patton ("Officer Patton"), and Ty Morgan ("Officer Morgan") (collectively, "Officers"), pursuant to Rule 12(b)(6), Fed. R. Civ. P., move to dismiss the Second Amended Complaint ("SAC"), ECF No. 49 filed by Vicki Waters, as the personal representative ("Personal Representative") of the estate of Brittni A. Muldrew ("Estate"), and her survivors, Vicki Waters, Brienna Muldrew, and Rian Muldrew ("Survivors"), as well as Vicki Waters, Brienna Muldrew, and Rian Muldrew, individually (collectively "Plaintiffs"), and also move to strike the certain damages claims against the Officers, pursuant to Rule 12(f), Fed. R. Civ. P., and state in support:

## OVERVIEW

This action stems from the fatal, police-involved shooting of Brittni A. Muldrew ("Muldrew") on August 30, 2021, following a traffic stop and Muldrew attempting to murder (or at least cause grievous bodily harm to) the City's responding officers by ramming them with a stolen vehicle and then attempting to flee the scene. The operative pleading – Plaintiffs' third bite at the apple in this action – asserts state and federal civil rights claims, pursuant to Florida's Wrongful Death Act, Fla. Stat. §§ 768.16, *et seq.*, and 42 U.S.C. § 1983, against Defendant, City of Coconut Creek ("City"), five unnamed "John Doe" defendants, and for the first time in any operative pleading, against the five Officers, individually.

The City filed a motion to dismiss on February 21, 2024.  *See* ECF No. 66.  In the interest of brevity, the Officers adopt this one argument advanced by the City, which are also applicable to here: Plaintiffs, Vicki Waters, Brienna Muldrew, and Rian Muldrew, individually, should be dismissed with prejudice for lack of standing [ECF No. 66, at 10-12].

Additionally, the Officers move to dismiss the state and federal claims asserted against them based on Rule 12(b)(6), Fed. R. Civ. P.  Specifically, the state-law Wrongful Death Act, claims (Counts I through V) fail to state a cause of action because Plaintiffs do not plead an underlying, actionable tort.  Additionally, the Officers are entitled to sovereign immunity based as to such claims based upon the threadbare allegations.

Plaintiffs similarly fail to state Fourth Amendment excessive force violations against the Officers (Counts VII through IX).  First, as to Officers Calderon, Patton, Cummings, and Escobar, the SAC fails to allege sufficient facts reflecting that any one of these Officers fired their weapon, utilizing deadly force against Muldrew.  Second, as pled in the SAC, Muldrew was deceased at the time Officer Morgan approached and, therefore, any civils rights cause action extinguished when she was fatally shot.  As to Plaintiffs' four failure to intervene claims (Counts XIII through XVI) they have failed to allege sufficient facts reflecting that Officers Calderon, Patton, Cummings, or Escobar could and/or should have intervened. Plaintiffs furthermore have not sufficiently alleged supervisory liability against Officer Patton or Officer Cummings (Counts XIX and XX) for the actions of Officer Morgan to the extent these claims are raised against them in their individual, versus official capacities, because allege no facts whatsoever reflecting that either Officer had a supervisory role over Officer Morgan or any facts supporting Officer Patton or Officer Cummings' involvement in Officer Morgan's allegedly unconstitutional actions. Moreover, Plaintiffs' state and federal claim against Defendants, "John Does 1-5" (Counts VI, XII, and XVII) should likewise be dismissed because unnamed "John Does" violate federal pleading standards. Fictitious parties, like "John Does 1-5," are simply not permitted. Lastly, Plaintiffs have insufficiently pled their claims for damages under the Wrongful Death Act and

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

categories of damages not recoverable by Plaintiffs for federal wrongful death claims, and said damages claim should be stricken.

## ARGUMENT

**I.     PLAINTIFFS' WRONGUFL DEATH ACT CLAIMS, COUNTS I THROUGH V, FAIL TO STATE A CLAIM.**

### A. *Plaintiffs Have Failed to Pled an Underlying, Derivative Tort Required to State a Wrongful Death Act Claim.*

Causes of action pursuant to Florida's Wrongful Death Act are "derivative" claims "because they are dependent on a wrong committed against the decedent." *Laizure v. Avante at Leesburg, Inc.*, 109 So.3d 752, 759–60 (Fla. 2013).  The Florida Supreme Court has stated that "[w]hile the Wrongful Death Act creates independent claims for the survivors, these claims are also derivative in the sense that they are dependent upon a wrong committed upon another person. No Florida decision has allowed a survivor to recover under the wrongful death statute where the decedent could not have recovered." *Id.* (quoting *Valiant Ins. Co. v. Webster,* 567 So.2d 408, 411 (Fla. 1990), *receded from on other grounds by Gov't Employees Ins. Co. v. Douglas,* 654 So.2d 118, 119–20 (Fla. 1995)). "In other words, recovery is precluded if the decedent could not have maintained an action and recovered damages if death had not ensued." *Laizure*, 109 So.3d at 760; *see also* Fla. Stat. 768.19 (permitting a cause of action "when the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, ... *and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued.*" (emphasis added); *O'Brien v. City of Pembroke Pines*, No. 05-61366-CIV, 2005 WL 8154845, at *10 (S.D. Fla. Nov. 16, 2005) (requiring a more definite statement where the plaintiff failed to identify an underlying tort as the basis for the wrongful death claim) (quoting Fla. Stat. § 768.19).   "The connection to the

underlying tort also permits defenses that would have been available to a defendant had the decedent lived, to be equally available to a defendant in a wrongful death action" *O'Brien*, 2005 WL 8154845, at *10 (citing Thomas D. Sawaya, *Fla. Personal Injury Law & Practice with Wrongful Death Actions,* §§ 22.1-.11 (2008–2009 ed.)).

Here, Counts I through V (the state law wrongful death claims asserted against each Officer, individually) contain identical (and legally insufficient) allegations to state a cause of action.  SAC, ¶¶ 67-91.  Specifically, Plaintiffs allege that the Officers acted "intentionally, recklessly, or negligently, in violation of § 768.16, et. seq., Fla. Stats., and in violation of §782.04, Fla. Stats., (Murder) or of §782.07, Fla. Stats. (Manslaughter)[,]" and that the Officers acted, individually "in participating in the traffic stop and shooting were the proximate cause and direct cause of the death of [] Muldrew."  SAC, ¶¶ 69, 70, 74, 75, 79, 80, 84, 85, 89, 90.  There are *no* other allegations regarding no elements of civil torts or factual allegations supporting same.

At the outset, Plaintiffs' reliance on Florida's *criminal* statutes for murder and manslaughter do not provide a *civil* cause of action in tort. *See* Fla. Stat. §§ 782.04, 782.0; *Haegele v. Judd*, No. 8:19-CV-2750-T-33CPT, 2020 WL 1640034, at *3 (M.D. Fla. Apr. 2, 2020) ("Haegele has not cited any authority establishing that the criminal manslaughter statute — Florida Statute § 782.07 — creates a private right of action separate from a traditional wrongful death claim."); *Morrison v. Morgan Stanley Props.*, No. 06-80751-CIV, 2007 WL 2316495, at *10 (S.D. Fla. Aug. 9, 2007) (stating where "a criminal remedy is available, and no civil remedy is assigned, it is not assumed that a civil remedy exists"); *Featherstone v. AT&T*, No. 3:17CV837-MCR-HTC, 2019 WL 5460198, at *3 (N.D. Fla. Sept. 24, 2019) ("Criminal statutes, however, do not generally create an independent cause of action for damages.") *report*

*and recommendation adopted*, No. 3:17CV837-MCR-HTC, 2019 WL 5457997 (N.D. Fla. Oct. 24, 2019).  Accordingly, Plaintiffs have failed to plead an underlying, derivative cause of action upon which their wrongful death claims can be based.

Moreover, Plaintiffs' cursory references to terms of art like "intentionally, recklessly, or negligently" are insufficient to state a civil tort. SAC, ¶¶ 67-91.  For example, how do Plaintiffs claim the Officers intentionally or recklessly caused Muldrew's death?  Are they asserting a battery claim?  Is it based on the same conduct they claim the Officers caused Muldrew's death "negligently"?  If the answer to the latter question is "yes," the law is well-settled "that it is not possible to have a cause of action for 'negligent' use of excessive force because there is no such thing as the 'negligent' commission of an 'intentional' tort."  *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996).  Notwithstanding, what actions do Plaintiffs claim give rise to any duty of care to Muldrew?  And how is any, individual Officer's "participation" in Muldrew's traffic stop a breach of said, unpled duty or a proximate cause of her death?  How did any one, individual Officer cause Muldrew's death, given that Plaintiffs fail to pled who actually shot Muldrew? *See generally* SAC.  These are not mere trivialities, but rather very basic pleading requirements to state a civil tort.  Accordingly, Counts I through V should be dismissed for failure to state a claim.

### B. The Officers Are Also Entitled to Sovereign Immunity, Pursuant to Fla. Stat. § 768.28(9)(a), as to Counts I through V.

Where a government employee acts "within the scope of employment and does not act in bad faith, with malicious purpose, or a in manner exhibiting wanton and willful disregard, the plaintiff's *exclusive recourse* is to seek damages from the governmental entity[.]" *Keck v. Eminisor*, 104 So. 3d 359, 366 (Fla. 2012) (citing Fla. Stat. § 768.28) (finding government

employee was entitled to sovereign immunity) (emphasis added).[1]  "[T]he only way that the individual Defendants can be held personally liable under a state-law [tort] claim is if they acted with bad faith, malice, or in wanton and willful disregard of human rights, safety, or property." *Hayden v. Broward Cnty.,* No. 12-62278-CIV, 2013 WL 4786486 at *13 (S.D. Fla. Sept. 6, 2013).  "In any given situation either the agency can be held liable under Florida law, or the employee, *but not both.*"  *McGhee v. Volusia Cnty.*, 679 So. 2d 729, 733 (Fla. 1996) (emphasis added); *Guerra v. Palm Beach Cnty. Sheriff's Office*, 657 Fed. App'x 886, 892 (11th Cir. 2016) (affirming dismissal of false arrest claims against two individual police officers based qualified and sovereign immunity where they allegedly "fabricated evidence and concealed exculpatory evidence," as there were no allegations that the officers employed fraudulent or corrupt means).

Here, the face of the SAC reflects the Officers are entitled to sovereign immunity.  First, the Officers clearly acted within the course and scope of their employment as law enforcement officers with the City, contrary to Plaintiffs' express, unsupported allegation otherwise. *Compare* SAC, ¶¶ 68, 73, 78, 83, 88, *with* ¶¶ 17 (alleging Officer Calderon was driving in her police vehicle with her dash camera recording), 23-29 (discussing Officer Calderon's traffic stop). Second, Plaintiffs have not alleged in Counts I, II, III, IV, or V – or the incorporated facts therein – that any, individual Officer acted in bad faith, malice, and/or with wanton and willful conduct (nor can they).  SAC, ¶¶ 1-91.  Accordingly, sovereign immunity is merited for the Officers.

   *i.   None of The Officers Were Acting Outside the Scope of Their Employment.*

---

[1] Like qualified immunity, Section 768.28 immunity is not merely immunity from liability, but rather immunity from being forced to participate as a defendant in the litigation. *Keck*, 104 So. 3d at 366-67; *see also Willingham v. City of Orlando*, 929 So. 2d 43, 47-48 (Fla. 5th DCA 2006).  "[B]ecause sovereign immunity includes immunity from suit, entitlement to sovereign immunity should be established as early in the litigation as possible."  *Fla. Hwy. Patrol v. Jackson*, 288 So. 3d 1179, 1185-86 (Fla. 2020).

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

Plaintiffs allege that each, individual Officer was acting "outside the scope of their employment with the [City] Police Department" at all pertinent times alleged.  SAC, ¶¶ 68, 73, 78, 83, 88.  Based on the factual allegations in the SAC, Plaintiffs' wordsmithing that the Officers acted "outside the course and scope of their employment" as police officers is simply a turn-of-phrase designed to avoid the Officers' sovereign immunity, pursuant to Fla. Stat. § 768.28(9)(a).

"Conduct of an employee is within the course and scope of employment when it (1) is of the kind the employee is hired to perform, (2) occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) is activated at least in part by a purpose to serve the master." *Taylor v. Wagner*, No. 8:20-CV-687-CEH-SPF, 2021 WL 2917765, at *4 (M.D. Fla. July 12, 2021) (discussing Florida's sovereign immunity statute in false arrest claim against law enforcement) (quoting *Goss v. Hum. Servs. Assocs., Inc.*, 79 So. 3d 127, 132 (Fla. 1st DCA 2012)).  For purposes of Florida's worker's compensation statute, for example, a law enforcement officer is acting within the course and scope of his employment when engaged in the "prevention or detection of crime or the enforcement of the penal, criminal, traffic, or highway laws of the State."  Fla. Stat. § 440.091(1)(a).  "Conduct is within the scope of employment if it occurs substantially within authorized time and space limits, and it is activated at least in part by a purpose to serve the master."  *Hennagan v. Dep't of Highway Safety & Motor Vehicles*, 467 So.2d 748, 751 (Fla. 1st DCA 1985)

At the outset, the Officers note that Plaintiffs raise contradictory allegations in the SAC regarding whether they were acting within the course and scope of their employment (which they were).  First, in Paragraph 10, Plaintiffs allege Defendants (including the Officers) "at all relevant times were acting within the course, purpose, and scope of that agency, service and/pr

employment capacity." SAC, ¶ 10.  They also allege that the Officers "were acting under color of law as a police officer, and in such capacity, as the agent, servant and employee of Defendant City of Coconut Creek."   SAC, ¶ 65. However – and despite explicitly incorporating these allegations into the wrongful death claims against the Officers – Plaintiffs then allege that each Officer acted "outside the scope of their employment with the [City] Police Department" at all pertinent times alleged.  SAC, ¶¶ 68, 73, 78, 83, 88.  Notwithstanding Plaintiffs' contradictory claims (which merit dismissal in and of itself), the factual allegations in the SAC clearly reflect that the Officers acted within the course and scope of their employment as City law enforcement officers at all material times alleged.  SAC, ¶¶ 1-66.

The underlying events are alleged to have begun when Officer Calderon, while in her police vehicle with lights and sirens, conducted a traffic stop of Muldrew. SAC, ¶¶ 21-23. Officer Calderon runs a DAVID search, and Officers Patton, Cummings, and Escobar arrive on the scene.  SAC, ¶¶ 30, 44, 46.  At some point during the seizure, Officer Morgan also arrives. SAC, ¶ 57.  Simply put, while Plaintiffs clearly dispute the underlying legality of the Officers' actions during the traffic stop, there are no factual allegations supporting Plaintiffs' claim that the Officers acted _outside_ the course and scope of their employment as City police officers during all material times.  They are unquestionably cloaked with the legal authority to conduct traffic stops, to investigate crimes (such as Muldrew's possession of a stolen vehicle), and to apprehend suspects using force, including deadly force, where necessary.  _See, e.g._, Fla. Stat. § 440.091(1)(a).[2] Accordingly, the Officers are entitled to sovereign immunity, pursuant to Fla. Stat. § 768.28(9)(a), Fla. Stat.

---

[2] The Officers' actions at issue here are markedly different and wholly distinguishable from cases in which courts have found that a police officer was _not_ acting within the course and scope of their law enforcement employment. _See, e.g._, _Casey v. City of Miami Beach_, 789 F. Supp. 2d 1318, 1320–21 (S.D.

ii. *Counts I through V (and the incorporated factual allegations) Fail to Allege the Officers Acted in Bad Faith, with Malice, or with Wanton and Willful Disregard.*

As discussed, *supra*, the Officers can only be stripped of their presumption of sovereign immunity if they acted outside the course and scope of their employment <u>or</u> acted with bad faith, malice, and wanton and will disregard for human rights, safety, or property. Fla. Stat. § 768.28(9)(a).  "Florida courts have held that bad faith, malice, and wanton and willful disregard language found in § 768.28(9) 'connotes conduct much more reprehensible and unacceptable than mere intentional conduct.'" *O'Boyle v. Thrasher,* 638 Fed. App'x 873, 879 (11th Cir. 2016) (citing *Richardson v. City of Pompano Beach,* 511 So.2d 1121, 1123 (Fla. 4th DCA 1987)) (holding plaintiff's state law claim for assault did not meet standard for "the kind of extraordinary conduct required for bad faith, malice, and wanton and willful disregard").

Notably, Plaintiffs <u>have not alleged (and cannot)</u> that the Officers acted with bad faith, malice, and wanton and will disregard for human rights, safety, or property in Counts I through V or within any of the incorporated allegations therein.  *See* SAC, ¶¶ 1-91.  Moreover, given that the Officers' clearly acted within the course and scope of their employment as law enforcement officers, based on the fact of the SAC, the absence of any allegations of bad faith, malice, or wanton disregard entitles them to sovereign immunity.  *Everton v. Willard*, 426 So.2d 996, 998 (Fla. 2d DCA 1983), *approved,* 468 So. 2d 936 (Fla. 1985) (stating the complaint against the deputy should have been dismissed based on his sovereign immunity in the absence of allegations of the deputy's bad faith, malice, or wanton disregard).  Accordingly, and notwithstanding Counts I through V's failure to state a claim, the Officers are entitled to sovereign immunity as to the state law wrongful death claims.

---

Fla. 2011) (holding a police officer's sexual battery was not within the course and scope of his employment with the City of Miami Police Department).

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

## II.      PLAINTIFFS FAIL TO STATE EXCESSIVE FORCE CLAIMS IN COUNTS VII THROUGH X.

Counts VII through X are excessive force claims against Officer Calderon, Officer Patton, Officer Cummings, and Officer Escobar based on the shooting of Muldrew.  SAC, ¶¶ 97-163.  While the Officers do not dispute that Muldrew was fatally shot in a police-involved shooting on August 30, 2021, they do dispute that Plaintiffs have alleged (or even can allege) a Fourth Amendment excessive force claim against the Officers in the SAC.

A claim of excessive force is analyzed through the lens of the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989).  Whether an officer's use of force was reasonable is based on "whether a reasonable officer would believe that this level of force is necessary in the situation at hand."  *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). Reasonableness of force is judged from the perspective of a reasonable officer on the scene, not with the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The Supreme Court has cautioned that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Here, the SAC supposedly relies on Officer Calderon's dashcam footage to describe the event leading up to the use of deadly force, utilizing the video's apparent time-stamps in an attempt to corroborate the Officers' locations vis-à-vis Muldrew prior to the shooting.  SAC, ¶¶ 17-53.  Plaintiffs fail, however – despite apparently being in possession of and otherwise relying upon the video depicting the events at issue (including which Officer fired his or her weapon and which Officer did not) – to utilize any level of specificity when setting forth the allegations

regarding who shot Muldrew and, notably, without citing the dashcam video. [3]  Specifically, Plaintiffs vaguely state:

> Despite the brake lights still illuminating and the front wheels of the car still turned to the right of way from all of the officers, *they* open fire on [Muldrew] hitting her with multiple gunshots, three (3) bullets striking [Muldrew] below her left breast, 1 in [her] left forearm, 1 in the right shoulder, and top of her head, 1 in the back area under her chest[,] and 1 in her left kidney.

SAC, ¶ 54 (emphasis added).  Plaintiffs fail, however, to define or otherwise identify which of the Officers allegedly fired shots or how many.  Instead, Plaintiffs employ generic allegations that the collective "they" shot Muldrew – without stating of whom the "they" consists (and despite possessing said information in the dashcam video, relied upon throughout the remainder of the SAC.  Accordingly, there are no factual allegations reflecting that Officer Calderon, Officer Patton, Officer Cummings, or Officer Escobar *actually* used deadly force (or any other level of force) towards Muldrew and, therefore, Plaintiffs' excessive force claims in Counts VII through X fail to state a claim.

## III.   PLAINTIFFS FAIL TO STATE A FOURTH AMENDMENT EXCESSIVE FORCE CLAIM AGAINST OFFICER MORGAN IN COUNT XI.

Plaintiffs assert an excessive deadly force claim against Officer Morgan solely for his actions *after* the shooting of Muldrew (and after she was already deceased).  SAC, ¶¶ 164-180. However, based on the allegations of the SAC, Plaintiffs appear to acknowledge that Muldrew was, in fact, deceased at the time of Officer Morgan's use of force towards Muldrew.  SAC, ¶ 57 As such, Plaintiffs cannot state a claim for use of excessive deadly force.

---

[3]  Curiously, Plaintiffs have not conventionally filed the actual dashcam videos referenced in the SAC.  It is for this reason that the Officers are unable to, at this juncture, assert a qualified immunity defense.  If, at some point, the Court has the opportunity to view the referenced videos, the Court will see the extreme discrepancies between what is alleged in the SAC and what actually happened, including the fact that several of the Officers never touched, much less shot, Muldrew.  And of the Officers that did shoot Muldrew, the actual video will undoubtedly demonstrate why they would be entitled to qualified immunity for the justifiable use of force.

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

"After death, one is no longer a person within our constitutional and statutory framework and has no rights of which he may be deprived."  *Whitehurst v. Wright*, 592 F.2d 834, 840 (5th Cir. 1979[4]) (holding events occurring after death cannot form any part of a Section 1983 actions); *see also Guyton v. Phillips,* 606 F.2d 248 (9th Cir. 1979) ("[T]he Civil Rights Act, 42 U.S.C. §§ 1983 and 1985, does not provide a cause of action on behalf of a deceased based upon alleged violation of the deceased's civil rights which occurred after his death."); *Perez v. City of Hialeah*, No. 19-24047-CIV, 2021 WL 3005491, at *13 (S.D. Fla. July 14, 2021)(acknowledging that claims of a post-mortem "cover-up" are not actionable under Section 1983); *McQurter v. City of Atlanta*, 572 F. Supp. 1401, 1419 (N.D. Ga. 1983) (stating, "it is clear that the civil rights of a person cannot be violated once that person is dead" in a § 1983 case).

The SAC strongly (and correctly) suggests that Muldrew was deceased by the time her "*body* was [] removed from the [stolen vehicle] after being repeatedly shot [and] *not possessing mind or consciousness.*"  SAC, ¶ 57 (emphasis added).  Plaintiffs describe Officer Morgan's actions as beating a "bullet[-]filled *body*"—a phrase clearly describing a deceased person.  SAC, ¶ 56 (emphasis added).  Moreover, the state-law wrongful death claims (which are not brought in the alternative to any other claim in the SAC) affirmatively allege that the shooting was the "proximate cause and the direct cause" of Muldrew.  SAC, ¶¶ 70, 75, 80, 85, 90.  Although Plaintiffs attempt to avoid the affirmative allegation that Muldrew was deceased at the time of Officer Morgan's encounter with Muldrew, viewed in the light most favorable to Plaintiffs, the factual claims clearly support the conclusion that Muldrew was deceased as a result of the shooting and prior to her encounter with Officer Muldrew.  Accordingly, Plaintiffs cannot state a

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

Fourth Amendment claim for excessive force against Officer Morgan in Count XI.

## IV.  PLAINTIFFS HAVE NOT SUFFICIENTLY ALLEGED A FAILURE TO INTERVENE CLAIMS IN COUNTS XIII THROUGH XVI AGAINST OFFICERS CALDERON, PATTON, CUMMINGS, AND ESCOBAR.

Plaintiffs next assert four Section 1983 failure to intervene claims, based on violations of Muldrew's Fourth Amendment rights, against Officers Calderon (Count XIII), Patton (Count XIV), Cummings (Count XV), and Escobar (Count XVI).  Specifically, Plaintiffs allege that these four officers should have (and failed to) intervene when Officer Morgan pulled Muldrew from the vehicle after unnamed officer(s) fired his or her weapon(s). SAC, ¶¶ 199-288. They claim Officers Calderon, Patton, Cummings, and Escobar had a "reasonable opportunity to intervene and failed to do so[,]" amounting to deliberate indifference and resulting in violations of Muldrew's Fourth Amendment rights.  SAC, ¶¶ 199-288.

First, for the same reasons that merit the dismissal of Count XI (i.e. that Muldrew was deceased by the time Officer Morgan used force against her body), Counts XIII through XVI should likewise be dismissed as the alleged failure to intervene occurred after Muldrew was deceased.  Regardless, even if Muldrew was not deceased at the time Officer Morgan is alleged to have used physical force against her, the failure to intervene claims against Officers Calderon, Patton, Cummings, and Escobar should still be dismissed.

"Even if an officer personally did not use excessive force, an officer who is present at the scene can be alternatively liable for failing to take 'reasonable steps to protect the victim of another officer's use of excessive force.'" *Johnson v. White*, 725 Fed. App'x 868, 878 (11th Cir. 2018) (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2019)). "However, an observing officer must have both the opportunity to intervene and be in a position to intervene and yet fail to do so." *Id.* (citing *Hadley*, 526 F.3d at 1331). "Instances of force that occur within

14

seconds do not place officers in a realistic position to intervene." *Id.*; *see also Hadley*, 526 F.3d at 1331 (finding no evidence from which a reasonable jury could find that an officer could have anticipated and stopped another officer from punching the plaintiff once in the stomach).

The failure to intervene claims, much like the other causes of action against the Officers, use phrases of art – such as "reasonable opportunity to intervene – without any supporting factual allegations. Specifically, the SAC fails to the allege the location of *any* Officer after the shooting occurred and at the time Officer Morgan approached Muldrew's body. SAC, ¶¶ 56-62. Plaintiffs notably use passive voice to carefully avoid alleging which Officer was located in what proximity to Muldrew's body and Officer Morgan (despite repeatedly relying on dashcam footage throughout the SAC). For example, Plaintiffs allege that Muldrew's "body was being removed from the automobile" – apparently by unknown persons – when Officer Morgan approached the body. SAC, ¶ 57. They further claim that Officer Morgan's alleged actions occurred "in the direct presence of an unknown superior officer and other officers who took no action to stop [Officer] Morgan." SAC, ¶ 58. They claim that Officer Morgan "was simply told to stop" (though by whom is not alleged) and that Officer Morgan and "the other Defendants who took part in the shooting[]" were not removed from Muldrew's presence. *Id.* ¶ 60.

Quite simply – and despite Plaintiffs' ostensible reliance on time-stamped body camera reference up until the point of the shooting – Plaintiffs fail to allege any facts supporting their cursory allegation that the Officers Calderon, Patton, Cummings, or Escobar somehow had a "reasonable opportunity" to intervene with Officer Morgan.[5] There are no allegations how quickly Officer Morgan approached Muldrew's body after the shooting, where Officer Calderon, Officer Patton, Officer Cummings, or Officer Escobar was located vis-à-vis Officer Morgan and

---

[5] The Officers submit this glaring omission is because the referenced dashcam footage does not support Plaintiffs' narrative or the elements of a failure to intervene claim.

Muldrew's body at the time of the alleged force, or _any_ facts showing that these officers were "in a position to intervene and yet fail to do so[,]" _Johnson_, 725 Fed. App'x at 878, as there cannot be.  Accordingly, Counts XIII through XVI should be dismissed for failure to state a claim.

## V.  PLAINTIFFS FAIL TO STATE SUPERVISORY SECTION 1983 CLAIMS AGAINST COUNT XIX AND IN COUNT XX.

"It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." _Hartley v. Parnell_, 193 F.3d 1263, 1269 (11th Cir. 1999) (quotation marks omitted). Instead, to hold a supervisor liable, a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between his actions and the alleged constitutional violation. _Id._ A plaintiff may establish a causal connection by showing: "(1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he failed to do so; (2) the supervisor's improper custom or policy led to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." _Hendrix v. Tucker_, 535 Fed. App'x 803, 805 (11th Cir. 2013) (cleaned up). In short, "[t]he standard by which a supervisor is held liable in h[is] individual capacity for the actions of a subordinate is extremely rigorous." _Braddy v. Fla. Dep't of Lab. & Emp. Sec._, 133 F.3d 797, 802 (11th Cir. 1998).

Notwithstanding this rigorous standard to hold a supervisor liable under Section 1983, Plaintiffs claims against Officer Patton and Officer Cummings suffer from a more basic infirmity: there is not a single allegation that either Officer Patton or Officer Cummings had _any_ supervisory role over (or had any authority to train or discipline) Officer Morgan on August 30, 2021 or at any time prior.  The allegations in the SAC, rather, reflect that Officer Patton and

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

Cummings are simply Officer Morgan's colleagues.  SAC, ¶¶ 13, 14.  Accordingly, because Plaintiffs have failed to meet the basic premises of a supervisory liability claim – namely, that Officer Patton or Officer Cummings were, in fact, Officer Morgan's supervisors – Counts XIX and XX fail to state a claim.  *See N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla.*, 418 F. Supp. 3d 957, 982 (N.D. Fla. 2019) (dismissing supervisory liability claim "because the factual allegations in the complaint do not plausibly establish—directly or inferentially—that the individual was a supervisory official"); *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1366 (S.D. Ga. 2015) (dismissing claims against an alleged supervisor because the complaint failed to allege facts from which the court could infer that individual had any supervisory role).

Additionally, and even assuming *arguendo* that the SAC could establish some sort of supervisory role over Officer Morgan (which it does not and cannot), Plaintiffs claims in Counts XIX and XX fail to meet any of the remaining supervisory liability elements.  First, Plaintiffs do not assert (nor can they) that either Officer Patton or Officer Cummings *directly* participated in the allegedly unconstitutional conduct by Officer Morgan, namely, the claim that Officer Morgan "beat" Muldrew post-shooting.  *See generally* SAC; *Hartley*, 193 F.3d at 1269.  Plaintiffs has also failed to sufficiently plead the alternative method of alleging supervisory liability, namely, that any causal connection existed between Officer Patton's or Officer Cummings' actions and Officer Morgan's alleged constitutional violations.  *Hartley*, 193 F.3d at 1269.  Specifically, the SAC is wholly void of any allegations that Officer Morgan had a "history of widespread abuse," that Officer Patton or Officer Cummings enacted an improper custom or policy, that they directed Officer Morgan to act unlawfully, or that they knew Officer Morgan would act unlawfully and failed to stop him from doing so. *Hendrix*, 535 Fed. App'x at 805.  Accordingly, Counts XIX and XX wholly fail to state a claim of supervisory liability, meriting dismissal.

VI.     **COUNTS VI, XII, AND XVII, THE CLAIMS BROUGHT AGAINST JOHN DOES 1-5, SHOULD BE DISMISSED WITH PREJUDICE.**

Count VI (wrongful death), Count XII (§1983 claim for excessive and deadly force), and Count XVII (4th amendment failure to intervene) were brought against John Does 1-5 ("John Doe Defendants").  At the outset, the Officers note that these claims fail for the same reasons the claims against them fail as set forth, supra Sections I through V.  Indeed, the allegations in the claims against the Officers are identical to those against John Does 1-5.  Moreover, even when viewed in the light most favorable to Plaintiffs, these counts must also be dismissed because the counts as plead are impermissible in federal court.

"As a general matter, fictitious-party pleading is not permitted in federal court." *Vielma v. Gruler*, 808 Fed. App'x 872, 880 (11th Cir. 2020) (quoting *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)).  Eleventh Circuit precedent has allowed plaintiffs to "sue real parties under fictitious names only when use of a 'John Doe' label is, 'at the very worst, surplusage' because the plaintiff's description of the defendant is "sufficiently clear to allow service of process." *Id.* (quoting *Dean v. Barber*, 951 F.2d 120, 1215–16 n.6 (11th Cir. 1992)).

The SAC provides no description of the John Doe Defendants.  Instead, the SAC simply states that the John Does Defendant are employees of the City and police officers of the CCPD. *See* SAC, ¶ 16. These allegations are insufficient under the Eleventh Circuit's pleading standards, and the Eleventh Circuit has affirmed dismissal of claims containing such generic descriptions.  *See Vielma*, 808 Fed. App'x at 881 (affirming the district court's dismissal of the John Doe defendant based on the plaintiffs' providing no description at all for some of the defendants and highly generic descriptions such as "male detective" for the others); *Kabbaj v. John Does 1-10*, 600 Fed. App'x 638, 641 (11th Cir. 2015) (affirming the dismissal of the counts against John Does 3-10 based upon the plaintiff providing no identifiable information as to those

defendants); *Richardson*, 598 F.3d at 738 (affirming the dismissal of the john doe defendant where the plaintiff only described the defendant as "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute" because such description was "insufficient to identify the defendant among the many guards employed at the CCI").

Here, Plaintiffs' allegations describe the John Doe Defendants as officers of the CCPD and employees of the City.   *See* SAC, ¶ 16.  But like *Richardson*, this description is insufficient to identify the John Doe Defendants among the many officers at the CCPD.  Moreover, neither the general allegations nor the counts against the John Doe Defendants provide any additional description to help identify the officers. *See generally,* SAC.  Plaintiffs may claim that discovery will later reveal the identity of the John Doe Defendants.  But Eleventh Circuit precedent "has never permitted John Doe pleading solely on the ground that discovery might reveal an unnamed defendant's identity.  Instead, our precedent has always required an unambiguous description of a defendant that enables service of process." *Vielma*, 808 Fed. App'x at 880.

Because the "sue-first-and-sort-out-the-defendant-later approach is not how litigation works in federal court," *id.* at 881, this Court should dismiss the Counts VI, XII, and XVII brought against the John Doe Defendants.

## VII.   PLAINTIFFS SEEK DAMAGES INSUFFICIENTLY PLED AND/OR NOT RECOVERABLE UNDER FLORIDA'S WRONGFUL DEATH ACT AND SECTION 1983, WHICH SHOULD BE STRICKEN.

### A. *Plaintiffs' Wrongful Death Damages in Counts I Through V Are Insufficiently Pled And Should Be Stricken.*

To claim damages under Florida's Wrongful Death Act, "All potential beneficiaries of a recovery for wrongful death, including the decedent's estate, shall be identified in the complaint, and their relationships to the decedent shall be alleged."  Fla. Stat. § 768.21.  At the outset, Plaintiffs wholly fail to allege the relationship of Vicki Waters, Brieanna Muldrew, or Rian

Muldrew to the decedent.  *See generally,* SAC, ¶¶ 1-8.  This failure to comply with the statutory requirements alone merits striking Plaintiffs' wrongful death damages claims.

Additionally, Plaintiffs make the generic allegation that they are entitled to "all wrongful death damages allowable under § 768.21, Fla. Stat.," which is insufficiently pled and should be stricken. SAC, ¶¶ 71, 75, 81, 86, 91. Under Florida law – applicable to the damages claims here – special or consequential damages (i.e., damages which do not necessarily result from the injury complained of or which the law does not imply as the result of that injury, like Plaintiffs' Wrongful Death Act damages) "must be *particularly specified* in the plaintiff's pleading." *Thompson v. Kindred Nursing Centers E., LLC*, 211 F. Supp. 2d 1345, 1356 (M.D. Fla. 2002) (emphasis added).  "This requirement has been construed by the Florida courts to mean that a claim for special damages is sufficiently pleaded to withstand a motion to strike if it notifies the defendant of the nature of the special damages claimed." *Id.*

Here, Plaintiffs' generic claim from all allowable wrongful death damages lacks the requisite particularity to place the Officers on notice of the nature of the damages claimed— particularly given the fact that Plaintiffs fail to identify the relationship of the Survivors, Vicki Waters, Brieanna Muldrew, and Rian Muldrew—to the decedent.  The lack of specificity – and the range of special damages available under Section 768.21 – merits striking these claims. SAC, ¶¶ 71, 75, 81, 86, 91.

### B.  *Plaintiffs' Fourth Amendment Claims Seeks Damages Not Recoverable.*

"Although § 1983 is clearly intended to remedy constitutional violations resulting in death, neither § 1983 nor the common law expressly provided for the survival of a personal injury pain and suffering claim after death occurs." *Sharbaugh v. Beaudry*, 267 F. Supp. 3d 1326, 1335 (N.D. Fla. 2017). Rather, "through the express provisions of § 1988, Congress has

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

placed the survival of claims in the legislative hands of the states." *Id.* "Florida's comprehensive wrongful death statutory scheme expresses a clear legislative intent to hold wrongdoers liable when their actions result in death and compensates the decedent's estate as well as living survivors, who otherwise would bear the loss from the decedent's death." *Id.* Accordingly, Florida's Wrongful Death Act governs the damages recoverable under a Section 1983 claim based on an alleged, wrongful death.

Here, Plaintiffs purport to seek pre-death damages in the Section 1983 claims against the Officers, which are not recoverable.  Specifically, Plaintiffs demands damages for "grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments." SAC, ¶¶ 113, 130, 147, 163, 181, 221, 224, 266, 288.  These damages appear to be claimed on behalf of Muldrew, individually (i.e., bodily injury, as there are no allegations that the Personal Representative or the Survivors have suffered bodily injury) and are, therefore, not recoverable.  *See Sharbaugh*, 267 F. Supp. 3d at 1335. To the extent these damages are claimed on behalf of the Estate and the Survivors, Plaintiffs cannot recover for "loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments" under Section 768.21, Fla. Stat., nor have they properly pled damages for mental pain and suffering, as set forth *supra*, Section VII.A.  *See also Brown v. Seebach*, 763 F. Supp. 574, 583 (S.D. Fla. 1991) ("Fla. Stat. § 768.21 controls what damages may be awarded in a wrongful death action. Hedonic damages . . . are not made a part of Fla. Stat. § 768.21.").  Accordingly, these damages claims should be stricken, pursuant to Rule 12(f), Fed. R. Civ. P.

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

**CERTIFICIATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel certifies that counsel for the movant has conferred with Counsel for Plaintiffs regarding the relief sought pursuant to Rule 12(f), Fed. R. Civ. P., in this Motion, and Counsel for Plaintiffs opposes same.

WHEREFORE, Defendants, Andrea Calderon, Alejandro Escobar, Amanda Cummings, Arthur Patton, and Ty Morgan respectfully requests that the Court grant this Motion, dismiss the claims against them individually in the Second Amended Complaint, ECF No. 49, and award any further relief the Court deems just and proper.

DATED:        February 27, 2024            Respectfully submitted,

WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
*Counsel for Defendants, Andrea Calderon, Lejandro Escobar, Amanda Cummings, Arthur Patton, and Ty Morgan*
200 East Broward Boulevard, Suite 1900
Fort Lauderdale, FL  33301
Telephone: 954-763-4242

By:        /s/ *Anne R. Flanigan*
MATTHEW H. MANDEL
Florida Bar No. 147303
Primary e-mail: mmandel@wsh-law.com
Secondary e-mail:  lbrewly@wsh-law.com
ANNE R. FLANIGAN
Florida Bar No.  113889
Primary e-mail:  aflanigan@wsh-law.com
Secondary e-mail: pgrotto@wsh-law.com
BRYAN C. SIDDIQUE
Florida Bar No. 1018191
Primary e-mail: bsiddique@wsh-law.com
Secondary e-mail: mboschini@wsh-law.com