UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-61681-CIV-SINGHAL

VICKI WATERS, as Personal Representative
of the Estate of Brittni A. Muldrew, Deceased, *et al.*,

    Plaintiffs,

v.

CITY OF COCONUT CREEK, *et al.,*

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant City of Coconut Creek's ("City") Motion to Dismiss Second Amended Complaint and Motion to Strike Punitive Damages Claim. (DE [66]). For the reasons discussed below, the Motion to Dismiss is granted.

### I.    BACKGROUND

Plaintiff, Vicki Waters ("Waters"), is the personal representative of the Estate of Brittni A. Muldrew. Plaintiffs Vicki Waters, Brienna Muldrew, and Rian Muldrew (the "individual Plaintiffs") are survivors and sue on their own behalf. Plaintiffs seek damages under Florida law and under the federal civil rights statute, 42 U.S.C. § 1983, for the death of Brittni A. Muldrew ("Muldrew") in a police-involved shooting. Defendants are the City of Coconut Creek, five officers sued in their individual capacities, and five "John Does."

Plaintiffs' claims are set forth in a Second Amended Complaint. (DE [49]). That title is a bit misleading. Plaintiffs filed two amended complaints before service of process was made, *see* (DE [4], [10], [11], and [12]) and amended again after the City filed its first Motion to Dismiss. *See* Motion to Dismiss (DE [30]) and Motion for Leave to Amend (DE [48]). The operative pleading was filed on January 18, 2024. (DE [49]).

Plaintiffs sue the City of Coconut Creek (Count 18), Officer Amanda Cummings (Count 19) and Officer Arthur Patton (Count 20) for "supervisorial responsibility" under 42 U.S.C. § 1983 for violation of "Plaintiffs Civil Rights." The City moves to dismiss Counts 18, 19, and 20, for failure to state a claim, Fed. R. Civ. P. 12(b)(6), or alternatively, to strike Plaintiffs' claim for punitive damages, Fed. R. Civ. P. 12(f). Plaintiffs concede that punitive damages cannot be imposed against the City, but argue they have stated a claim for municipal liability.

## II.     LEGAL STANDARDS

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions . . . a formulaic recitation of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir.

2007). However, pleadings that "are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### III.  DISCUSSION

#### a.  Counts 18, 19, and 20: § 1983 claims

The City argues that Counts 18, 19, and 20 should be dismissed because they fail to state a proper claim for relief under § 1983.[1] "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978)).

"[T]he bar to establish municipal liability is very high." *Simmons v. Bradshaw,* 879 F.3d 1157, 1169 (11th Cir. 2018). "A plaintiff can establish municipal liability under *Monell* in three ways: (1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.,* 48 F.4th 1222, 1229 (11th Cir. 2022). The City argues the Plaintiffs have not sufficiently alleged any of these possibilities.

Plaintiffs allege in Count 18 that:

> Defendant CITY through the CCPD, failed to adequately train, supervise, discipline or any other way control Defendant Morgan in the exercise of their duties as officers, sergeants, commanders, lieutenants, and/or supervisors. (DE [49] ¶ 312).

---

[1] Although they describe conduct of individual officers, it appears that Counts 19 and 20 are directed against the City. The actions of Patton and Cummings are alleged to have been "through the [Coconut Creek Police Department] and appear to be based on a theory of respondeat superior and/or supervision. (DE [49] ¶¶ 319-335). Plaintiffs' response (DE [73]) does not challenge this conclusion.

> Defendant CITY through CCPD, is directly liable and responsible for the actions of Defendant MORGAN because of their knowing and intentional failure to enforce the laws of Florida and the constitutional rights of its citizens, including the deceased Brittni Muldrew, and the regulations of the CCPD, and by allowing the creation within the Department of an atmosphere of lawlessness in which Officers such as MORGAN are allowed to engage in the violation of civil rights without fear of discipline or reprisal, as fully set forth in the factual allegations in this Complaint. (*Id.* ¶ 313).
>
> Defendant CITY through the CCPD, has a duty to exercise due care in the hiring, selection, training, supervising, oversight, direction, investigation, rewarding, discipline and control of its Officers, employees and agents. Said training was lacking in this incident in so much as proper de-escalation tactics were not taught prior to the incident or used in the incident. (*Id.* ¶ 314).
>
> ….By and through its Chief of Police, ALBERT A. ARENAL … knew or should have known, and had actual, implied or constructive notice of the tortious misfeasance and nonfeasance leading up to the acts and omissions of its Defendant MORGAN and employees and had the power to take reasonable steps to prevent or aid in the prevention of such tortuous actions or omissions. In the exercise of due diligence, Defendant CITY could have taken reasonable preventative action. (*Id.* ¶ 315).
>
> As the direct and proximate result of the supervisory failures of the Defendant, CITY, the deceased, Brittni Muldrew was placed in a position of increased risk and increased danger which she would not have faced had it not been for the intervention and actions of the Defendant Officers, and DOES 1-5 which resulted in her being beaten post-shooting with the subject steel baton to her head repeatedly and again dropped to the pavement only to be beaten again without any intervention thereby, creating, contributing and causing Brittni Muldrew to suffer needless post-shooting pain and subsequent death as set forth above. (*Id.* ¶ 316).

The Second Amended Complaint also contains the following allegations against the City:

> MORGAN's acts coupled with excessive use of deadly force are a direct and proximate cause of the Defendant City failure to hold these officers accountable its Coconut Creek and its Police Department to observe the legally mandated use of deadly force training, and constitutional rights of an unarmed person who posed no threat which contributed to the Defendants deadly use of firearm shooting and Morgan's ruthless acts unaddressed will dispel any notion of justice and plague not only those

> officers who are sworn to uphold the law but absent accountability will do more harm to a system already riddled with issue of trust.[2] (*Id.* ¶ 62.)
>
> Pursuant to Florida law Defendant CITY was charged with the duty of maintaining, staffing and supervising all police activities in the City of Coconut Creek and had ultimate authority over such activities. The Defendant City was at all times materially responsible for the conduct of the police officers in its employ with the Coconut Creek Police Department to ensure that its Police Department's officers, employees, servants, and agents obey the laws of the State of Florida and the United States. (*Id.* ¶ 63).
>
> Upon newly discovered information and belief the Defendant City, knew or should have known that the named defendant officers' and unknown DOE officers and or supervisors' actions and inactions in this homicide appears consistent with the widespread practice of its Coconut Creek Police Department – violated state law that mandated regular training in the use of deadly force, use deadly force, excessive use of force, and procedural traffic stops, improper and unlawful use firearms in clear violation of the proper procedures. (*Id.* ¶ 65).

The allegations in Counts 19 and 20 are nearly identical to each other; only the names of the individual officers (Patton and Cummings) are changed:

> Defendant Patton [Cummings] through the CCPD, failed to adequately train, supervise, discipline or any other way control Defendant MORGAN in the exercise of their duties as officers, sergeants, commanders, lieutenants, and/or supervisors. (*Id.* ¶ ¶ 320, 328).
>
> Patton [Cummings] through the CCPD, is directly liable and responsible for the actions of Defendant MORGAN because of their knowing and intentional failure to enforce the laws of Florida and the constitutional rights of its citizens, including the deceased Brittni Muldrew, and the regulations of the CCPD. Patton [Cummings] by and through ALBERT A. ARENAL, the City's Chief of Police, knew, or in the exercise of reasonable care should have known, of such unlawful acts and practices prior to and that the time of the deceased brutal post-shooting beating and subsequent death. (*Id.* ¶¶ 321, 329)

Plaintiffs argue that the Second Amended Complaint meets the various tests for establishing municipal liability. They argue the pleading raises an inference of the existence of an officially adopted policy: because one of the officers began beating

---

[2] Wording taken verbatim from the Second Amended Complaint.

Muldrew after she had been shot, "it is at least a plausible and reasonable inference that [the City] had a policy of beating people with batons after shooting them, regardless of the state of the person shot." (DE [73] pp. 3-4). With all due respect, it is not. The Second Amended Complaint contains *no allegations* that would support the existence of an officially adopted policy. Vague and conclusory allegations are not sufficient to withstand a motion to dismiss a claim of municipal liability. *Gray v. Citiy of Roswell,* 486 Fed. Appx. 798, 801 (11th Cir. 2012).

Plaintiffs next argue that the *Monell* requirements are satisfied because of actions taken by a final policymaker. A local government can be held responsible "for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision." *See McMillian v. Johnson,* 88 F.3d 1573, 1577 (11th Cir.1996). "Municipal liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure." *Hoefling v. City of Miami,* 811 F.3d 1271, 1279 (11th Cir. 2016).

Plaintiffs' final policymaker argument is nearly as attenuated as their official policy argument. According to Plaintiffs, the Second Amended Complaint alleges that several unknown supervisors were present at the incident but failed to intervene (DE [49] ¶ 61); Plaintiffs conclude, therefore, that these unnamed superiors were final policymakers whose actions were not subject to meaningful review. *See* Plaintiff's Response (DE [73] pp.4-5). This does not satisfy the pleading requirements for a *Monell* claim.

"Supervisory liability under § 1983 must be based on something more than the theory of respondeat superior." *Henley v. Payne,* 945 F.3d 1320, 1331 (11th Cir. 2019) (quotation omitted). There must be a causal connection between a supervisor's actions and the alleged constitutional violation. *Id.* "One way of proving the requisite causal

connection is to demonstrate that the supervisor's policy or custom resulted in deliberate indifference to constitutional rights. A plaintiff can only allege the existence of a policy or custom by pointing to multiple incidents or multiple reports of prior misconduct by a particular employee." *Id.* (cleaned up and citations omitted). Plaintiffs' Second Amended Complaint alleges no custom or policy by the unnamed supervisors and, therefore, fails to state a claim under that theory.

Furthermore, Plaintiffs allege no facts that would support involvement by a final policymaker. "The final policymaker theory of liability provides a method for establishing local governmental liability where an individual vested with ultimate, non-reviewable decision-making authority for the challenged action or policy has approved or implemented the unconstitutional action at issue." *Baker v. City of Atlanta,* 662 F. Supp. 3d 1308, 1320 (N.D. Ga. 2023) (quoting *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1124 (N.D. Ga. 2016) (citing *Scala v. Winter Park*, 116 F.3d 1396, 1398–1403 (11th Cir. 1997))). "Whether an employee has final policymaking authority is an issue of law for a court to decide." *Id.*

Plaintiffs cite no authority or facts that would support the conclusion that officers on the scene were final policy makers as that term is construed under *Monell.* "To determine if someone is a final policy maker, [courts] look not only to state and local positive law, but also custom and usage having the force of law." *Id.* (citations omitted). Plaintiffs have cited no law, custom, or usage from which the Court can find support for the conclusory allegations that final policy makers were present at the scene.

Next, Plaintiffs argue that a failure to train can support a finding of governmental liability under *Monell.* But Plaintiffs again fail to recognize that liability for failure to train must be premised on a "pattern of similar constitutional violations by untrained

7

employees." *Connick v. Thompson,* 563 U.S. 51, 62 (2011). A municipality's failure to train or supervise its police officers may rise to the level of an actionable "policy" or "custom" if there existed a prior history or widespread practice of a constitutional abuse that would have put the municipality on notice of a need for improved training or supervision in that area, and the municipality deliberately chose to ignore the problem, i.e. the government displayed a "deliberate indifference" to a history of constitutional abuses. *Bakst v. Tony*, 2019 WL 11497910, at *8 (S.D. Fla. Mar. 18, 2019) (quoting *Board of County Com'rs v. Brown*, 520 US 397 (1997)).

The Second Amended Complaint fails to allege any other incidents from which a pattern of similar incidents could be inferred. Indeed, Plaintiffs argue that the facts alleged show that Defendants shot an unarmed woman and beat her with a baton; from that they claim to have appropriately pled that the damages were caused by Defendant's failure to train, supervise or discipline its officers. (DE [73], p. 10). But there are no allegations of a pattern of similar actions. Municipal liability under § 1983 for failure to train or supervise cannot be based on a single incident.

Finally, Plaintiffs argue that liability can be established by a custom or practice. This is correct, but Plaintiffs do not allege any facts from which a custom or practice can be found. Municipal acts rising to the level of an official government policy under *Monell* have included express policies and widespread practices that, "although not authorized by written law or express municipal policy, [are] so permanent and well settled as to constitute a custom and usage with the force of law." *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1481 (11th Cir.1991) (internal quotes omitted) (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988)). A custom requires the plaintiff to identify evidence showing "[a] pattern of similar constitutional violations." *Craig v. Floyd Cty.*, 643

8

F.3d 1306, 1310 (11th Cir. 2011) (quoting *Connick*, 563 U.S. at 62).

Plaintiffs argue that because the incident happened and supervisors were alleged to have been present, there must be a custom or practice. The rules of pleading and the standards for municipal liability under § 1983 just don't work that way. Plaintiffs have failed to state a claim for liability against the City of Coconut Creek and its supervisors in their official capacities.

Plaintiffs ask for leave to amend their pleading. The Court will deny this request for several reasons. First, as mentioned above, this is the third attempt at pleading a case. Defendants moved to dismiss the First Amended Complaint, so Plaintiffs were on full notice of the deficiencies in their pleading but failed to cure them in the Second Amended Complaint. Plaintiffs have availed themselves of the right to amend but failed to plead a proper case of municipal liability. The Court must conclude that any additional amendment would be futile. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant City of Coconut Creek's Motion to Dismiss Second Amended Complaint (DE [66]) is **GRANTED.** Counts 18, 19, and 20 of the Second Amended Complaint are **DISMISSED WITH PREJUDICE.**

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 5th day of August 2024.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF