IN THE UNITED STATES DISTRICT COURT IN AND FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:23-cv-61681-AHS

VICKI WATERS, as Personal Representative
of the ESTATE OF BRITTNI A. MULDREW, deceased,
for the benefit of her estate and survivors,

                         Plaintiff,

vs.

ANDREA CALDERON, in her individual capacity;
LEJANDRO ESCOBAR,  in his individual capacity;
AMANDA CUMMINGS, in her individual capacity;
ARTHUR PATTON, in his individual capacity; and
TY MORGAN, in his individual capacity.

                         Defendants.

_____/

## THIRD AMENDED COMPLAINT

Plaintiff, Vicky Waters, as Personal Representative of the Estate of Brittni A.

Muldrew, deceased, (Known as "Brittni Muldrew" or "Decedent") through her

undersigned counsel files her Third Amended Complaint for the benefit of her estate,

and her survivors, to wit: Vicky Waters, Brieanna Muldrew, a minor child and Rian

Muldrew, a minor child, and for their Complaint, hereby sue Defendants, Andrea

Calderon in her individual capacity ("Calderon"), Ofc. Arthur Patton in his

individual capacity ("Patton"), Ofc. Amanda Cummings, in her individual capacity

("Cummings"), Ofc. Alejandro Escobar, in his individual capacity ("Escobar"), and Ofc. Ty Morgan in his individual capacity ("Morgan"), and/or their supervisory capacities, and state:

## NATURE OF THE ACTION

1.      This is an action brought under §768.16, et seq., Fla. Stats. (Florida's Wrongful Death Act), for an intentional tort resulting in death, as described in §782.04, Fla. Stats. (Murder) or §782.07, Fla. Stats. (Manslaughter) and for the assault and battery inflicted upon the Decedent resulting in her death; and under 42 U.S.C. §1983, for Defendants' violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution, applicable to states and state agencies through the Fourteenth Amendment.  Attorneys fees are sought on under 42 U.S.C. §1988.

2.      This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorney's fees and costs.  Jurisdiction of this Court is invoked pursuant 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1343 (civil rights claim jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

3.      All events pertinent to this action took place in Broward County, Florida. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 1343(a)(3), and 1367.

**CONDITIONS PRECEDENT**

4.     Plaintiff filed for probate on March 12, 2023, in the Circuit Court of the Fifteenth Judicial Circuit of Florida for Palm Beach County under Case No. 2023-CP-001219.

5.     Plaintiff filed for and was appointed guardian on March 11, 2023, in the Circuit Court of the Fifteenth Judicial Circuit of Florida for Palm Beach County under Case No. 2021-GA-000756 of the person and property of Brittni Muldrew to act as guardian of Decedent's children, Brieanna Muldrew, minor, and Rian Muldrew, minor, with full power.

6.     All conditions precedent to suit have occurred, been performed, waived, or been excused, specifically including full compliance with the pre suit notice requirements of Florida Statute 768.28.

7.     All other conditions precedent to bringing this action have been fulfilled, if any.

**PARTIES**

8.     At the time of her death, Brittni Muldrew was a resident of Palm Beach, County, Florida.  Plaintiff, Vicki Waters, brings this action as Personal Representative of the Estate of Brittni Muldrew, deceased, for the benefit of her estate and survivors, to wit:  Vicki Waters, Brieanna Muldrew, and Rian Muldrew.

3

9.      Defendant, ANDREA CALDERON, ("CALDERON") was at all times relevant to this Complaint, an employee of the City of Coconut Creek ("City") and a police officer of the Coconut Creek Police Department (CCPD). At all times material and relevant to this Complaint, Defendant CALDERON acted in her individual capacity, under color of state law.

10.      Defendant, ALEJANDRO ESCOBAR ("ESCOBAR") was at all times relevant to this Complaint, an employee of the CITY and a police officer of the CCPD. At all times material and relevant to this Complaint, Defendant ESCOBAR acted in his individual capacity, under color of state law.

11.      Defendant, AMANDA CUMMINGS ("CUMMINGS") was at all times relevant to this Complaint, an employee of the CITY and a police officer of the CCPD. At all times material and relevant to this Complaint, Defendant CUMMINGS acted in her individual capacity, under color of state law.

12.      Defendant, ARTHUR PATTON ("PATTON") was at all times relevant to this Complaint, an employee of the CITY and a police officer of the CCPD. At all times material and relevant to this Complaint, Defendant PATTON acted in his individual capacity, under color of state law.

13.      Defendant, TY MORGAN ("MORGAN") was at all times relevant to this Complaint, an employee of the CITY and a police officer of the CCPD. At all

times material and relevant to this Complaint, Defendant MORGAN acted in his individual capacity, under color of state law.

## STATEMENT OF ULTIMATE FACTS

### The Traffic Stop[1]

14.     On or about the evening OF August 30, 2021, the Defendant Calderon's police car dash video camera is engaged and appears to be driving in the far-left lane heading west on Hillsborough Blvd in the City of Coconut Creek (Calderon's dash cam video camera begins at 00:00, which video has been previously filed with the Court).  CALDERON is seen passing several cars, one of which is white yet has not engaged her police lights or siren.  CALDERON reaches the traffic light at the intersection of Hillsborough Blvd. and Lyons Road, in the City of Coconut Creek, Broward County, within approximately 33 seconds from the start of her dash cam video (see Calderon car dash video camera  at 00:33) at which point CALDERON'S police car comes to a complete stop at the intersection and is sitting some 5-6 cars behind several other cars.

15.     The traffic light at the intersection changes as recorded on CALDERON'S police car video.  (Calderon car video camera is at 00:45).

---

[1] As recorded on the redacted Dash Cam Video from Ofc. Calderon's police vehicle which is referenced in seconds then minutes and seconds.

16.     After the traffic light changes, CALDERON proceeds straight through the intersection and drives her police car into the far-right lane behind a white car at 52 seconds on her dashcam video.

17.     CALDERON'S dash cam video shows no erratic driving of the white car she is driving behind, yet within 11 seconds, CALDERON, for the first time, engages only her police lights. (See dash cam video 1:03).

18.     Upon CALDERON engaging her police lights, immediately, the white car engages its right turn single and turns right into a well-lit Subway parking lot and parks.

### The Subway Parking Lot- Ofc. Calderon's First Encounter

19.     CALDERON's dash car video camera is at 1:11 as CALDERON drives her police car at an angle behind the left-rear of the white car in the Subway parking lot.

20.     CALDERON appears to be using her radio and is believed to be calling in her location.  At approximately 1:26, CALDERON's dash cam video shows CALDERON exiting her police car and approaching the driver-side door of the white vehicle which is partially opened.

21.     As CALDERON is approaching the vehicle, the driver begins to open the driver-side door and Calderon tells the driver to just sit in in the car with the door cracked open.

6

22.     CALDERON asks the young unknown woman ("MULDREW") "Do you know why I stopped You?" and receives a reply "No."  CALDERON then tells MULDREW because you were speeding.   Seated in the passenger seat is an unknown male whom CALDERON ignores until she asks the young unknown woman, Muldrew, for her license and registration.  MULDREW at this point tells CALDREON that her license has been suspended, whereupon CALDERON asked MULDREW "why are you driving?"

23.     As soon as CALDERON asked MULDREW about driving, MULDREW, while the driver-side door has now been opened by CALDERON, steps out with her hands up and her wrist clasped together suggesting "You Got Me"! Hoping to get away from the unknown passenger, CALDERON tells MULDREW "no sit back down and thanks Brittni for being honest with me," while I check your background.[2]

24.     CALDERON asked MULDREW for her full name, date of birth, and address which again MULDREW provides and states that the car is registered to a friend.

25.     CALDERON, with the driver-side door fully opened by CALDREON, then returns to her police car to run the young Ms. MULDREW's

---

[2] It was later learned that the passenger was a convicted felon with a background such that MULDREW would be terrified which could easily explain MULDREW's willingness to be arrested and away from the passenger.

information provided through a Driver and Vehicle Information Database, commonly called a "DAVID Search" to verify the information MULDREW had provided.

26.     CALDERON only asked one question of the passenger is this your car and the passenger said "No."  CALDERON never asked the passenger for his name and why he was in the car.  Had she done so, she would have learned that the passenger was a convicted felon with an association with drug dealers and that the car actually according to information and belief was registered to a known drug dealer.   Under those circumstances, a reasonable officer would have removed MULDREW from the car and placed her safely in the back seat of her police car.

**The Arrival of a more Senior Officer Patton**

27.     As MULDREW was giving CALDERON her name, address, and date of birth for the "DAVID" clearance, PATTON, a second CCPD officer appears, and CALDERON sees and acknowledges PATTON (Calderon car video dash camera is recording the arrival of PATTON at 3:17).

28.     CALDERON tells PATTON to call in a 502 which is a signal for suspicion of drunk driving (Calderon car video dash camera is at 03:23).

29.     CALDERON then walks back to her police car while PATTON stood on the passenger side of the car and is engaging in conversation with the passenger

while MULDREW is sitting with her left leg outside the car and her foot resting on parking lot pavement (Calderon car video camera is at 03:52-5:20).

30.     CALDERON is then seen walking back to driver's side of car while PATTON remains engaged in conversation and observing the passenger and MULDREW.   CALDERON has a pen and paper and requests MULDREW verify her address at that time.  MULDREW is still cooperating politely with CALDERON and restated her address, telling CALDERON it was a mobile home.  Calderon then tells MULDREW, okay, "let me check one thing."  (Calderon car video camera is at 05:21-5:48).

31.     PATTON remains on passenger side of car while CALDERON again returns to her police car allegedly to check further on MULDREW's additional information. (Calderon car video camera is at 05:48-08:13).

**Escalation- guns drawn pointed at Brittni Muldrew and the passenger.[3]**

32.      CALDERON is allegedly advised over her police radio that that the car Brittni Muldrew and her unknown passenger are in had been reported stolen and so CALDERON yells out to PATTON, "Hey" and PATTON begins to back away from the car and at 08:21 on CALDERON's dash video camera.

---

[3] At no time prior to the shooting, brutal beating and killing of Brittni did Officers, Calderon, Patton, Cummings, Escobar, Morgan or any other officers and supervisors know how Brittni and the passenger ended up in control of a vehicle that was registered to a known drug dealer.

33.     CALDERON then appears in front of another car which had remained parked next to the car Brittni Muldrew had been driving and was openly willing and wanting to get out of and away from the passenger which CALDERON could have accomplished on several occasions from the polite and cooperative Brittni Muldrew.   PATTON then approaches the unknown passenger and tells the passenger "Hands on the dash now" (Calderon car video camera is at 05:48-08:13).

**CALDERON HAS HER FIREARM AIMED AS DOES PATTON**

34.     CALDERON appears again at 08:26 with her firearm pointed directly at Brittni Muldrew, while PATTON has his gun pointed at passenger. (Calderon car video camera is at 08:26).

35.     CALDERON and PATTON position themselves with their firearms pointed at Muldrew and the passenger and CALDERON begins escalating what had been up to this point a noneventful traffic infraction stop and says to Brittni Muldrew, the following:

a.      Ofc. Calderon: "Do not move do you understand"

(Calderon car video camera is at 08:28).

b.      Ofc. Patton: "Don't move"

(Calderon car video camera is at 08:36).

c.      Ofc. Calderon: "Do you understand"- "Don't move"

(Calderon car video camera is at 08:38-08:43).

10

**Elevated Threat and Fear Factor**

d.      Ofc. Calderon: "if you move you understand what's going to happen.

(sic)

(Calderon car video camera is at 08:54-08:57).

e.      Ofc. Calderon: "Do you understand what's going to happen". "Stay

there and do not move" and again, "do not move."

(Calderon car video camera is at 08:57-09:02).

f.      Ofc. Calderon: "And I need to see both hands on the wheel." "Just

keep them there at all times."

36.     Muldrew has both hands on the wheel at all times and the gear shift

is next to the passenger's and convicted felon's left hand who, despite at some prior

to the guns being drawn, had provided his name although CALDERON failed to run

the name of the passenger on the DAVID database.  (Calderon car video camera is

at 09:10-09:14).

37.     Muldrew then asks "what have I done?", to which Ofc. Calderon says

"well explain it to you in a minute."  (Calderon car video camera is at 09:18-09:24).

38.     CALDERON tells Muldrew "Keep looking forward", to which

Muldrew states "will you tell me what I've done?  CALDERON's response is only

"Yes, keep looking forward." (Calderon car video camera is at 09:26-09:31). (Bus

goes by on Hillsborough Blvd) at (10:39-10:43 on Ofc. Calderon's dash cam)

39.     Ofc. Calderon then again tells Muldrew "Look forward do not look at me" (Calderon car video camera is at 11:10-11:14).

40.     Next on the video camera is the sound of the sirens of several police cars which can also be seen on Hillsborough Blvd.  The sirens stop at Calderon's and Muldrew's location.  (Calderon car video camera is at 11:14-11:31).

**The Untrained, undisciplined rookie CCPD officers created the danger**

41.     Defendant CUMMINGS (K-9) arrives on scene with a violently barking-dog and comes into view of CALDERON's dash cam video.

42.     CUMMINGS then motions CALDERON to move over so CUMMINGS can get into a good shooting position.  As CALDERON moves, CUMMINGS and her K-9 move to the left far rear of the car and out of the way when the brake lights of Muldrew's car light up.

43.     As the car slowly rolls backwards, CUMMINGS moves even further left and away from the car at 12:19 into a shooting position. (Calderon dash cam video).  As the front wheels of the car are turning to the right, the driver's door is open as the car is slowly moving and the brake lights are illuminated at 12:20 when suddenly Defendant ESCOBAR appears in a shooting position, which can be seen as the brake lights illuminate clearly show ESCOBAR and CUMMINGS in shooting positions.  (Calderon car video camera is at 12:20).

**Brake lights, turned wheels and position of CCPD officers rule out danger**

44.     Defendant ESCOBAR has his gun out and is standing facing the driver's window with the brake lights are still illuminating his position of safety.

45.     PATTON at this point has now positioned himself to the left of the car as can be clearly seen in (Calderon's dashcam video) which shows PATTON in a position to shot through the windshield as the video clearly show the front tires turned away from all shooters leaving no one in any way danger.

46.     PATTON, ESCOBAR, and CUMMINGS are clearly visible on Calderon's dash camera and all three have their firearms drawn and pointed directly at Muldrew.

47.     PATTON's firearm is pointed at the windshield as the car wheels are visibly turned to the right, in a direction away from being able to move in any direction except to the right.  The vehicle is not a threat to anyone.

48.     ESCOBAR is standing to the left of the driver's door and pointing his firearm at the driver's door window as CUMMINGS is in front of the other car parked in the parking lot and pointing her firearm at the driver's window.

49.     CALDERON has moved behind CUMMINGS and has her firearm in her hand as last seen pointed directly at Muldrew.

50.     Unprovoked and despite the fact that the car Muldrew was in was still turned to the right away from all the officers, Defendants Patton, Escobar,

Cummings and Calderon opened fire on Muldrew hitting her with multiple gunshots, three (3) bullets striking Muldrew below her left breast, one in her left forearm, one in her right shoulder and the top of her head, one in her back area under her chest and one in her left kidney.

51.     At the time, all of these officers began mercilessly shooting Muldrew, none of them were in any danger.  The only two points in which Muldrew could have exited the parking lot had been blocked. (Calderon car video camera is at 12:17-12:31).

**Post-Shooting Beating with a Collapsible Cold Steel Telescopic Baton.**

52.     Shockingly, while Brittni Muldrew's body was being forcibly removed from the automobile after being repeatedly shot, Defendant MORGAN approached Brittni's body with his cold steel telescopic baton drawn and began repeatedly, with full force, striking Muldrew's head with his baton.

53.     MORGAN did this while in the direct presence of an unknown superior officer and other officers, including the other Defendants, who took no action to stop MORGAN.

54.     Rather, they allowed MORGAN to then grab Muldrew's body and drag her to the side of the car where Defendant MORGAN then dropped Muldrew's body to the pavement face down and again began striking Muldrew's head with hard blows from his cold steel telescopic baton all while she laid in an unconscious state.

55.     The shootings and beating were all done in the presence of several superior officers whose names are presently unknown and Defendants.  Yet, despite there being several other officers and superiors on the scene, none stopped Defendant MORGAN from beating Muldrew who may not have been deceased by that time and none begin an immediate rendering of CPR.

56.     All Defendants named herein assaulted and battered Muldrew and then killed her.  All Defendants engaged in the excessive use of force by shooting her (Calderon, Patton, Escobar, and Cummings) and then beating her (Morgan) until she died.

57.     Specifically, prior to her death, all Defendants committed the act of assault on Muldrew by intentionally threatening to harm her, coupled with an apparent ability to carry out the threat, which created a fear of imminent violence. They also committed the act of battery on Muldrew by inflicting harmful or offensive contact upon her by shooting her (Calderon, Patton, Escobar, and Cummings) or then beating her (Morgan) with the intent to cause such contact or apprehension that such contact is imminent. They caused her harm- they killed her.

58.     Muldrew posed no threat to the Defendants yet they killed Muldrew with their firearms and/or through the beating by Morgan.

59.     The multiple gunshots to Brittni Muldrew were followed by repeated a ruthless unprovoked beating to her head with a cold steel telescopic baton while

her bullet ridden body was being dragged out of her car which caused and/or contributed to Brittni Muldrew's subsequent death and declared homicide.

60.     In sum, the Decedent, Brittni Muldrew, had been stopped for an alleged civil traffic infraction, was fully cooperative, provided her name, date of birth and address and otherwise admitted honestly that she was driving on a suspended license and offered herself up as willing to be arrested for driving on a suspended license, posing no threat to anyone.  Despite these facts, after being cooperative for more than (7) seven minutes posing no threat to any of the Defendant officers as she was willing to exit the car and attempted to surrender, Defendants suddenly, without provocation, began pointing firearms directly at Muldrew thereby escalating a non-confrontational submissive young 36 year-old cooperative woman who could have easily been removed without incident into a highly dramatic fearful event which led to multiple gunshots and the subsequent beating of Muldrew, which, in combination, resulted in Brittni Muldrew's death.

## COUNT I
## WRONGFUL DEATH
(Against Calderon)

61.     Paragraphs 1 through 60 above are re-alleged and incorporated.

62.     This count sets forth claims against Calderon for wrongful death, brought under §768.16, et seq., Fla. Stats. For purposes of this count, at all pertinent

times Calderon was acting outside the scope of her employment with the City of Coconut Creek.

63.    Calderon caused the death of Brittni Muldrew intentionally, recklessly, or negligently, in violation of §768.16, et seq., Fla. Stats., and in violation of §782.04, Fla. Stats. (Murder) or of §782.07, Fla. Stats. (Manslaughter).

64.    Prior to her death and causing her death, Calderon engaged in the assault and battery of Muldrew, as alleged above and specifically in paragraph 57 above.

65.    The acts of Calderon in participating in the traffic stop and shooting were the proximate cause and direct cause of the death of Brittni Muldrew.

66.    Calderon acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property when she participated in the assault, battery and killing of Muldrew.

67.    Plaintiff seeks all wrongful death damages allowable under §768.21, Fla. Stat. and the law, for the estate and for the statutory survivors.

## COUNT II
## WRONGFUL DEATH
(Against Patton)

68.    Paragraphs 1 through 60 above are re-alleged and incorporated.

69.    This count sets forth claims against Patton, for wrongful death, brought under §768.16, et seq., Fla. Stats. For purposes of this count, at all pertinent

times Patton was acting outside the scope of his employment with the City of Coconut Creek.

70.     Patton caused the death of Brittni Muldrew intentionally, recklessly, or negligently, in violation of §768.16, et seq., Fla. Stats., and in violation of §782.04, Fla. Stats. (Murder) or of §782.07, Fla. Stats. (Manslaughter).

71.     Prior to her death and causing her death, Patton engaged in the assault and battery of Muldrew, as alleged above and specifically in paragraph 57 above.

72.     The acts of Patton in participating in the traffic stop and shooting were the proximate cause and direct cause of the death of Brittni Muldrew.

73.     Patton acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property when he participated in the assault, battery and killing of Muldrew.

74.     Plaintiff seeks all wrongful death damages allowable under §768.21, Fla. Stat. and the law, for the estate and for the statutory survivors.

## COUNT III
## WRONGFUL DEATH
(Against Cummings)

75.     Paragraphs 1 through 60 above are re-alleged and incorporated.

76.     This count sets forth claims against Cummings for wrongful death, brought under §768.16, et seq., Fla. Stats. For purposes of this count, at all pertinent

times Cummings was acting outside the scope of her employment with the City of Coconut Creek.

77.    Cummings caused the death of Brittni Muldrew intentionally, recklessly, or negligently, in violation of §768.16, et seq., Fla. Stats., and in violation of §782.04, Fla. Stats. (Murder) or of §782.07, Fla. Stats. (Manslaughter).

78.    Prior to her death and causing her death, Cummings engaged in the assault and battery of Muldrew, as alleged above and specifically in paragraph 57 above.

79.    The acts of Cummings in participating in the traffic stop and shooting were the proximate cause and direct cause of the death of Brittni Muldrew.

80.    Cummings acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property when she participated in the assault, battery and killing of Muldrew.

81.    Plaintiff seeks all wrongful death damages allowable under §768.21, Fla. Stat. and the law, for the estate and for the statutory survivors.

**COUNT IV**
**WRONGFUL DEATH**
(Against Escobar)

82.    Paragraphs 1 through 60 above are re-alleged and incorporated.

83.    This count sets forth claims against Escobar for wrongful death, brought under §768.16, et seq., Fla. Stats. For purposes of this count, at all pertinent

times Escobar was acting outside the scope of his employment with the City of Coconut Creek.

84.     Escobar caused the death of Brittni Muldrew intentionally, recklessly, or negligently, in violation of §768.16, et seq., Fla. Stats., and in violation of §782.04, Fla. Stats. (Murder) or of §782.07, Fla. Stats. (Manslaughter).

85.     Prior to her death and causing her death, Escobar engaged in the assault and battery of Muldrew, as alleged above and specifically in paragraph 57 above.

86.     The acts of Escobar in participating in the traffic stop and shooting were the proximate cause and direct cause of the death of Brittni Muldrew.

87.     Escobar acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property when he participated in the assault, battery and killing of Muldrew.

88.     Plaintiff seeks all wrongful death damages allowable under §768.21, Fla. Stat. and the law, for the estate and for the statutory survivors.

## COUNT V
## WRONGFUL DEATH
(Against Morgan)

89.     Paragraphs 1 through 60 above are re-alleged and incorporated.

90.     This count sets forth claims against Morgan for wrongful death, brought under §768.16, et seq., Fla. Stats. For purposes of this count, at all pertinent

times Morgan was acting outside the scope of his employment with the City of Coconut Creek.

91.     Morgan caused the death of Brittni Muldrew intentionally, recklessly, or negligently, in violation of §768.16, et seq., Fla. Stats., and in violation of §782.04, Fla. Stats. (Murder) or of §782.07, Fla. Stats. (Manslaughter).

92.     Prior to her death and causing her death, Morgan engaged in the assault and battery of Muldrew, as alleged above and specifically in paragraph 57 above.

93.     The acts of Morgan in participating in the traffic stop and shooting were the proximate cause and direct cause of the death of Brittni Muldrew.

94.     Morgan acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property when he participated in the assault, battery and killing of Muldrew.

95.     Plaintiff seeks all wrongful death damages allowable under §768.21, Fla. Stat. and the law, for the estate and for the statutory survivors.

## COUNT VI
## FOURTH AMENDMENT VIOLATION EXCESSIVE AND DEADLY FORCE- PUNITIVE DAMAGES 42 U.S.C. §1983
(Against Calderon)[4]

96.     Paragraphs 1 through 60 above are re-alleged and incorporated.

---

[4] In Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985), the Supreme Court ruled that it is a violation of the Fourth Amendment for police officers to use deadly force to stop fleeing felony suspects who are nonviolent and unarmed.

97.     This count sets forth claims against Calderon for unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution. This claim is brought through 42 U.S.C. §1983. Calderon is a person under the laws applicable to this claim.

98.     Calderon acted in violation of Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution, applicable to Calderon through the Fourteenth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

99.     Calderon is a person under applicable law and is liable to Plaintiff for their conduct, individually and in concert with other Defendants, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

101.    Calderon used deadly unlawful excessive force necessary to enforce compliance with lawful commands and acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of human rights, safety, and property.

102.    Calderon abused the power, possessed by virtue of state law and made possible only because she was clothed with the authority of state law. The violations

of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

103.  The foregoing actions of Calderon were willful, wanton and in reckless disregard of Brittni Muldrew's rights, and were taken without any lawful justification and/or in the absence of probable cause.

104.  The extreme physical abuse by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged with criminal offenses, [5] and such physical abuse determined a cognizable claim of excessive and deadly use of force in violation of the Fourth Amendment.

105.  Calderon knew or should have known that the amount of force used, even if they were attempting to effectuate the stopping, seizure and or arrest of Brittni Muldrew, was excessive and deadly given the circumstances present and the clearly established law on use of deadly force.

106.  Based upon the facts presented to Calderon and applicable law, no reasonable law enforcement officer could have concluded that there existed any reasonable cause to shoot and kill Brittni Muldrew.

107.  The law was well settled and clearly established that the actions of Calderon constituted the unlawful use of deadly force under the Fourth Amendment to the United States Constitution at the time such actions were taken.

---

[5] The pursuit of Brittni Muldrew was not premised on an alleged criminal infraction, but rather a traffic infraction.

108.   The actions or inactions of Calderon as set forth in part above constituted deliberate indifference and reckless disregard for the safety of Brittni Muldrew when they knew of and disregarded risks to Brittni Muldrew's health and safety, and thus, their actions or inactions constituted deadly use of force in violation of the Fourth Amendment to the United States Constitution.

109.   Calderon also failed to take reasonable steps to ensure Brittni Muldrew's safety when she knew or should have known that a sufficiently serious danger to Brittni Muldrew existed because of their actions toward her, which constituted deliberate indifference and deadly use of force in violation of the Fourth Amendment of the United States Constitution. The constitutional deprivation set forth herein resulted in Brittni Muldrew's death.

110.   Calderon failed to take any reasonable steps to ensure Brittni Muldrew's health and safety when they knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that they inflicted upon her constituted the deadly use of force in violation of the Fourth Amendment of the United States Constitution.

111.   The brutal physical assault, battery, shooting, beating and killing of Brittni Muldrew violated the Fourth Amendment's proscription against the deadly use of force.

112.  The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

113.  As a direct and proximate result of Calderon's actions, Plaintiff has been damaged, such damages including: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Calderon is jointly and severally liable to Plaintiff for the unlawful conduct alleged herein. Plaintiff is also entitled to an award of punitive damages and attorneys fees under this count.

### COUNT VII
### FOURTH AMENDMENT VIOLATION EXCESSIVE AND DEADLY FORCE- PUNITIVE DAMAGES 42 U.S.C. §1983
(Against Patton)[6]

114.  Paragraphs 1 through 60 above are re-alleged and incorporated.

115.  This count sets forth claims against Patton for unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution. This claim is brought through 42 U.S.C. §1983. Patton is a person under the laws applicable to this claim.

---

[6] In Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985), the Supreme Court ruled that it is a violation of the Fourth Amendment for police officers to use deadly force to stop fleeing felony suspects who are nonviolent and unarmed.

116.     Patton acted in violation of Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution, applicable to Patton through the Fourteenth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

117.     Patton is a person under applicable law and is liable to Plaintiff for his conduct, individually and in concert with other Defendants, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

118.   Patton used deadly unlawful excessive force necessary to enforce compliance with lawful commands and acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of human rights, safety, and property.

119.   Patton abused the power, possessed by virtue of state law, and made possible only because he was clothed with the authority of state law. The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

120.   The foregoing actions of Patton were willful, wanton and in reckless disregard of Brittni Muldrew's rights, and were taken without any lawful justification and/or in the absence of probable cause.

26

121.   The extreme physical abuse by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged with criminal offenses, [7] and such physical abuse determined a cognizable claim of excessive and deadly use of force in violation of the Fourth Amendment.

122.   Patton knew or should have known that the amount of force used, even if they were attempting to effectuate the stopping, seizure and or arrest of Brittni Muldrew, was excessive and deadly given the circumstances present and the clearly established law on use of deadly force.

123.   Based upon the facts presented to Patton and applicable law, no reasonable law enforcement officer could have concluded that there existed any reasonable cause to shoot and kill Brittni Muldrew.

124.   The law was well settled and clearly established that the actions of Patton constituted the unlawful use of deadly force under the Fourth Amendment to the United States Constitution at the time such actions were taken.

125.   The actions or inactions of Patton as set forth in part above constituted deliberate indifference and reckless disregard for the safety of Brittni Muldrew when he knew of and disregarded risks to Brittni Muldrew's health and safety, and thus, his actions or inactions constituted deadly use of force in violation of the Fourth Amendment to the United States Constitution.

---

[7] The pursuit of Brittni Muldrew was not premised on an alleged criminal infraction, but rather a traffic infraction.

126.   Patton also failed to take reasonable steps to ensure Brittni Muldrew's safety when he knew or should have known that a sufficiently serious danger to Brittni Muldrew existed because of his actions toward her, which constituted deliberate indifference and deadly use of force in violation of the Fourth Amendment of the United States Constitution. The constitutional deprivation set forth herein resulted in Brittni Muldrew's death.

127.   Patton failed to take any reasonable steps to ensure Brittni Muldrew's health and safety when he knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that he inflicted upon her constituted the deadly use of force in violation of the Fourth Amendment of the United States Constitution.

128.   The brutal physical assault, battery, shooting, beating and killing of Brittni Muldrew violated the Fourth Amendment's proscription against the deadly use of force.

129.   The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

130.   As a direct and proximate result of Patton's actions, Plaintiff has been damaged, such damages including: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other

emoluments. Patton is jointly and severally liable to Plaintiff for the unlawful conduct alleged herein. Plaintiff is also entitled to an award of punitive damages and attorneys fees under this count.

**COUNT VIII**
**FOURTH AMENDMENT VIOLATION EXCESSIVE AND DEADLY**
**FORCE- PUNITIVE DAMAGES 42 U.S.C. §1983**
(Against Cummings)[8]

131.   Paragraphs 1 through 60 above are re-alleged and incorporated.

132.   This count sets forth claims against Cummings for unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution. This claim is brought through 42 U.S.C. §1983. Cummings is a person under the laws applicable to this claim.

133.   Cummings acted in violation of Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution, applicable to Cummings through the Fourteenth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

134.   Cummings is a person under applicable law and is liable to Plaintiff for their conduct, individually and in concert with other Defendants, in violation of

---

[8] In Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985), the Supreme Court ruled that it is a violation of the Fourth Amendment for police officers to use deadly force to stop fleeing felony suspects who are nonviolent and unarmed.

the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

135. Cummings used deadly unlawful excessive force necessary to enforce compliance with lawful commands and acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of human rights, safety, and property.

136. Cummings abused her power, possessed by virtue of state law and made possible only because she was clothed with the authority of state law. The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

137. The foregoing actions of Cummings were willful, wanton and in reckless disregard of Brittni Muldrew's rights, and were taken without any lawful justification and/or in the absence of probable cause.

138. The extreme physical abuse by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged with criminal offenses, [9] and such physical abuse determined a cognizable claim of excessive and deadly use of force in violation of the Fourth Amendment.

139. Cummings knew or should have known that the amount of force used, even she was attempting to effectuate the stopping, seizure and or arrest of Brittni

---

[9] The pursuit of Brittni Muldrew was not premised on an alleged criminal infraction, but rather a traffic infraction.

Muldrew, was excessive and deadly given the circumstances present and the clearly established law on use of deadly force.

140.   Based upon the facts presented to Cummings and applicable law, no reasonable law enforcement officer could have concluded that there existed any reasonable cause to shoot and kill Brittni Muldrew.

141.   The law was well settled and clearly established that the actions of Cummings constituted the unlawful use of deadly force under the Fourth Amendment to the United States Constitution at the time such actions were taken.

142.   The actions or inactions of Cummings as set forth in part above constituted deliberate indifference and reckless disregard for the safety of Brittni Muldrew when she knew of and disregarded risks to Brittni Muldrew's health and safety, and thus, their actions or inactions constituted deadly use of force in violation of the Fourth Amendment to the United States Constitution.

143.   Cummings also failed to take reasonable steps to ensure Brittni Muldrew's safety when she knew or should have known that a sufficiently serious danger to Brittni Muldrew existed because of their actions toward her, which constituted deliberate indifference and deadly use of force in violation of the Fourth Amendment of the United States Constitution. The constitutional deprivation set forth herein resulted in Brittni Muldrew's death.

144.    Cummings failed to take any reasonable steps to ensure Brittni Muldrew's health and safety when she knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that she inflicted upon her constituted the deadly use of force in violation of the Fourth Amendment of the United States Constitution.

145.   The brutal physical assault, battery, shooting, beating and killing of Brittni Muldrew violated the Fourth Amendment's proscription against the deadly use of force.

146.   The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

147.   As a direct and proximate result of Cummings's actions, Plaintiff has been damaged, such damages including: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Cummings is jointly and severally liable to Plaintiff for the unlawful conduct alleged herein. Plaintiff is also entitled to an award of punitive damages and attorneys fees under this count.

## COUNT IX
## FOURTH AMENDMENT VIOLATION EXCESSIVE AND DEADLY FORCE- PUNITIVE DAMAGES 42 U.S.C. §1983
### (Against Escobar)[10]

148.    Paragraphs 1 through 60 above are re-alleged and incorporated.

149.    This count sets forth claims against Escobar for unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution. This claim is brought through 42 U.S.C. §1983. Escobar is a person under the laws applicable to this claim.

150.    Escobar acted in violation of Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution, applicable to Escobar through the Fourteenth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

151.    Escobar is a person under applicable law and is liable to Plaintiff for his conduct, individually and in concert with other Defendants, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

---

[10] In Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985), the Supreme Court ruled that it is a violation of the Fourth Amendment for police officers to use deadly force to stop fleeing felony suspects who are nonviolent and unarmed.

152.   Escobar used deadly unlawful excessive force necessary to enforce compliance with lawful commands and acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of human rights, safety, and property.

153.   Escobar abused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

154.   The foregoing actions of Escobar were willful, wanton and in reckless disregard of Brittni Muldrew's rights, and were taken without any lawful justification and/or in the absence of probable cause.

155.   The extreme physical abuse by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged with criminal offenses, [11] and such physical abuse determined a cognizable claim of excessive and deadly use of force in violation of the Fourth Amendment.

156.   Escobar knew or should have known that the amount of force used, even if he was attempting to effectuate the stopping, seizure and or arrest of Brittni Muldrew, was excessive and deadly given the circumstances present and the clearly established law on use of deadly force.

---

[11] The pursuit of Brittni Muldrew was not premised on an alleged criminal infraction, but rather a traffic infraction.

157. Based upon the facts presented to Escobar and applicable law, no reasonable law enforcement officer could have concluded that there existed any reasonable cause to shoot and kill Brittni Muldrew.

158. The law was well settled and clearly established that the actions of Escobar constituted the unlawful use of deadly force under the Fourth Amendment to the United States Constitution at the time such actions were taken.

159. The actions or inactions of Escobar as set forth in part above constituted deliberate indifference and reckless disregard for the safety of Brittni Muldrew when he knew of and disregarded risks to Brittni Muldrew's health and safety, and thus, his actions or inactions constituted deadly use of force in violation of the Fourth Amendment to the United States Constitution.

160. Escobar also failed to take reasonable steps to ensure Brittni Muldrew's safety when he knew or should have known that a sufficiently serious danger to Brittni Muldrew existed because of his actions toward her, which constituted deliberate indifference and deadly use of force in violation of the Fourth Amendment of the United States Constitution. The constitutional deprivation set forth herein resulted in Brittni Muldrew's death.

161. Escobar failed to take any reasonable steps to ensure Brittni Muldrew's health and safety when he knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that he inflicted upon her constituted the

deadly use of force in violation of the Fourth Amendment of the United States Constitution.

162.   The brutal physical assault, battery, shooting, beating and killing of Brittni Muldrew violated the Fourth Amendment's proscription against the deadly use of force. The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

163.   As a direct and proximate result of Escobar's actions, Plaintiff has been damaged, such damages including: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Escobar is jointly and severally liable to Plaintiff for the unlawful conduct alleged herein. Plaintiff is also entitled to an award of punitive damages and attorneys fees under this count.

## COUNT X
### FOURTH AMENDMENT VIOLATION EXCESSIVE AND DEADLY FORCE- PUNITIVE DAMAGES 42 U.S.C. §1983
(Against Morgan)[12]

164.    Paragraphs 1 through 60 above are re-alleged and incorporated.

---

[12] In Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985), the Supreme Court ruled that it is a violation of the Fourth Amendment for police officers to use deadly force to stop fleeing felony suspects who are nonviolent and unarmed.

165.    This count sets forth claims against Morgan for unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution. This claim is brought through 42 U.S.C. §1983. Morgan is a person under the laws applicable to this claim.

166.    Morgan acted in violation of Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution, applicable to Morgan through the Fourteenth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

167.    Morgan is a person under applicable law and is liable to Plaintiff for his conduct, individually and in concert with other Defendants, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

168.    Morgan used deadly unlawful excessive force necessary to enforce compliance with lawful commands and acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of human rights, safety, and property.

169.    Morgan abused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. The violations

of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

170.    The foregoing actions of Morgan were willful, wanton and in reckless disregard of Brittni Muldrew's rights, and were taken without any lawful justification and/or in the absence of probable cause.

171.  The extreme physical abuse by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged with criminal offenses, [13]  and such physical abuse determined a cognizable claim of excessive and deadly use of force in violation of the Fourth Amendment.

172.  Morgan knew or should have known that the amount of force used, even if he was attempting to effectuate the stopping, seizure and or arrest of Brittni Muldrew, was excessive and deadly given the circumstances present and the clearly established law on use of deadly force.

173.   Based upon the facts presented to Morgan and applicable law, no reasonable law enforcement officer could have concluded that there existed any reasonable cause to savagely beat the head of an unconscious human being with the subject metal baton, especially having been repeatedly shot which the combination lead to the killing of Brittni Muldrew.

---

[13] The pursuit of Brittni Muldrew was not premised on an alleged criminal infraction, but rather a traffic infraction.

174.   The law was well settled and clearly established that the actions of Morgan constituted the unlawful use of deadly force under the Fourth Amendment to the United States Constitution at the time such actions were taken.

175.   The actions or inactions of Morgan as set forth in part above constituted deliberate indifference and reckless disregard for the safety of Brittni Muldrew when he knew of and disregarded risks to Brittni Muldrew's health and safety, and thus, his actions or inactions constituted deadly use of force in violation of the Fourth Amendment to the United States Constitution.

176.   Morgan also failed to take reasonable steps to ensure Brittni Muldrew's safety when he knew or should have known that a sufficiently serious danger to Brittni Muldrew existed because of his actions toward her, which constituted deliberate indifference and deadly use of force in violation of the Fourth Amendment of the United States Constitution. The constitutional deprivation set forth herein resulted in Brittni Muldrew's death.

177.   Morgan failed to take any reasonable steps to ensure Brittni Muldrew's health and safety when he knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that he inflicted upon her constituted the deadly use of force in violation of the Fourth Amendment of the United States Constitution.

178.   The brutal physical assault, battery, shooting, beating and killing of Brittni Muldrew violated the Fourth Amendment's proscription against the deadly use of force.

179.   The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

180.   As a direct and proximate result of Morgan's actions, Plaintiff has been damaged, such damages including: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Morgan is jointly and severally liable to Plaintiff for the unlawful conduct alleged herein. Plaintiff is also entitled to an award of punitive damages and attorneys fees under this count.

## COUNT XI
## FOURTH AMENDMENT VIOLATION-FAILURE TO INTERVENE
(Against Calderon)

181.   Paragraphs 1 through 60 above are re-alleged and incorporated.

182.   This count sets forth a claim against Calderon for the failure to intervene and the failure to protect Brittni Muldrew from the ruthless and ongoing attack by Ty Morgan's, post shooting beating of Brittni Muldrew in the head as she was being removed from the car and subsequent repeated attack by Ofc. Morgan, re-using his collapsible cold steel telescopic baton.     Plaintiff contends that Ofc. Morgan

exceeded the force necessary under the circumstances when he intentionally, willfully and brutally attacked Brittni Muldrew and greatly decreasing her chance of survival, if any, which collectively killed Brittni Muldrew and that Calderon should be liable for that violation because they failed to intervene to stop the violation.

183.   Calderon violated Brittni Muldrew's right to be free from the unlawful use of deadly force. Calderon had a duty to intervene to prevent the unlawful use of deadly force by a fellow and or subordinate officer.

184.   Calderon had a reasonable opportunity to intervene and failed to do so.

185.   Specifically Calderon violated the Fourth Amendment to the United States Constitution by showing deliberate indifference to a substantial risk of serious harm to Brittni Muldrew. Paton was present when Brittni Muldrew was attacked by Ofc. Morgan, after being shot by multiple officers which the combination of their shooting her and Ofc. Morgan's beating afterwards created a substantial risk of decreasing the survival of Brittni Muldrew.  They knew her condition was critical after they shot her and that Ofc. Morgan's post shooting beating increased risk of serious harm and/or death to Brittni Muldrew.  She was deliberately indifferent to that risk, and Plaintiff would have would have suffered less harm if Calderon had not been deliberately indifferent.

186.   Calderon thus violated the Fourth Amendment to the United States Constitution, applicable to these Defendants through the Fourteenth Amendment to

the United States Constitution by failing to intervene to prevent the harm to Brittni Muldrew and the Plaintiff. This claim is brought through 42 U.S.C. §1983.

187.  Calderon is a person under the laws applicable to this claim.

188.  The failure to intervene by Calderon was an additional moving force behind Brittni Muldrew's death and constitutional violations stemming therefrom. Calderon's actions are causally related to these Defendants, through its agents and employees, intended to cause this harmful and offensive contact with Brittni Muldrew in that the harmful acts were deliberate and substantially certain to result in harm and offense.

189.  Calderon operated to violate Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

190.  Calderon further operated to violate Brittni Muldrew's civil rights as protected by the Civil Rights Act, 42 U.S.C. §1983. Calderon is jointly and severally liable to Plaintiff for their conduct, individually and in concert, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

191.  Calderon allowed and/or failed to intervene in Ofc. Morgan's actions which exceeded the level of force necessary to enforce compliance with lawful commands.

192.  Calderon misused their power, possessed by virtue of state law to intervene and in total disregard of their duties to intervene as authorized and required under the totality of circumstances and attendant with the authority of state law.

193.  The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

194.  The foregoing actions of Calderon were taken without any lawful justification and/or in the absence of probable cause.

195.  The shooting and subsequent ruthless post shooting beating by Ofc. Morgan contributed to and /or increased the death of Brittni Muldrew by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged or suspected with a criminal offense, and such abuse sets forth a cognizable claim of excessive use of force in violation of the Fourth Amendment.

196.  Calderon knew or should have known that the amount of force used, even if Ofc. Morgan and other Defendants were effectuating a valid arrest of Brittni Muldrew, was excessive given the circumstances present and the clearly established law on use of deadly force.

197.  Based upon the facts presented to Calderon and the applicable law, no reasonable law enforcement officer or agency could have concluded that there existed any reasonable cause to allow for the unlawful use of deadly force against Brittni Muldrew.

198.  The actions or inactions of Calderon as set forth in part above constituted a deliberate indifference or reckless disregard for the safety of Brittni Muldrew when they knew of and disregarded risks to Brittni Muldrew's health and safety, and thus its actions or inactions constituted the unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution.

199.  Calderon also failed to take reasonable steps to ensure Brittni Muldrew's safety when she knew or should have known that a sufficiently serious danger to Brittni Muldrew existed, especially post shooting and because of her actions toward her which constituted deliberate indifference, and the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

200.  The failure of Calderon to take any reasonable steps to ensure Brittni Muldrew's health and safety when she knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that Ofc. Morgan had inflicted upon her constituted the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

201.  The brutal physical assaults, battery, and/or shooting of Brittni Muldrew violated the Fourth Amendment's proscription against the unlawful use of deadly force.

202.  These violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

203.  As a direct and proximate result of Calderon's actions, Plaintiff was damaged, such damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Calderon is jointly and severally liable to Plaintiff for the unlawful conduct alleged herein. Plaintiff is entitled to punitive damages and attorneys fees under this Count.

## COUNT XII
## FOURTH AMENDMENT VIOLATION-FAILURE TO INTERVENE
(Against Patton)

204.  Paragraphs 1 through 60 above are re-alleged and incorporated.

205.  This count sets forth a claim against Patton for the failure to intervene and the failure to protect Brittni Muldrew from the ruthless and ongoing attack by Ty Morgan's, post shooting beating of Brittni Muldrew in the head as she was being removed from the car and subsequent repeated attack by Ofc. Morgan, re-using his collapsible cold steel telescopic baton.  Plaintiff contends that Ofc. Morgan exceeded

the force necessary under the circumstances when he intentionally, willfully and brutally attacked Brittni Muldrew and greatly decreasing her chance of survival, if any, which collectively killed Brittni Muldrew and that Patton should be liable for that violation because he failed to intervene to stop the violation.

206.  Patton violated Brittni Muldrew's right to be free from the unlawful use of deadly force. Patton had a duty to intervene to prevent the unlawful use of deadly force by a fellow and or subordinate officer.

207.  Patton had a reasonable opportunity to intervene and failed to do so.

208.  Specifically Patton violated the Fourth Amendment to the United States Constitution by showing deliberate indifference to a substantial risk of serious harm to Brittni Muldrew. Paton was present when Brittni Muldrew was attacked by Ofc. Morgan, after being shot by multiple officers which the combination of their shooting her and Ofc. Morgan's beating afterwards created a substantial risk of decreasing the survival of Brittni Muldrew.  They knew her condition was critical after they shot her and that Ofc. Morgan's post shooting beating increased risk of serious harm and/or death to Brittni Muldrew.  They were deliberately indifferent to that risk, and Plaintiff would have would have suffered less harm if Patton had not been deliberately indifferent.

209.   Patton thus violated the Fourth Amendment to the United States Constitution, applicable to these Defendants through the Fourteenth Amendment to

the United States Constitution by failing to intervene to prevent the harm to Brittni Muldrew and the Plaintiff. This claim is brought through 42 U.S.C. §1983.

210. Patton is a person under the laws applicable to this claim.

211. The failure to intervene by Patton was an additional moving force behind Brittni Muldrew's death and constitutional violations stemming therefrom. Patton's actions are causally related to these Defendants, through its agents and employees, intended to cause this harmful and offensive contact with Brittni Muldrew in that the harmful acts were deliberate and substantially certain to result in harm and offense.

212. Patton operated to violate Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

213. Patton further operated to violate Brittni Muldrew's civil rights as protected by the Civil Rights Act, 42 U.S.C. §1983. Patton is jointly and severally liable to Plaintiff for their conduct, individually and in concert, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

214. Patton allowed and/or failed to intervene in Ofc. Morgan's actions which exceeded the level of force necessary to enforce compliance with lawful commands.

215.  Patton misused their power, possessed by virtue of state law to intervene and in total disregard of their duties to intervene as authorized and required under the totality of circumstances and attendant with the authority of state law.

216.  The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

217.  The foregoing actions of Patton were taken without any lawful justification and/or in the absence of probable cause.

218.  The shooting and subsequent ruthless post shooting beating by Ofc. Morgan contributed to and /or increased the death of Brittni Muldrew by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged or suspected with a criminal offense, and such abuse sets forth a cognizable claim of excessive use of force in violation of the Fourth Amendment.

219.  Patton knew or should have known that the amount of force used, even if Ofc. Morgan and other Defendants were effectuating a valid arrest of Brittni Muldrew, was excessive given the circumstances present and the clearly established law on use of deadly force.

220.  Based upon the facts presented to Patton and the applicable law, no reasonable law enforcement officer or agency could have concluded that there

existed any reasonable cause to allow for the unlawful use of deadly force against Brittni Muldrew.

221.  The actions or inactions of Patton as set forth in part above constituted a deliberate indifference or reckless disregard for the safety of Brittni Muldrew when he knew of and disregarded risks to Brittni Muldrew's health and safety, and thus its actions or inactions constituted the unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution.

222.  Patton also failed to take reasonable steps to ensure Brittni Muldrew's safety when he knew or should have known that a sufficiently serious danger to Brittni Muldrew existed, especially post shooting and because of his actions toward her which constituted deliberate indifference, and the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

223.  The failure of Patton to take any reasonable steps to ensure Brittni Muldrew's health and safety when they knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that Ofc. Morgan had inflicted upon her constituted the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

224.  The brutal physical assaults, battery, and/or shooting of Brittni Muldrew violated the Fourth Amendment's proscription against the unlawful use of deadly force.

225.   These violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

226.   As a direct and proximate result of Patton's actions, Plaintiff was damaged, such damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Patton is jointly and severally liable to Plaintiff for the unlawful conduct alleged herein. Plaintiff is entitled to punitive damages and attorneys fees under this Count.

## COUNT XIII
## FOURTH AMENDMENT VIOLATION-FAILURE TO INTERVENE
### (Against Cummings)

227.   Paragraphs 1 through 60 above are re-alleged and incorporated.

228.   This count sets forth a claim against Cummings for the failure to intervene and the failure to protect Brittni Muldrew from the ruthless and ongoing attack by Ty Morgan's, post shooting beating of Brittni Muldrew in the head as she was being removed from the car and subsequent repeated attack by Ofc. Morgan, re-using his collapsible cold steel telescopic baton.  Plaintiff contends that Ofc. Morgan exceeded the force necessary under the circumstances when he intentionally, willfully and brutally attacked Brittni Muldrew and greatly decreasing her chance of

survival, if any, which collectively killed Brittni Muldrew and that Cummings should be liable for that violation because she failed to intervene to stop the violation.

229.  Cummings violated Brittni Muldrew's right to be free from the unlawful use of deadly force. Cummings had a duty to intervene to prevent the unlawful use of deadly force by a fellow and or subordinate officer.

230.  Cummings had a reasonable opportunity to intervene and failed to do so.

231.  Specifically Cummings violated the Fourth Amendment to the United States Constitution by showing deliberate indifference to a substantial risk of serious harm to Brittni Muldrew.  Cummings was present when Brittni Muldrew was attacked by Ofc. Morgan, after being shot by Cummings and multiple officers which the combination of their shooting her and Ofc. Morgan's beating afterwards created a substantial risk of decreasing the survival of Brittni Muldrew.  Cummings knew Brittni Muldrew's condition was critical after they shot her and that Ofc. Morgan's post shooting beating increased risk of serious harm and/or death to Brittni Muldrew. She was deliberately indifferent to that risk, and Plaintiff would have would have suffered less harm if Cummings had not been deliberately indifferent.

232.  Cummings thus violated the Fourth Amendment to the United States Constitution, applicable to these Defendants through the Fourteenth Amendment to

the United States Constitution by failing to intervene to prevent the harm to Brittni Muldrew and the Plaintiff. This claim is brought through 42 U.S.C. §1983.

233.  Cummings is a person under the laws applicable to this claim.

234.  The failure to intervene by Cummings was an additional moving force behind Brittni Muldrew's death and constitutional violations stemming therefrom. Cummings's actions are causally related to these Defendants, through its agents and employees, intended to cause this harmful and offensive contact with Brittni Muldrew in that the harmful acts were deliberate and substantially certain to result in harm and offense.

235.  Cummings operated to violate Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

236.  Cummings further operated to violate Brittni Muldrew's civil rights as protected by the Civil Rights Act, 42 U.S.C. §1983. Cummings is jointly and severally liable to Plaintiff for their conduct, individually and in concert, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

237.   Cummings allowed and/or failed to intervene in Ofc. Morgan's actions which exceeded the level of force necessary to enforce compliance with lawful commands.

238.   Cummings misused their power, possessed by virtue of state law to intervene and in total disregard of their duties to intervene as authorized and required under the totality of circumstances and attendant with the authority of state law.

239.   The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

240.   The foregoing actions of Cummings were taken without any lawful justification and/or in the absence of probable cause.

241.   The shooting and subsequent ruthless post shooting beating by Ofc. Morgan contributed to and /or increased the death of Brittni Muldrew by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged or suspected with a criminal offense, and such abuse sets forth a cognizable claim of excessive use of force in violation of the Fourth Amendment.

242.   Cummings knew or should have known that the amount of force used, even if Ofc. Morgan and other Defendants were effectuating a valid arrest of Brittni Muldrew, was excessive given the circumstances present and the clearly established law on use of deadly force.

243.   Based upon the facts presented to Cummings and the applicable law, no reasonable law enforcement officer or agency could have concluded that there existed any reasonable cause to allow for the unlawful use of deadly force against Brittni Muldrew.

244.   The actions or inactions of Cummings as set forth in part above constituted a deliberate indifference or reckless disregard for the safety of Brittni Muldrew when she knew of and disregarded risks to Brittni Muldrew's health and safety, and thus its actions or inactions constituted the unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution.

245.   Cummings also failed to take reasonable steps to ensure Brittni Muldrew's safety when they knew or should have known that a sufficiently serious danger to Brittni Muldrew existed, especially post shooting and because of her actions toward her which constituted deliberate indifference, and the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

246.   The failure of Cummings to take any reasonable steps to ensure Brittni Muldrew's health and safety when she knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that Ofc. Morgan had inflicted upon her constituted the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

247.  The brutal physical assaults, battery, and/or shooting of Brittni Muldrew violated the Fourth Amendment's proscription against the unlawful use of deadly force.

248.   These violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

249.  As a direct and proximate result of Cummings' actions, Plaintiff was damaged, such damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Cummings is jointly and severally liable to Plaintiff for the unlawful conduct alleged herein. Plaintiff is entitled to punitive damages and attorneys fees under this Count.

## COUNT XIV
## FOURTH AMENDMENT VIOLATION-FAILURE TO INTERVENE
(Against Escobar)

250.  Paragraphs 1 through 60 above are re-alleged and incorporated.

251.  This count sets forth a claim against Escobar for the failure to intervene and the failure to protect Brittni Muldrew from the ruthless and ongoing attack by Ty Morgan's, post shooting beating of Brittni Muldrew in the head as she was being removed from the car and subsequent repeated attack by Ofc. Morgan, re-using his collapsible cold steel telescopic baton.  Plaintiff contends that Ofc. Morgan exceeded

the force necessary under the circumstances when he intentionally, willfully and brutally attacked Brittni Muldrew and greatly decreasing her chance of survival, if any, which collectively killed Brittni Muldrew and that Escobar should be liable for that violation because they failed to intervene to stop the violation.

252.   Escobar violated Brittni Muldrew's right to be free from the unlawful use of deadly force. Escobar had a duty to intervene to prevent the unlawful use of deadly force by a fellow and or subordinate officer.

253.   Escobar had a reasonable opportunity to intervene and failed to do so.

254.   Specifically Escobar violated the Fourth Amendment to the United States Constitution by showing deliberate indifference to a substantial risk of serious harm to Brittni Muldrew. Escobar was present when Brittni Muldrew was attacked by Ofc. Morgan, after being shot by multiple officers which the combination of their shooting her and Ofc. Morgan's beating afterwards created a substantial risk of decreasing the survival of Brittni Muldrew.  He knew her condition was critical after they shot her and that Ofc. Morgan's post shooting beating increased risk of serious harm and/or death to Brittni Muldrew.  He was deliberately indifferent to that risk, and Plaintiff would have would have suffered less harm if Escobar had not been deliberately indifferent.

255.   Escobar thus violated the Fourth Amendment to the United States Constitution, applicable to these Defendants through the Fourteenth Amendment to

the United States Constitution by failing to intervene to prevent the harm to Brittni Muldrew and the Plaintiff. This claim is brought through 42 U.S.C. §1983.

256.  Escobar is a person under the laws applicable to this claim.

257.  The failure to intervene by Escobar was an additional moving force behind Brittni Muldrew's death and constitutional violations stemming therefrom. Escobar's actions are causally related to these Defendants, through its agents and employees, intended to cause this harmful and offensive contact with Brittni Muldrew in that the harmful acts were deliberate and substantially certain to result in harm and offense.

258.  Escobar operated to violate Brittni Muldrew's right not to be subjected to the unlawful use of deadly force under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

259.  Escobar further operated to violate Brittni Muldrew's civil rights as protected by the Civil Rights Act, 42 U.S.C. §1983. Escobar is jointly and severally liable to Plaintiff for their conduct, individually and in concert, in violation of the civil rights of Brittni Muldrew under the Fourth Amendment to the United States Constitution.

260.   Escobar allowed and/or failed to intervene in Ofc. Morgan's actions which exceeded the level of force necessary to enforce compliance with lawful commands.

261.  Escobar misused his power, possessed by virtue of state law to intervene and in total disregard of his duties to intervene as authorized and required under the totality of circumstances and attendant with the authority of state law.

262.  The violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

263.   The foregoing actions of Escobar were taken without any lawful justification and/or in the absence of probable cause.

264.   The shooting and subsequent ruthless post shooting beating by Ofc. Morgan contributed to and /or increased the death of Brittni Muldrew by law enforcement officers of this state is not part of the penalty that citizens must pay prior to, during and/or after being charged or suspected with a criminal offense, and such abuse sets forth a cognizable claim of excessive use of force in violation of the Fourth Amendment.

265.  Escobar knew or should have known that the amount of force used, even if Ofc. Morgan and other Defendants were effectuating a valid arrest of Brittni Muldrew, was excessive given the circumstances present and the clearly established law on use of deadly force.

266.  Based upon the facts presented to Escobar and the applicable law, no reasonable law enforcement officer or agency could have concluded that there existed any reasonable cause to allow for the unlawful use of deadly force against Brittni Muldrew.

267.  The actions or inactions of Escobar as set forth in part above constituted a deliberate indifference or reckless disregard for the safety of Brittni Muldrew when he knew of and disregarded risks to Brittni Muldrew's health and safety, and thus its actions or inactions constituted the unlawful use of deadly force in violation of the Fourth Amendment to the United States Constitution.

268.  Escobar also failed to take reasonable steps to ensure Brittni Muldrew's safety when he knew or should have known that a sufficiently serious danger to Brittni Muldrew existed, especially post shooting and because of his actions toward her which constituted deliberate indifference, and the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

269.  The failure of Escobar to take any reasonable steps to ensure Brittni Muldrew's health and safety when they knew of serious bodily harm and damage to Brittni Muldrew's mental and physical health that Ofc. Morgan had inflicted upon her constituted the unlawful use of deadly force in violation of the Fourth Amendment of the United States Constitution.

270.  The brutal physical assaults, battery, and/or shooting of Brittni Muldrew violated the Fourth Amendment's proscription against the unlawful use of deadly force.

271.  These violations of Brittni Muldrew's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

272.  As a direct and proximate result of Escobar's actions, Plaintiff was damaged, such damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. Escobar is jointly and severally liable to Plaintiff for the unlawful conduct alleged herein. Plaintiff is entitled to punitive damages and attorneys fees under this Count.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

(a)  that process issue and this court take jurisdiction over this cause;

(b)  that this court enter judgment against Defendants and for Plaintiff granting equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)   that this court enter judgment against Defendants and for Plaintiff awarding all legally available general and compensatory damages, including damages for economic loss, to Plaintiff from Defendants for Defendants' violations of law enumerated herein;

(d)   that this court enter judgment against Defendants and for Plaintiff permanently enjoining Defendants from future violations of law enumerated herein;

(e)   that this court enter judgment against Defendants and for Plaintiff awarding Plaintiff costs and attorney's fees allowed by law;

(f)   that this court enter judgment against Defendants and for Plaintiff awarding Plaintiff interest where appropriate;

(g)   that this court enter judgment against Defendants and for Plaintiff awarding Plaintiff punitive damages against Defendants Calderon, Patton, Cummings, Escobar, and Morgan.

(h)  that this court grant such other and further relief as is just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Dated this 15th day of August 2024

| | |
|---|---|
| */s/ James Roscoe Tanner*<br>James Roscoe Tanner [FBN 637246]<br>Tanner Law Group, PLLC<br>Post Office Box 130662<br>Tampa, Florida 33681<br>Telephone (813) 322-03565<br>Facsimile: (813) 355-0018<br>Email:<br>JRT@JimTannerLaw.com<br>Lead Counsel for Plaintiff | */s/ Marie A. Mattox*<br>Marie A. Mattox; FBN 0739685<br>Marie A. Mattox, P. A.<br>203 North Gadsden Street<br>Tallahassee, FL 32301<br>Telephone: (850) 383-4800<br>Facsimile: (850) 383-4801<br>Marie@mattoxlaw.com<br>Pro Hac Vice-Co-Counsel for<br>Plaintiff<br>marlene@mattoxlaw.com<br>michelle@mattoxlaw.com |
| | |

Respectfully submitted:

*/s/ James Roscoe Tanner*
James Roscoe Tanner [FBN 637246]
Tanner Law Group, PLLC
Post Office Box 130662
Tampa, Florida 33681
Telephone (813) 322-03565
Facsimile: (813) 355-0018
Email: JRT@JimTannerLaw.com
Lead Counsel for Plaintiff

/s/ Marie A. Mattox
Marie A. Mattox; FBN 0739685
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and accurate copy of the foregoing has

been furnished to all counsel of record by CM/ECF this 15th day of August, 2024.

*<u>/s/ James Roscoe Tanner</u>*
James Roscoe Tanner
