## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### (Fort Lauderdale Division)

CASE NO. 23-61681-CIV-SINGHAL/VALLE

**VICKI WATERS, as Personal**
**Representative of the Estate of**
**Brittni A. Muldrew, deceased,**

     Plaintiff,

v.

**ANDREA CALDERON, in her**
**individual capacity, et al.,**

     Defendants.

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Vicki Waters, as Personal Representative of the Estate of Brittni A. Muldrew, deceased, respectfully submits this brief in opposition to Defendants' Motion to Dismiss the Third Amended Complaint ("TAC") [Doc. 91]. Defendants' motion is procedurally premature, substantively without merit, and their reliance on video evidence requires additional discovery before a fair adjudication. This Court should deny the motion for the reasons that follow.

### I.    INTRODUCTION

Why did Brittni Muldrew have to be shot to death? The death of Brittni Muldrew raises fundamental questions about the permissible use of deadly force by law enforcement officers. The Defendants' motion fails to justify their use of such force, offering no compelling reason why Muldrew needed to be shot and killed.

The Supreme Court in *Tennessee v. Garner*, 471 U.S. 1 (1985), set clear limits on the use of deadly force. It may only be used when an officer has probable cause to believe the suspect poses a significant threat of death or serious physical harm to the officer or others. See *id.* at 11 ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect."). Even if the video footage may be reviewed on a motion to dismiss, it shows that at the time the Officers discharged their weapons, they were out of danger or could have easily evaded it. Accordingly, Defendants could only shoot Muldrew under the very limited circumstances when police may use deadly force for fleeing suspects.

## II.     ANALYSIS AND MEMORANDUM OF LAW

Defendants are ignoring Fla. Stat. Sec. 776.05. It describes the circumstances when a law enforcement officer is justified in the use of deadly force, and specifically refers to the issue as a defense. Specifically, it states:

> **776.05   Law enforcement officers; use of force in making an arrest.**—A law enforcement officer, or any person whom the officer has summoned or directed to assist him or her, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. The officer is justified in the use of any force:
>
> (1)   Which he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the arrest;
>
> (2)   When necessarily committed in retaking felons who have escaped; or
>
> (3)   When necessarily committed in arresting <u>felons</u> fleeing from justice. However, this subsection shall not constitute <u>a defense</u> in any civil action for damages brought for the wrongful use of deadly force <u>unless</u> the use of deadly force was necessary to prevent the arrest from being defeated by such flight and, when feasible, some warning had been given, and:
>
> (a)   The officer reasonably believes that the fleeing <u>felon</u> poses a threat of death or serious physical harm to the officer or others; or
>
> (b)   The officer reasonably believes that the fleeing <u>felon</u> has committed a crime involving the infliction or threatened infliction of serious physical harm to another person.

(emphasis supplied). Accordingly, Defendant's instant motion is based on an affirmative defense dependent on issues such as whether or not Muldrew is a

felon. So, it not only has the burden to prove that defense, but it is also premature to do so on a motion to dismiss.

> ### A.   Defendant Cannot Carry Its Burden Under Fla. Stat. Sec. 776.05 on a Motion to Dismiss

Because § 776.05 is a defense, Defendants must prove that Muldrew committed a felony in their presence to take advantage of it. See *Light v. State*, 796 So. 2d 610, 614 (Fla. 2d DCA 2001) ("Mr. Light had committed only misdemeanors in the presence of these officers prior to the collision, they had no authority to use deadly force except in self-defense or if Mr. Light committed a new felony.", citing § 776.05(1), (3), Fla. Stat. (1993). A Rule 12(b)(6) motion to dismiss does not empower a court to consider affirmative defenses, unless the affirmative defense "appears on the face of the complaint." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1225 n.8 (11th Cir. 2016) (quoting *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011)).

Here, the face of the complaint does not prove that Muldrew committed a felony in the presence of the Defendant Officers. Even if Defendants intend to prove Muldrew was a felon because she allegedly stole a car, that is not evident from either the complaint or the videos. Therefore, their instant motion cannot be granted.

> ### B. Defendants' Reliance on Video Evidence Is Misplaced and Procedurally Premature

The Plaintiff has retained a leading well-known expert witness who has testified throughout the Country for both plaintiffs and defendants in police use of deadly force cases. Due to an ongoing investigation as indicated in the footnote above, the State Attorney for Broward County advised the undersigned just this afternoon that the Plaintiff may receive additional documents once the investigation is completed. There has been no discovery in this matter.

The plaintiff intends to utilize her expert witness once all documents and CAD reports have been made available to the Plaintiff which should be within the next couple of weeks due to the undersigned's having to evacuate during the two recent hurricanes and loss of power, flooding and no internet service until just this past week. The U. S. Supreme Court has use of force expert's opinion based on viewing police dash cam video in response in opposition to the defendants Motion to Dismiss under Fed. R. Civ. P. 12 (b)(6) when the police are alleged to have used excessive deadly force in which takes the victim's life?

When a district court considers a video recording of a police encounter at the summary judgment stage, a court must credit the plaintiff's version of the facts to the extent they are not blatantly contradicted by the recording. As the phrase blatantly contradicts implies, this standard is a very difficult one to satisfy and *requires that the plaintiff's version of events be utterly discredited by the video recording.* The same standard applies to a trial court's consideration of a video recording at the motion to dismiss stage. A district court can consider a

video submitted at the motion to dismiss stage when (1) the video is integral to the complaint and its authenticity is not challenged, but (2) only to the extent that the video clearly depicts a set of facts contrary to those alleged in the complaint, or blatantly contradicts the plaintiff's allegations, rendering the plaintiff's allegations implausible.  *Doriety v. Sletten,* 684 F. Supp. 3d 439, 2023 U.S. Dist. LEXIS 133684 (M.D.N.C., July 28, 2023)

Officer Sletten filed a motion to dismiss the complaint under Rule 12(b)(6). In his motion, Officer Sletten contended that Crenshaw "accelerated" the stolen car "directly toward" the officer, and that Officer Sletten fired his weapon in self-defense. In making this contention, Officer Sletten relied on a "publicly available" video recording taken from the officer's body-worn camera (the video). The officer asked the district court to consider the video because "it is integral to and was apparently relied on" by the plaintiff in her complaint.

The plaintiff opposed the motion to dismiss but did not object to the court's consideration of the video and instead referred to the "unchallenged video" as being part of "the record." The plaintiff nonetheless requested that the court credit her factual allegations to the extent they are "not contradicted by the video." *Iko v. Shreve,* 535 F.3d 225, 230 (4th Cir.

6

2008)  [*677]  (citing *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient [**15]  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). A plausible complaint contains facts that, as alleged, allow a court to draw the reasonable inference that the defendant is liable. *Ashcroft*, 556 U.S. at 678.

In Sletten, the Appellate Court concluded that the district court erred in granting Officer Sletten's motion to dismiss, because the video recording did not "blatantly contradict" the allegations of the amended complaint. [**3]  We hold that the plaintiff's allegations of excessive force under § 1983, when properly construed, are sufficient to state a claim. We therefore reverse the district court's judgment in favor of Officer Sletten on the excessive  [*674]  force claim and remand that claim to the court for further proceedings. Id.

On appeal, the plaintiff contends that the district court erred in dismissing her complaint. She argues that the district court improperly substituted its own view of the facts derived from the video, and discounted the

plaintiff's allegations even though the video did not plainly contradict

them. According to the plaintiff, the district court improperly rejected her

plausible allegation that the officer was not in the "path" of the stolen car when

the officer first fired his weapon. Relying also on her allegations that the

additional shots entered the car through its right passenger window, the

plaintiff contends that she adequately alleged that Officer Sletten was standing

to the side of the moving car and was not in danger at the time he fired those

additional shots.

> "We hold that at the motion to dismiss stage the plaintiff's allegations are sufficient
> to allege a plausible claim of excessive force. Because the video recording did not
> blatantly contradict the plaintiff's allegations regarding the location of the officer and
> the trajectory of the moving car at the time each shot was fired, the district court
> erred in construing the facts in a manner inconsistent with the plaintiff's allegations.
> Based on the plaintiff's allegations, a reasonable officer in Officer Sletten's position
> would not think that the stolen car, which was moving away from the officer, posed
> a significant and immediate threat of death or serious physical [*681] injury to the
> officer that would justify his conduct of firing one shot through the car's windshield
> and additional shots through the car's passenger window.**7** *See Waterman*, 393 F.3d at
> 482. We therefore reverse the district court's ruling on the excessive force claim".

The Defendants assert that the dashcam and body-worn camera footage

contradicts Plaintiff's allegations. However, as the Supreme Court held in *Scott*

*v. Harris*, 550 U.S. 372 (2007), video evidence can only defeat well-pleaded facts

if it "blatantly contradicts" those allegations. The video footage in this case, far

from providing clarity, is ambiguous at best and, as such, must be construed in

the light most favorable to the Plaintiff. As held in *Jackson v. City of Atlanta, Georgia*, 97 F.4th 1343, 1350 (11th Cir. 2024), when reviewing video footage at the motion to dismiss stage, courts "must construe all ambiguities in the video footage in favor of the plaintiff."

Much like in *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207 (11th Cir. 1993), where the court found that the failure to properly investigate an incident and follow appropriate procedures could show a policy of deliberate indifference, Defendants in this case ask the Court to consider video evidence without a full exploration of relevant policies, training practices, or alternative actions the officers could have taken. See *id.* at 1212 ("The manner in which the Sheriff investigated this incident evidences a policy of deliberate indifference to the rights of the County's inhabitants."). This case is also analogous to *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), where the court found municipal liability based not only on the reckless actions of officers during the incident but also on the department's failure to investigate or discipline those officers afterward. See *id.* at 171 ("The disposition of the policymaker may be inferred from his conduct after the events of that night. Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error.").

Just as the *Grandstaff* court noted that no reprimands or policy changes followed the reckless use of deadly force, here, the Defendants have provided no evidence that the incident involving Muldrew was properly investigated, or that any officer was disciplined or that policies were reformed. To the contrary, such issues should be the subject of (at least some) discovery.

## C.   <u>What the Officers Should Have Done to Avoid Using Deadly Force</u>

The officers in this case had multiple non-lethal options at their disposal that could have prevented the death of Brittni Muldrew. The facts as alleged show that the officers escalated the situation unnecessarily and failed to use alternative methods of restraint that would have de-escalated the encounter and avoided the need for deadly force. Several actions the officers should have taken include:

### 1.   **Removing the Keys from the Ignition**

One of the most basic de-escalation tactics available to the officers was to prevent Muldrew from being able to operate the vehicle in the first place. Upon making contact with Muldrew, the officers could have instructed her to remove the keys from the ignition and hand them over. By taking control of the vehicle in this manner, the officers would have neutralized any perceived threat from the car and avoided placing themselves in a position of potential danger.

2.    **Physically Removing Muldrew from the Vehicle**

If the officers believed that Muldrew posed a danger by remaining in the vehicle, they could have ordered her to exit the car. Law enforcement officers are trained to physically remove individuals from vehicles in a manner that reduces the risk of harm. This simple action would have prevented the car from becoming a potential weapon and minimized the need for any use of force.

3.    **Positioning Themselves Away from the Vehicle**

Rather than placing themselves in front of or near the moving car, where they perceived danger, the officers could have positioned themselves safely away from the vehicle. The decision to remain close to the car when it began moving backward escalated the situation unnecessarily. By moving away from the vehicle, the officers would have negated any immediate threat and eliminated the justification for deadly force.

4.    **Using Verbal Commands and Warnings**

The officers should have continued using verbal commands and warnings to gain compliance before resorting to the most extreme measure of deadly force. Courts have routinely held that the failure to issue a warning before using deadly force, when feasible, is a significant factor in determining whether such force was reasonable. In *Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019), *as revised* (Aug. 21, 2019), the court emphasized that officers must give a warning, when feasible,

before using deadly force. See *id*. at 449, (Officers had the time and opportunity to give a warning to disarm, the officers provided "no warning ... that granted [Ryan] a sufficient time to respond," such that Ryan "was not given an opportunity to disarm himself before he was shot.", footnotes omitted). Here, the officers had ample opportunity to command Muldrew to turn off the vehicle, exit the car, or stop moving before resorting to gunfire. A warning should have been issued in accordance with standard police protocols to avoid escalation.

### 5.   **Waiting for Backup and Non-Lethal Options**

The officers also had the option of waiting for backup or calling for additional non-lethal options to defuse the situation. Police departments are equipped with a range of non-lethal tools, including tasers, pepper spray, and spike strips, which could have been used to stop the vehicle without endangering lives. The failure to use these options further demonstrates the excessive nature of the force employed.

### 6.   **Compliance with Department Policies**

Additional discovery is expected to reveal that department policies likely prohibit shooting into occupied vehicles unless there is an imminent threat that cannot be avoided through other means. The officers, by failing to adhere to these policies, escalated the situation instead of diffusing it. Had they followed

protocols to remove Muldrew from the vehicle or use non-lethal alternatives, the outcome could have been entirely different.

### D.   The Officers Are Not Entitled to Qualified Immunity

Qualified immunity is only available when officers' actions do not violate clearly established law. It is an affirmative defense. See *Ansley v. Heinrich*, 925 F.2d 1339, 1344 (11th Cir. 1991) ("The affirmative defense of qualified immunity protects public officials, acting within the scope of their discretionary authority and under clearly established law, from insubstantial lawsuits.", citation omitted). So, just as with the defense afforded by Fla. Stat. Sec. 776.05, this can only be determined on a motion to dismiss if it is apparent on the face of the complaint. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1225 n.8 (11th Cir. 2016) (quoting *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011)).

The facts as alleged show that the officers had time to assess the situation and determine that Muldrew did not pose a threat of death or serious injury. This is not a case of split-second decision-making because it all began with an ordinary traffic stop; the officers had the opportunity to use less-lethal options if they were alerted to something such as a stolen car. In sum, the officers could have taken other actions, such as removing the keys from the car, asking Muldrew to exit the vehicle, or simply removing her from the vehicle at the start of the encounter.

The discovery process may further show that department policies prohibited shooting into occupied vehicles, especially in situations where other non-lethal options were available. Therefore, under *Graham v. Connor*, 490 U.S. 386 (1989), the use of deadly force was objectively unreasonable, and the officers are not entitled to qualified immunity. See *id.* at fn. 12 ("Of course, in assessing the credibility of an officer's account of the circumstances that prompted the use of force, a factfinder may consider, along with other factors, evidence that the officer may have harbored ill-will toward the citizen. Similarly, the officer's *objective* "good faith"—that is, whether he could reasonably have believed that the force used did not violate the Fourth Amendment—may be relevant to the availability of the qualified immunity defense to monetary liability under § 1983. Since no claim of qualified immunity has been raised in this case, however, we express no view on its proper application in excessive force cases that arise under the Fourth Amendment.", citations omitted, emphasis in original).

"Qualified immunity protects officers engaged in discretionary functions from civil liability only if the officers' actions do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In the instant case, Plaintiff does

not dispute that Calderon, Cummings, Patton, Escobar and Morgan were acting within their discretionary authority when they shot and killed Muldrew. Thus, Muldrew must allege facts which enable the Court to find that Calderon, Cummings, Patton, Escobar and Morgan committed a constitutional violation, and that this constitutional violation was clearly established at the time of the incident. Id. There is no question that Muldrew has alleged facts from which the Court can reasonably infer that Calderon, Cummings, Patton, Escobar and Morgan use of deadly force against Muldrew violated Muldrew's Fourth Amendment right in that it was not reasonable. At the very least, Plaintiff has presented sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face. Id.

### Calderon, Cummings, Patton, Escobar and Morgan's use of deadly force was unreasonable under the circumstances

When viewed in the light most favorable to Plaintiff, the facts here are sufficient to establish that Calderon, Cummings, Patton, Escobar and Morgan's use of deadly force was unreasonable against Muldrew, which was not objectively reasonable in light of the facts and circumstances confronting them when viewed from the perspective of a reasonable officer on the scene. It is undeniably clear that the nature and quality of the intrusion on Muldrew's Fourth Amendment interests was severe in that it resulted in her death. See e.g., *Mercado v. City of Orlando*, 407 F.3d 1152, 1157 (11th Cir. 2005).

"The intrusiveness of a seizure by means of deadly force is unmatched." *Garner*, 471 U.S. at 9. The use of deadly force "frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment." Id. at 9.

Muldrew was suspected of committing the offense of speeding on a public highway and later upon the arrival of defendant Patton, Calderon told Patton to call in as a suspicion of DUI.  Later Calderon alleged that the car had been reported stolen.  It was at all times not known if the car was actually stolen, or who, how, when, where and under what circumstances Muldrew ended up in the driver's seat.  In fact, at the time of shooting and killing of Muldrew the defendants' lacked the who, how, when, where and under what circumstances Muldrew ended up in the driver's seat.  Being merely in possession of a reported stolen car is not a violent crime and clearly Muldrew's demeanor dispels any notion other than she was polite, cooperative, and truthful and at no time was Muldrew ordered to turn off the car and exit the car.  Despite Calderon's telling Patton to call in a DUI, Calderon ignored DUI protocol.  Muldrew complied with all Calderon's orders and presented no danger. Calderon had an opportunity and duty to take Muldrew into custody especially in light of Muldrew's cooperative exchanges.  Calderon failures where clearly outweighed by Muldrew's interest in her own life.   Any harm which might have resulted from failing to apprehend Muldrew certainly did not justify the use of deadly force to do so. When this deadly intrusion on Muldrew's Fourth Amendment

interests is balanced against the countervailing governmental interests in effective law enforcement, it is clear that, Calderon, Cummings, Patton, Escobar and Morgan's use of force was unreasonable under the circumstances their actions were not objectively reasonable.

Calderon, Cummings, Patton, Escobar at the time they shot Muldrew could not reasonably have believed that Muldrew posed any immediate threat to their safety or the safety of others. This is especially true of the defendant Morgan in his post-shooting beating of Muldrew to her head repeatedly, wherein the defendants, claim the following:

> "Officer Morgan could reasonably believe that Muldrew, who just attempted to kill and/or posed a significant threat to law enforcement officers, was resisting arrest and refusing to get out of the vehicle. With such reasonable subjective belief, he struck Muldrew with his baton a single time to assist in taking her out of the vehicle…." "He then removed her from the vehicle and placed her on the ground before striking the ground in order to close his baton." Doc. 91 Pages 13-14.

The defendant's version is not only shockingly untrue but is an outrageous as Muldrew was not resisting anyone had been repeatedly shot and Morgan not only dropped her body to the pavement but again striking Muldrew in the head with his steel telescopic baton and was actually "yelled at to stop beating Muldrew as she laid face down on the pavement where Morgan had dropped her body".

**Clearly Established Law**

There are three ways for a plaintiff in the Eleventh Circuit to show that a right was clearly established. First, "the plaintiff can point to a materially similar case decided at the time of the relevant conduct by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court." *J W ex rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259 (11th Cir. 2018) (per curiam). The case "need not be directly on point," but it must "have placed the statutory or constitutional question beyond debate." Id. (quoting *White v. Pauly*, 580 U.S. 73, 79, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017) (per curiam)). "Second, the plaintiff can identify a broader, clearly established principle that should govern the novel facts of the situation." *J W*, 904 F.3d at 1259. Or, third, the plaintiff can demonstrate that the alleged conduct "so obviously violated the Constitution that prior case law is unnecessary." Id. at 1260.

Long before *Wilkerson v. Hicks*, 2021 U.S. Dist. LEXIS 45788, 2021 WL 935500 (M.D. Ala., Mar. 11, 2021) the Eleventh Circuit had clearly established "that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008). Crucially, this is true even if someone resists arrest at first; the Fourth Amendment still forbids an officer from beating an initially non-compliant suspect after the individual is handcuffed and no longer resisting.

Plaintiff alleged facts which are sufficient to enable the Court to find that a constitutional violation was clearly established on the date of the shooting. "A right may be established by an existing decision of the Supreme Court, th[e] [Eleventh Circuit], or the state's highest court." *LaPage*, 2016 WL 4473223, at *3. However, "there need not be a case on all fours, with materially identical facts; rather, there can be 'notable factual distinctions' between the precedent and the case before the court." Id. (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1277) (officials need only have 'reasonable warning' that their conduct violated constitutional rights.") Id. (quoting *Holloman*, 370 F.3d at 1277). In *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508 (2002), the Supreme Court cautioned that when determining [*19] whether a constitutional right is clearly established, courts "should not be unduly rigid in requiring factual similarity between prior cases and the case under consideration." *Vaughn v. Cox*, 343 F.3d 1323, 1332 (2003). Pursuant to *Hope*, the "salient question" is whether the state of the law gave the defendants "fair warning" that their alleged conduct was unconstitutional. *Hope*, 536 U.S. at 741.

In *Garner*, the Supreme Court established that "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Garner*, 471 U.S. at 11. The Eleventh Circuit recognizes that "[u]nder *Garner*, a

police officer can use deadly force to prevent the escape of a fleeing non-violent felony suspect only when the suspect poses an immediate threat of serious harm to police officers or others." *Vaughn*, 343 F.3d at 1332. The holdings of these cases clearly gave the defendants reasonable warning [*20] that shooting Muldrew would violate her constitutional rights. As outlined above, Muldrew was only in possession of a car that had been reported stolen and upon information and reasonable belief Muldrew had her hand on the steering wheel, braked immediately turned the wheels to the right and was seeking to avoid death through flight. She was never a real threat of which she was never warned prior to the shooting to do what she would have done.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss. The facts alleged, when viewed in the light most favorable to Plaintiff, demonstrate plausible violations of Muldrew's constitutional rights under the Fourth and Fourteenth Amendments.

October 23, 2024,

Respectfully submitted

*/s/ James Roscoe Tanner*
James Roscoe Tanner [FBN 637246]
Tanner Law Group, PLLC
Post Office Box 130662
Tampa, Florida 33681
Telephone (813) 322-03565
Email: JRT@JimTannerLaw.com
Lead Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been `filed with the Court's electronic filing system, which will send notice to all counsel of record on October 23, 2024.


*/s/ James Roscoe Tanner*
James Roscoe Tanner