UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Fort Lauderdale Division)

CASE No. 23-61681-CIV-SINGHAL/VALLE

VICKI WATERS, as Personal Representative of
the ESTATE of BRITTNI A. MULDREW,
deceased,

       Plaintiff,

v.

ANDREA CALDERON, in her individual
capacity, *et al.*,

       Defendants.

_____/

**DEFENDANTS, ANDREA CALDERON, ALEJANDRO ESCOBAR, AMANDA
CUMMINGS, ARTHUR PATTON, AND TY MORGAN'S, REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

      Defendants, Andrea Calderon ("Officer Calderon"), Alejandro Escobar ("Officer Escobar"), Amanda Cummings ("Officer Cummings"), Arthur Patton ("Officer Patton"), and Ty Morgan ("Officer Morgan") (collectively, "Officers"), pursuant to Local Rule 7.1(c), file this Reply in Support of their Motion to Dismiss Plaintiff's Third Amended Complaint ("Motion"), [ECF No. 91], seeking dismissal with prejudice of the Third Amended Complaint ("TAC"), [ECF No. 84] filed by Vicki Waters, as the personal representative ("Personal Representative") of the estate of Brittni A. Muldrew ("Estate") (individually, "Muldrew"), and state in support:

**I.**    **THIS COURT SHOULD CONSIDER THE OBJECTIVE VIDEO EVIDENCE
OVER PLAINTIFF'S FABRICATED ALLEGATIONS.**

      In their Motion, the Officers requested that the Court consider the objective video evidence, the Dash Cam Footage ("DC Footage") and the body-worn-camera footage ("BWC Footage"), referenced in the TAC and filed in this action [ECF No. 81], when ruling on the

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

Motion due to Plaintiff's gross misrepresentation of the videos. Motion at pp. 3-8. Despite repeatedly stating in prior filings that the videos would show the alleged egregious behavior of the Officers, Plaintiff inexplicably pivots and now claims that the videos do not provide clarity and are ambiguous at best. *Compare* Plaintiff's Response in Opposition to Defendants' Motion to Dismiss [ECF No. 96] ("Response") at p. 8, *with* Plaintiffs' Response in Opposition to the Officers' Motion to Dismiss the Second Amended Complaint [ECF No. 74] at p. 2 ("[T]he SAC does not do the facts of this case justice, it is only because the dashcam videos are so shocking that the scene cannot be described in text. . . . A review of the videos shows, *rather conclusively*, that there was absolutely no reason to shoot Brittni A. Muldrew").[1]

Moreover, Plaintiff suggests that for the Court to consider the DC Footage, the footage must blatantly contradict the allegations in the TAC. Response at pp. 8-9. However, blatant contradiction is not the standard in the Eleventh Circuit. *See* Motion at pp. 4-5. Regardless, the Officers detailed each of Plaintiff's allegations that were obviously contradicted by the DC Footage. Motion at pp. 4-7 & n.3-6. Plaintiff's Response fails to address any of the Eleventh Circuit (and binding caselaw) set forth in the Motion and likewise does not rebut, dispute, or

---

[1] Plaintiff also appears to suggest through an incomprehensible question, and without citing any legal authority, that the Motion should be denied because her expert witness apparently needs additional documents to be able to somehow render an opinion as to what the videos may depict. Response at p.5. However, an expert is certainly not needed to show the clear inconsistencies in the TAC nor does Plaintiff explain what an expert would do to assist the Court in being able to assess the reasonableness of the Officers' actions as depicted in the referenced video footage.

Plaintiff further asserts that it is improper for the Court to consider video evidence "without a full exploration of relevant policies, training practices, or alternative actions the officers could have taken" which "could show a policy of deliberate indifference." Response at p. 9. Even if this was true, which it is not, Plaintiff's assertions pertain to liability against the City of Coconut Creek (which was dismissed with prejudice [ECF No. 82]), and not like here, where liability is only being asserted against the Officers individually.

otherwise respond to any of the clear contradictions between the referenced videos and the allegations in the TAC.

Instead, Plaintiff spends extensive time relying primarily upon *Doreity v. Sletten*, 109 F.4th 670 (4th Cir. 2024), a non-binding Fourth Circuit case, for the proposition that the Court should only credit the video if it blatantly contradicts Plaintiff's allegations. Response at pp. 6-8. However, the Fourth Circuit's appears to set forth a standard different to Eleventh Circuit precedent (and, in any event, does not advance Plaintiff's position, even if the Court were to consider this non-binding, applicable case here). For example, in *Sletten,* the Fourth Circuit held, "that a district court can consider a video submitted at the motion to dismiss stage when (1) the video is integral to the complaint and its authenticity is not challenged, but (2) only to the extent that the video clearly depicts a set of facts contrary to those alleged in the complaint, or blatantly contradicts the plaintiff's allegations, rendering the plaintiff's allegations implausible." *Sletten*, 109 F.4th at 679-80.

As opposed to the Fourth Circuit, the Eleventh Circuit does not limit the district court's review of a video at the motion to dismiss stage. Rather, "a court may consider [video] evidence attached to a motion to dismiss . . . if: (1) the plaintiff refers to [the video] in the complaint, (2) the [video] is central to the plaintiff's claim, and (3) the [video's] contents are undisputed." *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023) (citation omitted). Further, the Eleventh Circuit has repeatedly held that if the "video is *clear* and *obviously contradicts* the plaintiff's alleged facts, [the Court is to] *accept* the video's depiction instead of the complaint's account, and . . . view the facts in the light depicted by the video.'" *Jackson v. City of Atlanta, Georgia*, 97 F.4th 1343, 1350 (11th Cir. 2024) (citation omitted) (emphasis added).

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

Additionally, *Sletten* does not provide guidance in this matter because the video in *Sletten* contained deficiencies that are not present in this action. For example, the *Sletten* video did not clearly show the officer's location and did not demonstrate the entire direction in which the stolen vehicle was moving in relation to where the officer stood. *Sletten*, 109 F.4th at 680. Conversely, here, the DC Footage clearly shows one of the Officer's location (*directly* behind the vehicle) and the direction the stolen car was moving (*directly* towards the Officer). Therefore, notwithstanding the fact that *Sletten* is non-binding, the purported deficiencies observed in the video in *Sletten* do not exist in the DC Footage.

Notably, Plaintiff's Response does not dispute that the TAC refers to the footage, that the footage is central to her claim, and does not contest the authenticity of the video (which Plaintiff herself submitted). Nor does Plaintiff even attempt to rebut *any* of the obvious contradictions asserted by the Officers in their Motion. Thus, this Court can (and should) consider the DC Footage and BWC Footage and view the facts in the light depicted by the footage.

## II.   THE OFFICERS ARE ENTITLED TO SOVEREIGN IMMUNITY PURSUANT TO FLA. STAT. § 768.28(9)(A) AS TO COUNTS I THROUGH V.

Plaintiff fails to respond to the Officers' contention that the factual allegations asserted in the TAC, contradicted by the objective videos, do not assert sufficient facts demonstrating that the Officers acted with bad faith, malice, and wanton and will disregard for human rights, safety, or property. *See* Motion at pp. 8-13. Instead, Plaintiff contends that the Officers cannot meet their burden under Section 776.05, Florida Statutes, on a motion to dismiss because it is an affirmative defense. Chiefly, Plaintiff asserts that the Officers must show that Muldrew committed a felony in their presence to justify the use of their force and that they have not been able to do so. Response at pp. 3-4.

This contention ignores not only what the Officers stated in their Motion, but more importantly, what is shown in the videos. The Officers have never asserted that deadly force was utilized because Muldrew had stolen vehicle outside of their presence. Rather, the Officers asserted that the DC Footage demonstrates that Muldrew attempted to murder and/or cause them grievous bodily harm by running them over in the stolen vehicle. The nature of the crimes committed by Muldrew, as depicted in the DC Footage, contains a laundry list of felonies committed in the presence of the Officers, including but not limited to, aggravated assault, aggravated battery, and attempted murder of the Officers, *See, e.g.,* Fla. Stat. § 784.07(2)(a), (b).

The Officers' entitlement to sovereign is conclusively established by the TAC, in light of the DC Footage. The Officers had commanded Muldrew to get out of the vehicle. DC Footage at 12:04-12:10. However, rather than exit the vehicle, Muldrew accelerated the vehicle in reverse towards Officer Cummings, who was standing directly behind Muldrew's vehicle with her K-9. *Id.* at 12:10-12:20. But for Officer Cummings' split-second actions to get out of the way, she and her K-9 would have been crushed. *Id.* Plaintiff's vehicle continued to rev its engine while other Officers were standing in front of and next to the vehicle. *Id.* Justifiably concerned for the safety of the other Officers and for themselves, the Officers discharged their firearms. *Id.* at 12:22-12:27. The Officers' justified actions do not warrant stripping them of their sovereign immunity.

Likewise, Officer Morgan is also entitled to sovereign immunity. As discussed in the Motion (pp. 12-13), Officer Morgan arrived at an extremely volatile scene wherein multiple shots were discharged because the suspect used a stolen vehicle as a deadly weapon against his fellow officers. DC Footage at 12:10-13:10. He observed the Officers yelling "get her out" and Officer Calderon struggling to get an apparent non-compliant suspect (Muldrew) out of the vehicle. DC Footage at 12:30-13:33. With the reasonable, objective belief that Muldrew, who

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

just attempted to kill and/or posed a significant threat to law enforcement officers, was resisting arrest, he struck Muldrew with his baton to assist in taking her out of the vehicle. DC Footage at 13:33-13:40. Objectively, his actions do not warrant stripping him of sovereign immunity.

### III.   THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO EXCESSIVE FORCE CLAIMS IN COUNTS VI THROUGH X.

Similarly, the Officers moved to dismiss the Fourth Amendment excessive force claims on the grounds that the Officers are entitled to qualified immunity because their use of force was reasonable under the circumstances shown in the footage and misrepresented in the TAC. While Plaintiff concedes that all the Officers were acting within their discretionary authority (Response at pp. 14-15), Plaintiff maintains that the Officers are not entitled to qualified immunity because their actions violated clearly established law. Response at p. 13. However, the Officers' use of force was reasonable under the circumstances as depicted by the video footage. *See* Motion at pp. 6-8 and 16-20.

#### A. *Excessive Force Is Judged by an Objective Standard.*

Plaintiff asserts that the Officers are not entitled to qualified immunity because of what they *could* have done instead of addressing the reasonableness of what the Officers *actually* did when faced with a life-threatening situation. Response at pp. 10-13. As examples, Plaintiff proposes that the Officers should have removed the keys from the ignition, physically removed Muldrew, position themselves away from the fleeing vehicle, use verbal commands, and/or wait for backup. *Id.* However, such suggestions are misleading as to what occurred. Mainly because the Officers did in fact do some of the "other options."

Regardless, Plaintiff's suggestion that this Court should be the proverbial "Monday morning quarterback" is precisely the type of review that courts decline to engage in. Instead, excessive force cases are governed by the Fourth Amendment's objective reasonableness

6

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

standard. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). Accordingly, the Court is to review the officers "use of force 'on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the *20/20 vision of hindsight.*'" *Senko v. Jackson*, 603 F. Supp. 1299, 1313 (S.D. Fla. 2022) (quoting *Brown*, 608 F.3d at 738) (emphasis added).

When assessing the "reasonableness" of an officer's use of force "the court consider the 'facts and circumstances of each particular case,' including a non-exhaustive list of factors, such as (1) 'the severity of the crime at issue'; (2) 'whether the suspect poses an immediate threat to the safety of the officers or others'; and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Here, the Officers pulled Muldrew over for speeding. During the stop, Officer Calderon suspected that she was under the influence based on her slurred speech. DC Footage at 2:15-2:20. Officer Calderon checked Muldrew's information in their database. While doing so, the Officers realized the vehicle before Muldrew operated was stolen. TAC, ¶32; DC Footage at 8:15-8:25. The Officers, while waiting for back up, also repeatedly told Muldrew (and her passenger) not to move. DC Footage at 8:40-9:03. Once backup arrived, Muldrew was commanded to exit the vehicle. *Id.* at 12:10-12:16. The Officers had no reason to suspect Muldrew was a threat until she refused to comply with the Officers' commands and attempted to run over an Officer. *Id.* at 12:17-12:20. That is when the Officers (properly) perceived that Muldrew (who was clearly operating the vehicle) was a threat to themselves and the other Officers. As the video footage demonstrates, none of the Officers within the proximity were safe.

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

Muldrew continued to rev the engine of her vehicle with three of Officers standing within lethal striking distance of the vehicle. DC Footage at 12:20-12:35.[2]

The use of deadly force in this situation, as depicted by the video, was therefore eminently reasonable, and Plaintiff cannot point to a single case wherein the Court has held the opposite under similar circumstances. In fact, as reflected by several cases cited within the Motion (at pp. 17-19) – none which are addressed by Plaintiff – the Eleventh Circuit has routinely held that the use of deadly force by law enforcement officers is permissible towards a suspect utilizing an automobile as a deadly weapon against law enforcement officers in cases less egregious than what occurred here. *See, e.g., McCullough v. Antolini,* 559 F.3d 1201, 1207 (11th Cir. 2009); *Terrell v. Smith,* 668 F.3d 1244 (11th Cir. 2012); and *Robinson v. Arrugueta*, 415 F.3d 1252 (11th Cir. 2005). For these reasons, Officers Calderon, Patton, Escobar, and Cummings are entitled to qualified immunity as to Counts VI through IX.

**B.   *Officer Morgan is Entitled to Qualified Immunity.***

Officer Morgan is also entitled to qualified immunity. While Plaintiff does not specifically address Officer Morgan, she groups him among the other Officers when improperly claiming that he also "shot and killed Muldrew." Response at p. 15. This is incorrect. The excessive force claim brought against Officer Morgan is premised on him striking Muldrew with his baton and not shooting her. TAC, ¶¶164-180.

As discussed, *supra*, Officer Morgan was faced with a split-second decision whether force was needed to get a perceived non-compliant Muldrew, who had just attempted to run over multiple officers, to exit the vehicle. Plaintiff's Response nor the TAC point to a single case

---

[2]  Plaintiff's claim that Muldrew "presented no danger" (Response at p. 16) is belied by the video footage.

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

wherein an officer was found to violate a suspect's Fourth Amendment rights under similar circumstances.

In fact, the Eleventh Circuit precedent laid out in the Motion (at p. 20), again not addressed by Plaintiff, shows that Officer's Morgan's actions were not excessive and did not violate clearly established law. *See Benton v. Hopkins*, 190 Fed. App'x 856, 859-60 (11th Cir. 2006) (affirming the award of qualified immunity because the officer's baton strikes, which followed continued non-compliance from the suspect even after officers had administered pepper spray directly in the suspects eyes prior to the baton strikes, did not constitute excessive force based upon the totality of the circumstances); *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1351, 1355 (11th Cir. 2015) (concluding officers' use of force in striking, kicking, and tasing suspect was not excessive where the suspect, though pinned on the ground, was "refusing to surrender his hands to be cuffed"). Therefore, Officer Morgan is likewise entitled to qualified immunity as to Count X.

## IV.    PLAINTIFF HAS NOT SUFFICIENTLY ALLEGED FAILURE TO INTERVENE CLAIMS IN COUNTS XI THROUGH XIV AGAINST OFFICERS CALDERON, PATTON, CUMMINGS, AND ESCOBAR.

Officers Calderon, Patton, Cummings, and Escobar further moved to dismiss the failure to intervene claims (Counts X through XIV) on the grounds that the DC Footage entitled them to qualified immunity and further reflected that none of them had the opportunity to intervene. Motion at pp. 21-23. However, Plaintiff completely fails to address these arguments and case law cited in support thereof. As such, these claims should be deemed abandoned. "[A] claim may be considered abandoned when the allegation is included in the plaintiff's complaint, but [the plaintiff] fails to present any argument concerning this claim to the district court." *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir.

2000) (citation omitted); *see also Gomez v. Miami-Dade County*, 563 F. Supp. 3d 1211, 1218 (S.D. Fla. 2021) (collecting cases within this District of courts deeming claims abandoned where a plaintiff raises the claim in the complaint but fails to defend it in opposition to a motion to dismiss).

On the merits, the failure to intervene claims provide no supporting factual allegations. For example, Plaintiff alleges that Officers Cummings, Patton, Calderon, and Escobar each had the opportunity and proximity to stop Officer Morgan (even though intervention was not needed). TAC, ¶¶ 184, 207, 230, 253. Plaintiff's conclusory allegations of the Officers' opportunity and proximity is also refuted by the objective video evidence.

From the moment Officer Morgan drew his baton to when he struck Muldrew, occurred under four seconds. BWC Footage at 1:41-1:45. Officer Calderon is the only officer near Officer Morgan but she has her back to him and is holding on to Muldrew. DC Footage at 13:24-13:30. During this time, Officer Patton is separated from Officer Morgan by the car door and is facing the driver of the vehicle. BWC Footage at 1:40-1:45. Neither of these Officers had the opportunity to stop Officer Morgan. Further, none of the other Officers (Cummings and Escobar) are anywhere near Officer Morgan to be able to have an opportunity to stop him. DC Footage at 13:30-13:44.

The video footage upon which the TAC bases its factual allegations directly contradicts Plaintiff's narrative that Officer Cummings, Patton, Calderon, or Escobar had a "reasonable opportunity" to intervene with Officer Morgan – *or even needed to intervene (which they did not)* – and failed to do so. Thus, Counts XI through XIV should be dismissed for failure to state a claim as well as the fact that the Officers are entitled to qualified immunity as to these claims.

DATED:      November 5, 2024        Respectfully submitted,

WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
*Counsel for Defendants, Andrea Calderon,
Alejandro Escobar, Amanda Cummings, Arthur
Patton, and Ty Morgan*
200 East Broward Boulevard, Suite 1900
Fort Lauderdale, FL 33301
Telephone: 954-763-4242

By:    /s/ *Bryan C. Siddique*
MATTHEW H. MANDEL
Florida Bar No. 147303
Primary e-mail: mmandel@wsh-law.com
Secondary e-mail: lbrewly@wsh-law.com
ANNE R. FLANIGAN
Florida Bar No. 113889
Primary e-mail: aflanigan@wsh-law.com
Secondary e-mail: pgrotto@wsh-law.com
BRYAN C. SIDDIQUE
Florida Bar No. 1018191
Primary e-mail: bsiddique@wsh-law.com
Secondary e-mail: mboschini@wsh-law.com