UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-61681-CIV-SINGHAL

VICKI WATERS, as Personal Representative
of the Estate of Brittni A. Muldrew, deceased, *etc.*,

    Plaintiffs,

v.

ANDREA CALDERON, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on the Motion to Dismiss Third Amended Complaint and Motion to Strike Certain Damages Claims (DE [91]) filed by Defendants Andrea Calderon, Alejandro Escobar, Amanda Cummings, Arthur Patton, and Ty Morgan (collectively, "Defendants"). The motion is fully briefed and ripe for review. For the reasons discussed below, the Motion to Dismiss is granted.

    I.    **BACKGROUND**

Vicki Waters ("Waters"), personal representative of the Estate of Brittni A. Muldrew ("Muldrew"), seeks damages under Florida and federal law for Muldrew's death in a police-involved shooting. Defendants are five City of Coconut Creek police officers sued in their individual capacities: Andrea Calderon ("Calderon"), Lejandro Escobar ("Escobar"), Amanda Cummings ("Cummings"), Arthur Patton ("Patton"), and Ty Morgan ("Morgan").

Plaintiff's claims are set forth in a Third Amended Complaint. (DE [84]). Counts 1 through 5 allege state claims for wrongful death, Fla. Stat. § 768.16 *et seq.*; Counts 6 through 10 allege Fourth Amendment violations for excessive and deadly force under 42

U.S.C. § 1983; and Counts 11 through 14 allege claims for failure to intervene in violation of 42 U.S.C. § 1983.

Defendants move to dismiss the Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim; they move to dismiss the state law claims on the ground of sovereign immunity, the excessive force claims on the ground of qualified immunity, and the failure to intervene claims for failure to plausibly allege a claim, or alternatively, on the ground of qualified immunity.

## II.  LEGAL STANDARDS

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a).  Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions . . . a formulaic recitation of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint."  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  Courts must review the complaint in the light most favorable to the plaintiff and must generally accept the plaintiff's well-pleaded facts as true.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).

The court does have "some discretion" to consider matters outside the pleadings if they are "referred to in the complaint, central to plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.,* 910 F.3d 1186, 1189 (11th Cir. 2018). In a case involving police conduct, the court may consider videos from dash cams and body worn cameras if these requirements are otherwise met. *Jackson v. City of*

*Atlanta, Georgia,* 97 F.4th 1343, 1350 (11th Cir. 2024)*; Baker v. City of Madison, Alabama,* 67 F.4th 1268, 1277-78 (11th Cir. 2023). The court "must construe all ambiguities in the video footage in favor of the plaintiff" but "where [the] video is clear and obviously contradicts the plaintiff's alleged facts" the court must "accept the video's depiction instead of the complaint's account and view the facts in the light depicted by the video." *Jackson,* 97 F.4th at 1350 (quoting *Baker,* 67 F.4th at 1277-78).

To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, pleadings that "are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### III.  DISCUSSION

#### A.  Factual Background

Muldrew was shot and killed during a traffic stop in the City of Coconut Creek, Florida. Defendant Calderon stopped the vehicle driven by Muldrew for speeding. (DE [84] ¶ 22). Muldrew advised Calderon that her license was suspended. *Id.* The Third Amended Complaint alleges that Muldrew was "fully cooperative" through the stop.[1] *Id.* ¶¶ 23, 30, 60.

---

[1] The Third Amended Complaint alleges that Muldrew was trying to escape from her passenger who was a convicted felon and criticizes Calderon from not removing Muldrew from the car. (DE [84] ¶¶ 23, 26). The Court need not consider speculative allegations such as these.

Defendant Patton arrived on the scene and Calderon advised him there was suspicion of drunk driving. *Id.* ¶ 28. Calderon was advised over the police radio that the vehicle Muldrew was driving had been reported stolen. *Id.* ¶ 32. After receiving the stolen vehicle report, Calderon and Patton pointed their guns at Muldrew and her passenger and repeatedly instructed them not to move. *Id.* ¶ 35-39. Additional officers arrived, including Defendant Cummings with a K-9. *Id.* ¶ 41.

The Third Amended Complaint alleges the front tires of Muldrew's vehicle were turned to the right, away from the officers, and that none of the officers were in danger from the vehicle. *Id.* ¶ 45 - 49. According to Plaintiff, the officers opened fire on Muldrew without provocation; she was struck by bullets in her chest, top of her head, her shoulder, and back. *Id.* ¶ 50. The Third Amended Complaint also alleges that Defendant Morgan repeatedly beat Muldrew's body with a steel baton as it was being "forcibly removed" from the vehicle and after it was on the pavement. *Id.* ¶¶ 51-53. Plaintiff contends none of the other officers stopped Morgan from beating Muldrew and none administered CPR. *Id.* ¶ 55.

Defendants argue the dash cam ("DC") and body worn camera ("BWC") videos (DE [81-1]) tell a different story about what transpired before the officers began shooting.[2] Indeed, the narrative in the Third Amended Complaint omits description of the crucial seconds before the police began shooting, but those events were recorded on the videos. The following facts are compiled from the Court's review of the DC and BWC footage (DE [81]) and, where they do not conflict with the allegations of the Third Amended

---

[2] Plaintiff filed the videos (DE [81-1]) after the Court ordered (DE [80]) them to be conventionally filed because the Second Amended Complaint referred extensively to the videos (albeit omitting reference to several crucial minutes of the incident).

4

Complaint, are construed in a light most favorable to Plaintiff. *See Johnson v. City of Miami Beach,* 18 F.4th 1267, 1272 (11th Cir. 2021).

Calderon was driving her police vehicle and got in a lane behind Muldrew. (DC 0:50). The car in front of Muldrew turned into a parking lot. (DC 0:59). After that car turned, Muldrew's car visibly increased its speed and Calderon turned on her lights. (DC 0:59-1:07). Muldrew pulled into a parking lot and parked head-in in a marked parking space. (DC 1:17-1:26). Calderon and Muldrew had a calm conversation (DE 1:20-3:50). Calderon told Muldrew she was stopped for speeding and Muldrew stated her driver's license was suspended. (DC 1:47-2:16). Muldrew admitted the car was not registered to her; she stated it was registered to a friend. (DC 1:56-2:00). Muldrew gave Calderon her name, address, and birth date (DC 2:56-3:50), and Calderon returned to her vehicle to run the information through the DAVID database. (DC 3:51-8:27). A second officer was standing next to the passenger door. *Id.*

Calderon returned to Muldrew's vehicle and both officers drew their guns. (DE 8:28). As noted by Plaintiff, Calderon had been advised the vehicle was stolen. (DE [84] ¶ 32). Muldrew and her passenger were repeatedly told to sit still, put their hands on the dash, and not look at the officers. The officers said they would explain in a minute when backup arrived. (DC at 8:28 - 12:06). A K-9 officer arrived and stood directly behind Muldrew's vehicle. (DC at 12:06). At 12:12, an officer stated loudly: "Driver -- step out of the vehicle with your hands up." (DC at 12:12). Muldrew did not step out of the vehicle, and at 12:17, the vehicle started to move in reverse. (DC at 12:17). The car sped up and at 12:19, the K-9 officer jumped out of the way, and, at 12:21, the vehicle crashed into Calderon's car. (DE 12:17-21). Muldrew still did not get out of the car. At 12:24, the vehicle began to

5

move forward, and the gunshots are fired. (DE 12:24). Seven second elapsed between the time the car first started moving and the first shot was fired.

At 13:20, Calderon attempted to remove Muldrew from the driver's seat. She struggled to remove her and stated, "I need help." (DC at 13:20-24). An officer (Morgan) came to help and struck Muldrew once with his baton. (DC at 13:26). This was the only strike Morgan made with his baton. Muldrew was removed from the car and at 14:42, an officer began chest compressions. These continued until 19:55 when EMS arrived. (DE 14:42-19:55).

### B. Sovereign Immunity

Defendants argue they are entitled to sovereign immunity from the state law wrongful death claims. "In the absence of bad faith or malicious purpose, Florida law provides an exclusive remedy against the relevant governmental entity for any injury caused by an officer acting in the course of his employment." *Prieto v. Malgor,* 361 F.3d 1313, 1316 (11th Cir. 2004) (citing Fla. Stat. § 768.28(9)(a)).

The Third Amended Complaint alleges the Defendants were acting "outside the scope of [their] employment with the City of Coconut Creek" and "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property at all pertinent times." (DE [84] ¶¶ 62-66, 69-73, 76-79, 83-87, 90-94). But these are legal conclusions which are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 679.

Defendants argue there are no allegations in the Third Amended Complaint or in the video recordings which would support a finding that they acted outside the scope of their employment or in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

1. <u>Course and Scope of Employment</u>

(1) If an employee:

(a) Is elected, appointed, or employed full time by a municipality, the state, or any political subdivision and is vested with authority to bear arms and make arrests and the employee's primary responsibility is the prevention or detection of crime or the enforcement of the penal, criminal, traffic, or highway laws of the state;

(b) Was discharging that primary responsibility within the state in a place and under circumstances reasonably consistent with that primary responsibility; and

(c) Was not engaged in services for which he or she was paid by a private employer, and the employee and his or her public employer had no agreement providing for workers' compensation coverage for that private employment;

the employee is considered to have been acting within the course of employment.

Fla. Stat. § 440.091(1).

To be acting outside the scope of employment, an officer's acts must be "so extreme as to constitute a clearly lawful usurpation of authority the deputy does not rightfully possess or if there is not even a pretense of a lawful right in the performance of the acts." *McGhee v. Volusia County,* 679 So. 2d 729, 733 (Fla. 1996). Police officers "clearly" have "the lawful authority to restrain arrestees, detain them, or even respond with force in appropriate situations." *Id.*

The facts alleged in the Third Amended Complaint, supplemented by the events depicted in the DC and BWC footage, establish without question that these Defendants were acting in the course and scope of their employment. They were all uniformed police officers, engaged in a traffic stop for speeding and/or detention of suspects driving a stolen

car and/or back up, and used force to prevent Muldrew's vehicle from causing bodily harm to officers on the scene. The course and scope of employment requirement for sovereign immunity is satisfied.

### 2. Nature of the Officers' Conduct

The second issue that must be addressed in determining whether Defendants are entitled to immunity under Fla. Stat. § 786.28, is whether the Third Amended Complaint and the accompanying videos plausibly suggest Defendants acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Simply stated, they do not. Rather, the incomplete narrative of the Third Amended Complaint, fortified by the video footage, establishes that Defendant Calderon made a speeding stop after which she found that the car had been reported stolen; that the officers -- who had guns trained on the car-- directed Muldrew to get out of the car with her hands up; that instead of complying with the officers' instructions, Muldrew threw the car in reverse and accelerated directly toward the K-9 officer; that the officers used deadly force to prevent imminent death or bodily harm to themselves and their fellow officers.

Nothing in the pleadings plausibly supports a finding that the officers' use of deadly force was done in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Defendants are, therefore, immune from suit under Fla. Stat. § 768.28. Counts 1 through 5 will be dismissed.

### C. **Qualified Immunity**

Defendants argue they are entitled to qualified immunity on the excessive force claims under 42 U.S.C. § 1983 (Counts 6 through 10). "Qualified immunity shields government employees from suit in their individual capacities for discretionary actions they

perform [in carrying out] their duties." *Johnson v. City of Atlanta,* 107 F.4th 1292, 1301 (11th Cir. 2024) (quoting *Brooks v. Miller*, 78 F.4th 1267, 1279 (11th Cir. 2023)). The court must employ a "burden shifting analysis" to determine whether qualified immunity applies. *Id.* First, the defendant must show that he was "acting within the scope of his discretionary authority when committing the challenged act." *Id.* (citing *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002)). If the officer establishes he was acting within his discretionary authority, the plaintiff "must show that qualified immunity is not appropriate." *Id.* (quoting *Brooks,* 78 F.4th at 1280)). To do that, the plaintiff must establish that (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of the defendant's actions. *Id.* "While we may consider the two prongs in either order, 'an official is entitled to qualified immunity if the plaintiff fails to establish either.'" *Roldan v. City of Hallandale Beach,* 2023 WL 44899959, at *6 (S.D. Fla. Jul. 12, 2023) (quoting *Piazza v. Jefferson Cty.,* 923 F.3d 947, 951 (11th Cir. 2019)).

Plaintiff does not dispute that Defendants were performing discretionary functions in the course and scope of their official duties. *See Hill v. DeKalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1185 n.17 (11th Cir. 2004), *rev'd on other grounds, Hope v. Pelzer,* 536 U.S. 730 (2002) ("A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of his authority."). Thus, the question is whether taking the allegations "in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right?" *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

The Fourth Amendment provides a "right of the people to be secure in their persons ... against unreasonable ... seizures." *Johnson,* 107 F.4th at 1301-02 (quoting U.S. Const.

9

amend. IV). "This right 'encompasses the plain right to be free from the use of excessive force.'" *Id.* The Third Amended Complaint (DE [84]) cites *Tennessee v. Garner,* 471 U.S. 1 (1985), and states that "it is a violation of the Fourth Amendment for police officers to use deadly force to stop fleeing felony suspects who are nonviolent and unarmed." Though this is a constitutional rule of law, it does not apply in this case, where the video footage shows that Muldrew engaged her vehicle in an attempted violent attack on the law enforcement officers. The question is, therefore, whether the facts as alleged in the Third Amended Complaint and as seen in the video footage plausibly support the conclusion that the officers engaged the unconstitutional use of excessive force. They do not.

Excessive force claims are governed by a reasonableness standard. *Id.* (citing *Graham v. Connor,* 490 U.S. 386, 388 (1989)). To evaluate reasonableness, the court must look at the totality of the circumstances and view the facts from the perspective of a reasonable officer on the scene with knowledge of the attendant facts and circumstances. *Id.* at 1302. These must be balanced against "the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *Id.* (quoting *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009)).

The "objective reasonableness" standard turns on the facts and circumstances in each individual case. *See Graham*, 490 U.S. at 396; *Johnson,* 107 F.4th at 1301-02. Courts make this determination from the perspective of a reasonable officer on the scene without the benefit of 20/20 hindsight. *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1306 (11th Cir. 2009) (citing *Graham*, 490 U.S. at 396)). Factors that may bear on the reasonableness of the force applied include: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Richmond v.*

*Badia,* 47 F.4th 1172, 1182 (11th Cir. 2022). "Other considerations are the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in good faith or maliciously and sadistically." *Johnson,* 107 F.4th at 1302 (quoting *Baker,* 67 F.4th at 1279).

### 1. Excessive Force -- Shooting

According to the facts alleged in the Third Amended Complaint, the Court could conclude that Defendants had no cause to use force at all. But the video footage (DE [81]) tells a very different story. As recounted above, in a period of about seven seconds, Muldrew was ordered to exit her vehicle with her hands up, ignored the order and drove the vehicle directly toward an officer who was standing behind it. But she did not stop there; after crashing into a police cruiser, she began to drive the vehicle forward, and the officers shot her.

This scenario, viewed from the perspective of a reasonable officer on the scene and without the benefit of 20/20 hindsight[3], warranted the use of deadly force. The Eleventh Circuit has "consistently upheld an officer's use of force and granted qualified immunity in cases where the decedent used or threatened to use his car as a weapon to endanger officers or civilians []." *Davis v. Waller,* 44 F.4th 1305, 1314 (11th Cir. 2022) *cert. denied* 143 S. Ct. 2434 (2023). "It is axiomatic that when an officer is threatened with deadly force, he may respond with deadly force to protect himself." *Id.* at 1315 (quoting *Hunter v. Leeds, City of,* 941 F.3d 1265, 1279 (11th Cir. 2019)). Deadly force was found reasonable when the claimant "revved his engine" with an officer trapped just inches away and drove

---

[3] Plaintiff's Response in Opposition (DE [96]) lists several actions she claims the officers should have taken during the stop to de-escalate the situation such as, take away the keys, order Muldrew out of the vehicle, or call for back up. The officers did attempt at least two of these alternatives. But the issue is not whether, in hindsight, the stop should have been handled differently. The issue is whether the officers acted reasonably in response to Muldrew's actions.

his truck toward a police cruiser. *McCullough,* 559 F.3d at 1208. Likewise, qualified immunity was applied to an officer who shot at a fleeing suspect who had been driving hazardously and had swerved his car at police officers. *Pace v. Capabianco,* 283 F.3d 1275, 1278 (11th Cir. 2002).

Plaintiff argues that Officers Patton, Cummings, and Escobar were to the left of the vehicle and the car's tires were turned to the right, "in a direction away from being able to move in any direction except to the right." *See* Third Amended Complaint (DE [84] ¶¶ 44-50). Thus, Plaintiff contends that the use of deadly force was unreasonable because the officers were not clearly in danger. This is contrary to both the video evidence and the law. *See Davis,* 44 F.4th at 1314 ("The fact the logging truck was moving slowly or that Arnold did not have the officers in his rifle sights did not make the officers' belief that Arnold and Davis posed an imminent risk of serious physical harm or death to the officers and the public any less reasonable."). Muldrew had ignored an order to exit the vehicle and, instead, drove it directly in the path of an officer and a police vehicle. She then began to move forward. The officers were not required, under the circumstances, to wait and see what she was going to do next. Their use of deadly force under these circumstances was not unreasonable.

For these reasons, the Court concludes that Defendants Calderon, Patton, Escobar, and Cummings are entitled to qualified immunity for Courts 6 through 9[4] and these counts will be dismissed.

### 2. Excessive Force -- Baton

Count 10 is against Defendant Morgan and alleges that Morgan "savagely" and

---

[4] Count 10 is brought against Defendant Morgan and is solely based on his alleged "beating" of Muldrew with his baton. This count is addressed separately, below. To the extent Count 10 can be construed to include the use of excessive force related the shooting, Morgan is also entitled to qualified immunity on Count 10.

12

"repeatedly" beat Muldrew in the head with his metal baton in violation of the Fourth Amendment. (DE [84] ¶¶ 52, 54, 173). The body cam and dash cam footage (DE [81]) flatly contradict these allegations. (BC at 1:45-59; DC 13:22-19:55). The videos show that Defendant Calderon struggled to remove Muldrew from the vehicle and asked for help. Morgan struck Muldrew once as the officers attempted to remove her from the vehicle. After Muldrew was removed from the vehicle, Morgan hit his baton once on the ground to close it. (BC 1:59). There was no "savage" and "repeated" beating of Muldrew.

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Benton v. Hopkins,* 190 Fed. Appx. 856, 859-60 (11th Cir. 2006). In determining the objective reasonableness of an officer's use of force, the court must examine "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Id.* (quoting *Slicker v. Jackson,* 215 F.3d 1225, 1233 (11th Cir. 2000)). Based on the totality of the circumstances as set forth earlier in this Order, Morgan's use of force was not excessive.  Morgan was faced with a driver of a stolen vehicle who, less than two minutes earlier, refused an order to come out of the vehicle with her hands raised, and attempted to drive the vehicle directly into a police officer who was standing behind it. A fellow officer asked for his help removing Muldrew from the vehicle. It was not unreasonable to use force to compel compliance under these circumstances. *Id.* And, there having been only one strike at Muldrew, the force used was not excessive.

For these reasons, the Court concludes that the Third Amended Complaint fails to plausibly allege that Morgan violated Muldrew's constitutional rights. Count 10 will be dismissed for failure to state a claim.

### D. Failure to Intervene

Counts 11 through 14 allege that Defendants Calderon, Patton, Cummings, and Escobar failed to intervene and stop Morgan from beating Muldrew. "[A]n officer who is present at the scene and fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance." *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1442 (11th Cir. 1985). As discussed above, the videos show that Morgan did not use excessive force. Further, the videos show that Morgan's actions occurred so quickly and lasted so briefly (BC Footage 1:41-1:45), that the other officers on the scene had no opportunity to intervene. "An officer will not be liable for failure to intervene if he did not have a reasonable opportunity to protect the victim." *Riley v. Newton,* 94 F.3d 632, 635 (11th Cir. 1996).

For these reasons, the Court concludes that the Third Amended Complaint fails to plausibly allege a claim for constitutional failure to intervene. Counts 11 through 14 will be dismissed for failure to state a claim.

### IV. CONCLUSION

For the reasons discussed above, it is hereby

**ORDERED AND ADJUDGED** that the Individual Defendants' Motion to Dismiss Third Amended Complaint (DE [91]) is **GRANTED.** This cause stands **DISMISSED**

**WITH PREJUDICE.** The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 6th day of January 2025.

                                                          _____
                                                          RAAG SINGHAL
                                                          UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF